**Nika Aldrich,** OSB #160306
Email: naldrich@schwabe.com
**David W. Axelrod**, OSB #750231
Email: daxelrod@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Facsimile: 503-796-2900

*Attorneys for Plaintiff*
 *Columbia Sportswear North America, Inc.*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **COLUMBIA SPORTSWEAR NORTH AMERICA, INC.,**  an Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>**SEIRUS INNOVATIVE ACCESSORIES, INC.**, a Utah corporation, **VENTEX CO., LTD.**, a foreign company, **MICHAEL J. CAREY**, an individual, **WENDY M. CAREY**, an individual, **ROBERT (BOB) MURPHY**, an individual, **KYUNG-CHAN GO**, an individual, **MAN-SIK (PAUL) PARK**, an individual, and **JOHN DOE NUMBERS 1-5**, individuals,<br><br>Defendants. | Case No.  3:19-cv-137<br><br>**COMPLAINT FOR FRAUD, RACKETEERING, ABUSE OF PROCESS, AND CIVIL CONSPIRACY**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Columbia Sportswear North America, Inc. ("Columbia") brings this Complaint

for fraud, civil conspiracy to commit fraud, abuse of process, civil violations of the Federal

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1964(c)) ("Federal RICO")

and civil violations of the Oregon Racketeer Influenced and Corrupt Organizations Act (ORS

166.725(7)(a)(B)) ("Oregon RICO") against Defendants Seirus Innovative Accessories, Inc.

("Seirus"), Ventex Co., Ltd. ("Ventex"), Michael J. Carey ("M. Carey"), Wendy M. Carey ("W.

Carey"), Robert (Bob) Murphy ("Murphy"), Kyung-Chan Go ("Go"), Man-Sik (Paul) Park

("Park") and John Doe Numbers 1-5 (collectively "Defendants"), and alleges as follows:

### NATURE OF THE CASE

1.      This is an action alleging fraud, civil conspiracy to commit fraud, abuse of

process, and racketeering, all arising from a scheme between Defendants that was designed and

implemented to defraud the United States Patent and Trademark Office (the "Patent Office") and

Columbia.

2.      Specifically, Columbia sued Seirus for willful infringement of two of Columbia's

patents after Seirus copied Columbia's Omni-Heat® Reflective technology (the "Seirus

Litigation").  Seirus was statutorily barred from filing petitions with the Patent Office's Patent

Trial and Appeal Board ("PTAB") to have the patents re-reviewed through a procedure called

*inter partes* review ("IPR").  Seirus was also statutorily barred from working through a proxy to

file petitions for *inter partes* review.  To that end, anybody in privity with Seirus was barred

from filing such petitions, as was anyone who would file the petitions where Seirus would be a

real party-in-interest in the proceedings.

3.      However, as trial approached in the underlying Seirus Litigation in this Court,

Seirus and its employees, officers, and directors conspired with Ventex through an unlawful and

fraudulent scheme to have Ventex file the petitions on Seirus's behalf.  Seirus in fact paid for the

petitions to be filed but Defendants disguised this fact through a sham agreement (the "IPR

Page 2 -   COMPLAINT FOR FRAUD, RACKETEERING, ABUSE
            OF PROCESS, AND CIVIL CONSPIRACY

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

Funding Scheme") that was meant to give the impression that the money was used for "licensing" or "exclusivity" purposes. However, the agreement in fact served only to cloak the transfer of large amounts of money from Seirus to pay Ventex's legal fees in the IPRs. Noting "the sudden change in pricing of Ventex products in January 2017" the PTAB stated in one of its Orders that Columbia "credibly alleges . . . that, at a minimum, Seirus may have financed Ventex's conduct of these *inter partes* reviews."

4.      The Defendants (herein, the "Seirus Enterprise") all knew that Seirus, its privies, and those acting on Seirus's behalf were statutorily time-barred from filing IPRs on either patent, and they knew that Seirus was both in privity with Ventex and a real party-in-interest in the IPRs. The Seirus Enterprise also knew that if they disclosed the existence of the IPR funding scheme, or if they identified Seirus as being in privity with Ventex or a real party-in-interest in the IPRs, the PTAB would be bound by statute to reject the petitions and would not have instituted review.

5.      Nonetheless, as arranged and agreed by the Seirus Enterprise, Ventex filed the IPRs and stated in the IPRs that it was the only real party-in-interest, though Ventex knew this assertion to be false at all material times. Seirus then used the filing of the IPRs and the PTAB's decision to institute the IPRs as a basis to move to stay trial in the underlying Seirus Litigation then pending in this Court.

6.      Ventex, meanwhile, fraudulently litigated the IPRs. When Columbia filed a patent infringement suit against Ventex, in April 2017, Ventex used the filing of the IPRs and the PTAB's decision to institute the IPRs as a basis to move to stay that litigation as well. This Court granted the stay.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

7.    In addition to the fraud, the scheme has also now included perjured testimony by Ventex and Park in proceedings before the Patent Office and spoliation of substantial documents for purposes of concealing the conspiracy and its wrongful acts.

8.    In January of 2019, after Columbia made the PTAB aware of the Seirus Enterprise's wrongful and unlawful acts, the PTAB vacated the institution of and terminated both of the IPRs brought against Columbia's patents (the "Ventex IPRs"), but not before Columbia spent two years litigating the fraudulently-filed IPRs.

9.    As a result of Defendants' unlawful conduct, Columbia has spent hundreds of hours of time and more than $700,000 defending the fraudulently-filed IPRs and responding to numerous motions to stay filed in this Court, one of which was actually granted, and all of which have caused Columbia to divert its resources from litigating the infringement of its patents by both Seirus and Ventex to litigating baseless allegations and claims at the PTAB and in this Court.

10.    By means of this lawsuit, Columbia seeks that all Defendants be jointly and severally found liable to the extent of (i) treble the damages incurred by Columbia due to Defendants' unlawful activity, including attorneys' fees and costs spent defending the IPRs, pursuant to Federal and Oregon State RICO statutes, (ii) attorneys' fees spent bringing this lawsuit, and (iii) **$20,000,000** or an amount otherwise to be decided by a jury in the form of punitive damages for Defendants' illegal and fraudulent actions.

11.    Substantial discovery has already occurred concerning the IPR Funding Scheme at the Patent Office.  Numerous briefs have been filed, tens of thousands of documents have been produced, depositions have been taken, including in Oregon, subpoenas have been served, and the PTAB has hosted numerous conference calls on the issue.  A substantial amount of the

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

information concerning the unlawful scheme is subject to a motion to seal pursuant to a proposed protective order in those cases.  When discovery opens in this case, or when this Court or the PTAB allow discovery from the IPRs to be used in this case, additional co-conspirators may be named as co-defendants, including attorneys, other corporate executives or others who drafted, negotiated or signed the relevant documents or otherwise participated in the fraudulent IPR Funding Scheme conspiracy.

## THE PARTIES

12.      Plaintiff Columbia Sportswear North America, Inc. is a corporation organized and existing under the laws of the State of Oregon, with its principal place of business located in Portland, Oregon.  Columbia Sportswear North America, Inc. is a wholly-owned subsidiary of Columbia Sportswear Company, a corporation organized and existing under the laws of the State of Oregon, with its principal place of business in Portland, Oregon.

13.      Defendant Seirus Innovative Accessories, Inc. is a Utah corporation having a principal place of business located at 13975 Danielson St., Poway, California 92064.

14.      Defendant Ventex Co., Ltd. is a foreign company formed under the laws of South Korea, with its principal place of business in Seoul, South Korea.  Among other activities, Ventex manufactures and sells textiles, fabrics, and other materials for use in the production of clothing, including outdoor wear.  Specifically, Ventex sells a product called MegaHeat RX, which practices the claims of the Omni-Heat® Reflective Patents.

15.      Defendant Michael J. Carey resides in the State of California at 3325 Ocean Front Walk C, San Diego, CA 92109-7609, and is the co-founder, controlling shareholder, CEO, President, and a Director of Seirus Innovative Accessories, Inc.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

16.     Defendant Wendy M. Carey resides in the State of California at 3325 Ocean Front Walk C, San Diego, CA 92109-7609, and is the CFO and a Director of Seirus Innovative Accessories, Inc.

17.     Defendant Robert (Bob) Murphy resides in the State of California at 825 W. Beech Street, San Diego, CA 92101, and is Vice President of Seirus Innovative Accessories, Inc.

18.     Defendant Kyung-Chan Go resides in South Korea, and is Chief Executive Officer of Ventex Co., Ltd.

19.     Defendant Man-Sik (Paul) Park resides in South Korea, and is Vice President of Sales at Ventex Co., Ltd.

20.     Defendants John Doe Numbers 1-5 are executives, officers, in-house attorneys, shareholders or other agents of Defendants Seirus Innovative Accessories, Inc. and Ventex Co., Ltd. who participated in the Seirus Enterprise.

## JURISDICTION AND VENUE

21.     This Court has original subject-matter jurisdiction pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331 because this action arises, in part, under the Federal Racketeer Influenced and Corrupt Organizations Act ("Federal RICO").

22.     This Court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs and there is complete diversity of citizenship between Plaintiff and the Defendants.

23.     This Court has jurisdiction over Plaintiff's related state and common law claims pursuant to the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367.

24.     This Court has personal jurisdiction over Defendant Seirus because Seirus has purposefully directed actions at this forum to obtain benefits from the IPR filings supported by

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

the IPR Funding Scheme.  The exercise of jurisdiction over Seirus is reasonable at least because Seirus conspired with Defendant Ventex to fraudulently file IPRs with an objective of staying a then-pending action in this Court on the eve of trial.  More specifically, Seirus participated in the Seirus Enterprise while a litigation against it by Plaintiff was pending in this Court.  Seirus participated in the Seirus Enterprise, which implemented the IPR Funding Scheme, to disrupt the underlying Seirus Litigation based on false pretense and to provide an opportunity for relitigation of Seirus's invalidity defenses that were then pending before this Court.  Seirus then moved this Court to stay the pending litigation against it based on false pretense—the fraudulently-filed IPRs.

25.    This Court further has personal jurisdiction over Seirus under 28 U.S.C. § 1965(b) because in any action brought pursuant to the Federal RICO statute in a U.S. District Court, that Court may cause parties residing in another district to be summoned to that district if the "ends of justice require" it.  Given these facts, and that no other district has personal jurisdiction over all defendants, the ends of justice require this Court's exercise of personal jurisdiction over Seirus.

26.    This Court has personal jurisdiction over Defendant Ventex because Ventex has purposefully directed its conduct at this forum with respect to the IPR Funding Scheme.  The exercise of jurisdiction over Ventex is reasonable at least because Ventex conspired with Defendant Seirus to fraudulently file IPRs at the Patent Office, with the objective of staying Seirus's then-pending action in this Court on the eve of trial.  Ventex then later moved to stay the later-filed Ventex litigation in this Court based upon the fraudulently filed IPRs.  This Court further has personal jurisdiction over Ventex under 28 U.S.C. § 1965(b) because in any action brought pursuant to the Federal RICO statute in a U.S. District Court, that Court may cause

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

parties residing in another district to be summoned to that district if the "ends of justice require" it.  Ventex participated in the Seirus Enterprise, which implemented the IPR Funding Scheme to disrupt the underlying Seirus Litigation based on false pretense and to provide an opportunity for relitigation of Seirus's invalidity defenses that were then pending before this Court.  Ventex also fraudulently moved this Court to stay a pending litigation against it based on fraudulently-filed IPRs.

27.    This Court further has personal jurisdiction over Ventex because on December 11-12, 2018, Ventex testified at depositions in Oregon in the IPRs.  Specifically, Dr. Kyung-Chan Go, Ventex's CEO, testified on December 11, 2018; Mr. Man-Sik ("Paul") Park testified on December 11-12, 2018; and Ventex, through its corporate representative Mr. Park, testified on December 12, 2018.  The depositions were in response to, *inter alia*, declarations that Park and Go voluntarily submitted in the IPRs.  In support of the Seirus Enterprise and the fraudulently-filed IPRs, at least Mr. Park provided perjured testimony at his deposition in Oregon, as detailed further below.

28.    Given these facts and that no other district has personal jurisdiction over all defendants, the ends of justice require this Court's exercise of personal jurisdiction over Ventex.

29.    This Court has personal jurisdiction over Defendant M. Carey because M. Carey has purposefully directed his conduct at this forum with respect to the IPR Funding Scheme. The exercise of jurisdiction over M. Carey is reasonable at least because M. Carey is an officer, director and co-owner of Defendant Seirus, and personally participated in the activities alleged herein.  This Court further has personal jurisdiction over M. Carey under 28 U.S.C. § 1965(b) because in any action brought pursuant to the Federal RICO statute in a U.S. District Court, that Court may cause parties residing in another district to be summoned to that district if the "ends

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

of justice require" it.  M. Carey also participated in the Seirus Enterprise, which implemented the IPR Funding Scheme to disrupt the underlying Seirus Litigation based on false pretense and to provide an opportunity for relitigation of Seirus's invalidity defenses that were then pending before this Court.  Under M. Carey's direction, Seirus also fraudulently moved this Court to stay a pending litigation against it based on fraudulently-filed IPRs.  Given these facts and that no other district has personal jurisdiction over all defendants, the ends of justice require this Court's exercise of personal jurisdiction over M. Carey.

30.    This Court has personal jurisdiction over Defendant W. Carey because W. Carey has purposefully directed her conduct at this forum with respect to the IPR Funding Scheme. The exercise of jurisdiction over W. Carey is reasonable at least because W. Carey is an officer, director and co-owner of Defendant Seirus, and personally participated in the activities alleged herein.  This Court further has personal jurisdiction over W. Carey under 28 U.S.C. § 1965(b) because in any action brought pursuant to the Federal RICO statute in a U.S. District Court, that Court may cause parties residing in another district to be summoned to that district if the "ends of justice require" it.  W. Carey also participated in the Seirus Enterprise, which implemented the IPR Funding Scheme to disrupt the underlying Seirus Litigation based on false pretense and to provide an opportunity for relitigation of Seirus's invalidity defenses that were then pending before this Court.  Under W. Carey's direction, Seirus also fraudulently moved this Court to stay a pending litigation against it based on fraudulently-filed IPRs.  Given these facts and that no other district has personal jurisdiction over all defendants, the ends of justice require this Court's exercise of personal jurisdiction over W. Carey.

31.    This Court has personal jurisdiction over Defendant Murphy because Murphy has purposefully directed his conduct at this forum with respect to the IPR Funding Scheme.  The

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

exercise of jurisdiction over Murphy is reasonable at least because Murphy is an officer of Defendant Seirus and personally participated in the activities alleged herein.  This Court further has personal jurisdiction over Murphy under 28 U.S.C. § 1965(b) because in any action brought pursuant to the Federal RICO statute in a U.S. District Court, that Court may cause parties residing in another district to be summoned to that district if the "ends of justice require" it. Murphy also participated in the Seirus Enterprise, which implemented the IPR Funding Scheme to disrupt the underlying Seirus Litigation based on false pretense and to provide an opportunity for relitigation of Seirus's invalidity defenses that were then pending before this Court. Mr. Murphy was directly involved in the scheme.  He ordered fabric from Ventex and Mr. Park pursuant to the IPR Funding Scheme.  Given these facts and that no other district has personal jurisdiction over all defendants, the ends of justice require this Court's exercise of personal jurisdiction over Murphy.

32.    This Court has personal jurisdiction over Defendant Go because Go has purposefully directed his conduct at this forum with respect to the IPR Funding Scheme.  The exercise of jurisdiction over Go is reasonable at least because Go is an officer of Defendant Ventex and personally participated in the activities alleged herein.  This Court further has personal jurisdiction over Go under 28 U.S.C. § 1965(b) because in any action brought pursuant to the Federal RICO statute in a U.S. District Court, that Court may cause parties residing in another district to be summoned to that district if the "ends of justice require" it.  Go also participated in the Seirus Enterprise, which implemented the IPR Funding Scheme to disrupt the underlying Seirus Litigation based on false pretense and to provide an opportunity for relitigation of Seirus's invalidity defenses that were then pending before this Court.  This Court further has personal jurisdiction over Go because on December 11, 2018, Go testified at deposition in the

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

Ventex IPRs in Oregon.  Specifically, Go testified in his personal capacity on December 11, 2018.  The deposition was in response to a declaration that Go voluntarily submitted in the IPRs. Given these facts and that no other district has personal jurisdiction over all defendants, the ends of justice require this Court's exercise of personal jurisdiction over Go.

33.    This Court has personal jurisdiction over Defendant Park because Park has purposefully directed his conduct at this forum with respect to the IPR Funding Scheme.  The exercise of jurisdiction over Park is reasonable at least because Park is an officer of Defendant Ventex and personally participated in the activities alleged herein.  This Court further has personal jurisdiction over Park under 28 U.S.C. § 1965(b) because in any action brought pursuant to the Federal RICO statute in a U.S. District Court, that Court may cause parties residing in another district to be summoned to that district if the "ends of justice require" it.  Park also participated in the Seirus Enterprise, which implemented the IPR Funding Scheme to disrupt the underlying Seirus Litigation based on false pretense and to provide an opportunity for relitigation of Seirus's invalidity defenses that were then pending before this Court.

34.    This Court further has personal jurisdiction over Park because on December 11-12, 2018, Park testified at deposition in the Ventex IPRs in Oregon.  Specifically, Park testified in his personal capacity on December 11-12, 2018; and as Ventex's corporate representative on December 12, 2018.  The depositions were in response to, *inter alia*, a declaration that Park voluntarily submitted in the IPRs.  During his deposition, Mr. Park provided perjured testimony in Oregon, as detailed further below.  Given these facts and that no other district has personal jurisdiction over all defendants, the ends of justice require this Court's exercise of personal jurisdiction over Park.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

35.     This Court has personal jurisdiction over Defendants John Doe Numbers 1-5 because they have purposefully directed conduct at this forum with respect to the IPR Funding Scheme.  The exercise of jurisdiction over John Doe Numbers 1-5 is reasonable at least because they are executives, officers, in-house attorneys, shareholders or other agents of Defendant Ventex and Defendant Seirus and personally participated in the activities alleged herein.  This Court further has personal jurisdiction over John Doe Numbers 1-5 pursuant to 28 U.S.C. § 1965(b).

36.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.  Venue is further proper in this District pursuant to 18 U.S.C. § 1965(a) because each defendant is found and/or transacts his affairs in this District given each defendant's participation in the Seirus Enterprise, as alleged above.  Venue is further proper in this District because on December 11-12, 2018, Defendants Ventex, Go and Park testified at deposition in the Ventex IPRs in Oregon.  Specifically, Go testified in his personal capacity on December 11, 2018.  Park testified in his personal capacity on December 11-12, 2018, and as Ventex's corporate representative on December 12, 2018.  The depositions were in response to, *inter alia*, declarations that Park and Go voluntarily submitted in the IPRs.  Venue is also appropriate in this District pursuant to 28 U.S.C. § 1391(c)(3) or the alien-venue rule as codified in

## FACTUAL BACKGROUND

## I.     *INTER PARTES* REVIEW AND THE TIME BAR

37.     This case revolves around a procedure established by Congress as part of the Leahy-Smith America Invents Act ("AIA").  The AIA created a new body within the Patent Office called the Patent Trial and Appeal Board ("PTAB"), which is based in Alexandria,

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

Virginia.  The AIA also created *inter partes* reviews ("IPR"), a trial procedure conducted before the PTAB, which allows the opportunity for third parties to seek to invalidate issued United States patents.

38.    The AIA provides that any "person who is not the owner of a patent may file with the Office a petition to institute an inter partes review of the patent."  However, there is a critical exception.

39.    35 U.S.C. § 315(b) provides that an IPR "may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, *real party in interest, or privy* of the petitioner is served with a complaint alleging infringement of the patent."

40.    The petitioner is required, pursuant to 35 U.S.C. § 312(a)(2), to identify all real parties-in-interest in the IPR.

41.    This requirement functions to ensure proper application of the statutory estoppel provisions, which seeks to protect patent owners from harassment via successive petitions by the same or related parties, to prevent parties from having a second bite at the apple, and to protect the integrity of both the Patent Office and Federal Courts by assuring that all issues are promptly raised and vetted.

42.    If the petitioner identifies as a real party-in-interest a party that is time-barred under 35 U.S.C. § 315(b), the PTAB must, by statute, deny the petition.

43.    After the Petition is filed, the PTAB decides whether the statutory conditions to a viable petition are met and whether to institute review, which typically occurs within about six months of the filing of the Petition.  If the PTAB decides to institute review, the PTAB is under the statutory obligation to issue a final determination not later than 1 year after the date of

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

institution, except that the Director may, for good cause shown, extend the 1-year period by not more than 6 months.

44.     The IPR process has been very beneficial to many parties accused of patent infringement.  For example, as of July 31, 2015, 66% of PTAB cases that went to a final written decision resulted in a finding of invalidity of all instituted claims.  Only 9% of instituted IPRs resulted in a finding that no asserted claims were invalid.

45.     Moreover, courts throughout the country routinely stay underlying patent infringement litigations after the PTAB institutes IPRs, allowing the petitioner's invalidity challenge to proceed and be completed first, before the patent owner has the opportunity to press its case.  This additional factor heavily incentivizes accused infringers to file IPRs after they have been sued for patent infringement.

46.     One factor that distinguishes traditional litigation from litigation before the PTAB is the significant limitation on discovery with respect to the latter.  Discovery in practice before the PTAB is very limited.  The Code of Federal Regulations governing IPR procedures divides discovery into "routine discovery" and "additional discovery."  "Routine discovery" is limited to exhibits cited in papers or in testimony, cross examination of declarants and "relevant information that is inconsistent with a position advanced by the party during the proceeding."

47.     Any other discovery falls into the category of "additional discovery."  Additional discovery must be sought, and can only be obtained, through discretionary motion practice before the PTAB.  Specifically, a party seeking "additional discovery" must (1) meet and confer with the opposing side, (2) send an email to the PTAB requesting a conference call, (3) request leave on the conference call to file a motion to seek the additional discovery, and only if such permission is granted, (4) file a motion seeking the additional discovery.  The PTAB decides

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

whether to grant the motion for additional discovery based on factors known as the "Garmin factors." These factors are: (1) more than a possibility and mere allegation that something useful will be discovered; (2) requests that do not seek other party's litigation positions and the underlying basis for those positions; (3) ability to generate equivalent information by other means; (4) easily understandable instructions; and (5) requests that are not overly burdensome to answer.

48.     Unless the PTAB finds in favor of the movant on these five factors, the motion for additional discovery will be denied. This procedure for seeking and obtaining discovery is heavily weighted against the party seeking discovery.

49.     In particular, this procedure is heavily weighted against patent owners who suspect that the petitioner may be time-barred pursuant to 35 U.S.C. § 315(b) because either the petitioner is in privity with a time-barred patent infringement defendant, or the time-barred patent infringement defendant is a real party-in-interest in the IPR. The discovery procedure makes it very difficult for the patent owner to obtain discovery that may show that the petitioner and the time-barred infringer are in privity, or that the time-barred infringer is a real party-in-interest.

50.     The AIA, combined with the Code of Federal Regulations, the PTAB's Trial Practice Guide, and the PTAB's historical procedures, rely heavily on participants in the process acting in good faith. But parties can game the system to shield bad acts and unlawful activity.

51.     For example, an accused infringer that is time-barred from filing an IPR has strong incentives to conspire with another party to have the IPR petition filed on its behalf, but to have the proxy-petitioner fraudulently declare in the petition that it is the sole real party-in-interest, failing to identify the accused infringer as a real party-in-interest. And the discovery

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

procedures, which significantly favor the petitioner and the accused infringer, help shield the unlawful, fraudulent scheme from the patent owner and the PTAB.

52.     As explained below, this case involves just such a scheme.

## II.    COLUMBIA'S OMNI-HEAT® REFLECTIVE TECHNOLOGY

53.     Columbia is an outdoor apparel company.  In the past two decades, it has invested heavily in developing innovative new products.  One such innovative product is Omni-Heat® Reflective, a technology in which the innermost surface of garments is partially covered in reflective foil, which directs heat back to the user.  By only partially covering the surface with reflective foil, the garment is still able to breathe—i.e., able to transmit moisture vapor.

54.     Columbia obtained patents protecting its Omni-Heat® Reflective technology, including U.S. Patent Nos. 8,424,119 ("the '119 patent"), and 8,453,270 ("the '270 patent," and collectively the "Omni-Heat® Reflective Patents").

55.     Columbia uses its Omni-Heat® Reflective technology in a number of products, including jackets, gloves, mittens, hats, socks, liners, and other apparel and accessories.

56.     The Omni-Heat® Reflective line of products has been a substantial success for Columbia, resulting in over $1.5 billion in sales since it was launched in 2010, along with widespread industry recognition.

## III.    SEIRUS/VENTEX'S COPY OF COLUMBIA'S PATENTED TECHNOLOGY

57.     Seirus is a winter accessories company.  It sells gloves, mittens, hats, socks, liners, and other accessories.  In 2012, Seirus launched a plan to copy Columbia's patented Omni-Heat® Reflective technology.  It started by contacting Columbia's contract suppliers of the custom fabric used for its Omni-Heat® Reflective line of products. Ex. 1 at 3.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

58.    Ultimately, Seirus entered into a relationship with Ventex, a Korean textile manufacturer and broker that touted its ability to supply base fabrics with laminated reflective foil.  Ventex called that fabric "MegaHeat RX" and, in March of 2013, Seirus entered into a Vendor Agreement with Ventex by which Seirus agreed to buy that fabric from Ventex.  *See generally Columbia Sportswear North America, Inc. v. Ventex Co., Ltd.*, Case No. 3:17-cv-00623-SI (D. Or.), Dkt. 1, ¶¶ 31, 34; *see also* Ex. 2, p. 5.  Seirus called its new, copied line of products "HeatWave."

59.    Seirus buys the MegaHeat RX fabric from Ventex and has it shipped to Seirus's manufacturers in Asia to have garments made.  Ex. 1 at 3.

60.    Seirus has sold and sells its "HeatWave" line of products in Oregon.

## IV.    THE SEIRUS LITIGATIONS

61.    On December 4, 2013, Columbia filed a lawsuit against Seirus in the Western District of Washington ("the Washington Action") alleging that Seirus's HeatWave products infringed one of Columbia's design patents.  *See Columbia Sportswear Co. v. Seirus Innovative Accessories, Inc.*, Case No. 2:13-cv-2175-RSM (W.D. Wa.), Dkt. 1, ¶ 9.

62.    On April 2, 2014, in the Washington Action, Columbia served Seirus with an amended complaint alleging infringement of the Omni-Heat® Reflective Patents.  On April 3, 2014, Seirus waived service of a summons of the amended complaint.

63.    In January 2015, Columbia voluntarily dismissed the Washington Action and filed an action in the District of Oregon ("the Seirus Oregon Action") alleging infringement of the Omni-Heat® Reflective Patents.  *See Columbia Sportswear North America, Inc. v. Seirus Innovative Accessories, Inc.*, No. 3:15-cv-64 (D. Or.).

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

64.    By April 3, 2015, Seirus had waived its right to file IPRs against the Omni-Heat®
Reflective Patents, having been served a complaint asserting infringement of those patents one
year prior.  The time bar also applied to anyone in privity with Seirus, and further applied to any
petition for which Seirus would be a real party-in-interest.

65.    Between January 2015 and January 2017, Columbia and Seirus litigated the case
toward trial.  Pursuant to the scheduling order in the Seirus Oregon Action, discovery was
scheduled to close in May 2016.  By that date, the parties had exchanged hundreds of thousands
of pages of documents, and numerous witnesses from both parties had been deposed.

66.    The parties completed the claim construction process and had a *Markman* hearing
in May 2016.  The Court issued final claim constructions in August 2016.

67.    The parties then exchanged voluminous expert reports, and completed depositions
of both parties' experts.

68.    Both parties moved for summary judgment and Columbia filed a *Daubert* motion
to exclude testimony from Seirus's technical expert.  Summary judgment briefing was completed
on November 3, 2016.  Oral argument on the summary judgment motions was originally
scheduled for December 9, 2016.

69.    By January 2017, Columbia and Seirus were on the verge of trial, with pretrial
briefing deadlines imminent.  Seirus had already been found liable for infringement of one of
Columbia's design patents, and had stipulated that the patent was not invalid.  Thus, trial was
going to invariably result in a financial judgment in Columbia's favor, and Seirus faced the
prospect that it would be liable to pay its total profits from its sales of all of its HeatWave
products.

Page 18 -    COMPLAINT FOR FRAUD, RACKETEERING, ABUSE
             OF PROCESS, AND CIVIL CONSPIRACY

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

70.     The pretrial conference was scheduled for April 3, 2017, and trial was scheduled to commence on April 11, 2017.

## V.     THE IPR FUNDING SCHEME

71.     As trial approached, Seirus sought various ways of continuing the trial date.

72.     Seirus also regretted its failure to file IPR petitions concerning the two patents.  It desired that IPRs be filed against the two Omni-Heat® Reflective Patents.  But Seirus knew that it, and any person in privity with it, was time-barred from filing IPR petitions pursuant to 35 U.S.C. § 315(b).

73.     Seirus also knew that no IPRs could be filed if Seirus was a real party-in-interest in the outcome of the IPRs.

74.     To avoid these clear statutory bars to filing an IPR petition, in October 2016, Seirus and Ventex agreed that *Ventex* would file IPR petitions against the '119 and '270 patents on Seirus's behalf.  But Seirus and Ventex knew that this was unlawful under 35 U.S.C. § 315(b), because Seirus and Ventex were in privity with respect to any IPRs, and Seirus would also be a real party-in-interest with respect to such IPRs.

75.     To disguise these facts, the parties entered into a written agreement by which Seirus would pay for the IPRs through a complicated financial scheme.  But the agreement was a sham, meant to disguise the fact that Seirus would be paying for the IPRs.  Ventex would then fraudulently assert that it was the only real party-in-interest with respect to the IPRs.

76.     Defendants Seirus and Ventex fraudulently called this agreement the "Exclusive Manufacturing Agreement."  Ex. 3 at 2-3.

77.     The IPR Funding Scheme involved two components.  First, Seirus transferred to Ventex a cash advance in November 2016 that was intended to give Ventex funds to pay for the

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

drafting of the IPR petitions. Second, Seirus paid Ventex a fee per-yard of fabric over an extended period of time, called a "HeatWave Surcharge" or a "HeatWave Exclusive License Fee," to continue to pay for Ventex's attorneys' fees and costs incurred in litigating the IPRs. Ex. 4, pp. 3-4. Seirus would recoup the initial fee advance through a concealed "discount" from all subsequent purchase orders. *Id.* at 4.

78.    None of Seirus's purchase orders reflected the "discount" it was receiving.

79.    The IPR Funding Scheme was intended to give Ventex an infusion of cash two months before the IPRs were filed, with following payments disguised as a per-yard fabric fee over an extended period of time.

80.    Purchase orders reflecting Seirus' purchases of fabric from Ventex between 2013 and 2018 show these fees and increased pricing on the fabric that coincide with the filing of the Ventex IPRs. For example, purchase orders from 2013-2016 reflect only fabric purchases. However, Seirus issued two purchase orders within days of Ventex's filing of the first of the Ventex IPRs that included the new per-yard fee for fabric listed as a "HEATWAVE SURCHARGE" with an item number of "HWSUR." The new fee amounted to nearly a 100% increase on the price of the fabric. Ex. 1 at 6-7; *see also* Ex. 11, pp. 5-6.

81.    The same day the purchase orders were issued, Seirus issued revised purchase orders changing the name of the "HeatWave Surcharge" to "HeatWave Exclusive License Fee," but the item number remained "HWSUR." Ex. 1 at 7.

82.    This was the first time Seirus had ever paid a "surcharge" or "license fee" while purchasing fabric from Ventex. The fabric was the same HeatWave fabric Seirus had been purchasing for more than 4 years. *Id.* at 8.

Page 20 -    COMPLAINT FOR FRAUD, RACKETEERING, ABUSE
             OF PROCESS, AND CIVIL CONSPIRACY

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

83.     Seirus has continued to pay the "surcharge," later re-designated as a "license fee,"
ever since, including immediately before oral arguments occurred in the IPRs.  The total of the
sums paid by Seirus closely approximates the amount Ventex anticipated paying in legal fees for
the two Ventex IPRs.  *Id.* at 8-9.

84.     The Exclusive Manufacturing Agreement entered into by Seirus and Ventex as
part of the IPR Funding Scheme was not commercially reasonable or plausible as a license
agreement.  The Exclusive Manufacturing Agreement has no commercially reasonable basis
other than to pay for the Ventex IPRs.  Instead, the Exclusive Manufacturing Agreement was a
sham meant to disguise the agreement for Seirus to fund the Ventex IPRs as a payment for value,
though it was not.  *See* Ex. 11, pp. 5-6.

85.     By way of example, in September 2017, at the time of trial in the patent
infringement litigation between Columbia and Seirus, Seirus had been selling its HeatWave line
of products for approximately four years.  The total Heatwave sales through February 28, 2017
were approximately $7.3 million.  The jury found that Seirus's total profits on these sales were
$3.1 million.  The parties stipulated that $6.2 million of these sales were for products alleged to
infringe the '270 patent.

86.     During that trial, Seirus' expert, Carrie Distler, opined that, given these
circumstances, the reasonable royalty that Seirus and Columbia would have entered into for a
license to practice the '270 patent would have amounted to a total of $119,000, covering all $6.2
million of infringing sales between 2013 and 2017.

87.     Notably, Ventex does not make the HeatWave fabric itself.  It buys base fabric off
the shelf from textile manufacturers and uses standard lamination equipment and techniques to
apply foil printing to the base fabric.  The same fabric can be purchased from other sources and

Page 21 -     COMPLAINT FOR FRAUD, RACKETEERING, ABUSE
              OF PROCESS, AND CIVIL CONSPIRACY

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

foil can be applied by numerous other vendors. Thus, any agreement for "exclusivity" from Ventex has little to no apparent value. It certainly is not worth hundreds of thousands of dollars in the face of Seirus's own expert's opinion that the patents covering the finished product are worth only $119,000 for $6.2 million in sales.

88.     Further, notwithstanding the alleged "exclusive license," Ventex has sold its MegaHeat RX fabric (which Seirus calls "HeatWave") to other companies.

89.     The hundreds of thousands of dollars Seirus paid to Ventex between 2016 and the present far exceeds any commercially reasonable amount Seirus would have agreed to pay Ventex for any alleged exclusivity to MegaHeat RX fabric.

90.     Defendant M. Carey, as Seirus's Co-Founder, Chairman of the Board, Director, and CEO, and W. Carey, as Seirus's Director and CFO, would have had to have approved such a commercial arrangement. M. Carey and W. Carey also would have known that the arrangement was facially unreasonable, and therefore knew or were willfully blind that the arrangement was a sham and a cover for Seirus to pay for the Ventex IPRs. M. Carey and W. Carey therefore knew or were willfully blind to the IPR Funding Scheme.

## VI.     THE VENTEX IPRS AGAINST THE OMNI-HEAT® REFLECTIVE PATENTS

91.     In January 2017, to Columbia's astonishment, Ventex filed two petitions for IPR of the '119 and '270 patents.

92.     Specifically, Ventex electronically filed its petition for IPR of the '119 patent on January 11, 2017 through the PTAB's EFS-Web. Filings at the PTAB, including the initial filing of a petition for IPR and any subsequent filings, are made through the PTAB's electronic filing system, "EFS-Web."

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

93.     The PTAB assigned IPR No. 2017-00651 to Ventex's petition for IPR of the '119 patent.

94.     Ventex electronically filed its petition for IPR of the '270 patent on January 27, 2017 through the PTAB's EFS-Web.

95.     The PTAB assigned IPR No. 2017-00789 to Ventex's petition for IPR of the '270 patent.

96.     Ventex also served both petitions, which contained false or fraudulent statements, on Columbia's counsel of record concerning the '119 and '270 patents in Oregon.

97.     As of January 2017, Columbia had not sued, threatened to sue, or even contacted Ventex about any alleged infringement of the '119 and '270 patents.  Nor, to its knowledge, had Columbia sued or threatened to sue any other Ventex customer besides Seirus for infringement of the '119 or '270 patents.

98.     At the time the Ventex IPRs were filed in January 2017, a "real party-in-interest" was defined by the Patent Office as "the party that desires review of the patent," who may be "the petitioner itself, and/or it may be the party or parties at whose behest the petition has been filed."  77 Fed. Reg. 48759.

99.     In each of the petitions, Ventex represented and alleged that it was the only real party-in-interest.

100.     But Ventex filed the Ventex IPRs at the behest of Seirus and with funding from Seirus, who desired review of the Omni-Heat® Reflective Patents for the purpose of staying and disrupting the Seirus Oregon Action.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

101.    Thus, Seirus was and is clearly a real party-in-interest and was in privity with Ventex, and should have been named as such.  Moreover, Seirus and Ventex both knew that Seirus in fact was a real party-in-interest and in privity with Ventex.

102.    Ventex's failure to identify a real party-in-interest, Seirus, was fraudulent and was done with the purpose and intent to avoid or evade the time limitations imposed by 35 U.S.C. § 315(b).

103.    At all times relevant hereto, Ventex and all other Defendants knew that Ventex was not the only real party-in-interest to the Ventex IPRs.

104.    At all times relevant hereto, Ventex and all other Defendants knew that Seirus was a real party-in-interest to the Ventex IPRs.

105.    At all times relevant hereto, Ventex and all other Defendants knew that Ventex was under a statutory obligation to identify Seirus as a real party-in-interest to the Ventex IPRs when it filed its petitions.

106.    The PTAB's Trial Practice and Procedure Guide requires that documents filed with the PTAB be signed in accordance with 37 CFR § 11.18(a).  37 CFR § 42.6(a)(4).  37 CFR § 11.18(a) states that all documents must be signed in compliance with 37 CFR § 1.4(d).  37 CFR § 1.4(d)(4) states that "presentation to the Office (whether by signing, filing, submitting, or later advocating) of any paper by a party constitutes certification under section 11.18(b)"; and that "violations of 11.18(b)(2) may result in sanctions under 11.18(c)."

107.    37 CFR § 11.18(b) states:

> by presenting to the Office . . . (whether by signing, filing, submitting, or later advocating) any paper, the party presenting such paper, whether a practitioner or non-practitioner, is certifying that –
>
> (1) All statements made therein of the party's own knowledge are true, all statements made therein on information and belief are believed to be true,

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

and all statements made therein are made with the knowledge that
*whoever, in any matter within the jurisdiction of the Office, knowingly and
willfully falsifies, conceals, or covers up by any trick, scheme, or device a
material fact, or knowingly and willfully makes any false, fictitious, or
fraudulent statements or representations, or knowingly and willfully
makes or uses any false writing or document knowing the same to contain
any false, fictitious, or fraudulent statement or entry, shall be subject to
the penalties set forth under 18 U.S.C. 1001* **and any other applicable
criminal statute**, and violations of the provisions of this section may
jeopardize the probative value of the paper; and

(2) To the best of the party's knowledge, information and belief, formed
after an inquiry reasonable under the circumstances, (i) The paper is not
being presented for any improper purpose, such as to harass someone or to
cause unnecessary delay or needless increase in the cost of any proceeding
before the Office; (ii) The other legal contentions therein are warranted by
existing law or by a nonfrivolous argument for the extension,
modification, or reversal of existing law or the establishment of new law;
(iii) The allegations and other factual contentions have evidentiary support
or, if specifically so identified, are likely to have evidentiary support after
a reasonable opportunity for further investigation or discovery; and
(iv) The denials of factual contentions are warranted on the evidence, or if
specifically so identified, are reasonably based on a lack of information
or belief.

(emphasis added).

108.    Thus, a violation of the certification required by 37 CFR § 11.18(b)(1) for an act

such as willfully making false or fraudulent statements could subject the violator to, e.g.,

criminal perjury or criminal fraud charges.

109.    Further, 37 CFR § 11.18(c) states that "[v]iolations of any of paragraphs (b)(2)(i)

through (iv) of this section are . . .subject to such sanctions or actions as deemed appropriate by

the USPTO Director . . . ."

110.    At all times relevant hereto, Ventex and all other Defendants knew that Ventex,

by filing its petitions for IPRs and all subsequent papers in those IPRs, was under an obligation

pursuant to 37 CFR § 11.18(b)(2) to certify that "[a]ll statements made therein" were "true," and

"with the knowledge that whoever, in any matter within the jurisdiction of the Office, knowingly

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact, or

knowingly and willfully makes any false, fictitious, or fraudulent statements or representations,

or knowingly and willfully makes or uses any false writing or document knowing the same to

contain any false, fictitious, or fraudulent statement or entry, shall be subject to the penalties set

forth under 18 U.S.C. 1001 and any other applicable criminal statute, and violations of the

provisions of this section may jeopardize the probative value of the paper"; and to certify that,

e.g., the papers were "not being presented for any improper purpose."

111.    At all times relevant hereto, Ventex and all other Defendants knew that Ventex, in

filing its petitions, was defrauding both Plaintiff and the PTAB by intentionally omitting Seirus

as a real party-in-interest to the Ventex IPRs.

112.    Had Ventex identified Seirus as a real party-in-interest, the PTAB would have

been statutorily required to deny institution based on the complaint served upon Seirus in the

underlying Seirus Litigation in April 2014.

113.    Ventex thus violated the certification requirements of 37 CFR §§ 11.18(b)(1) and

(b)(2) by filing its petitions, and subsequently with each filing it made for the IPRs at the PTAB.

114.    Columbia filed Patent Owner Preliminary Responses and Sur-Replies to the

Ventex IPRs in April and May 2017, which included as exhibits expert declarations, among other

things.  Columbia incurred significant costs and fees related to filing its preliminary responses

and related papers in the Ventex IPRs.

115.    Columbia's Patent Owner Preliminary Responses alleged, *inter alia*, that Ventex

was statutorily time-barred based on apparent mutual collaboration between Ventex and Seirus.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

116.    Ventex argued that any "collaboration" between it and Seirus in either the Seirus Oregon Action or the Ventex IPRs was merely to ensure compliance with the protective order by Columbia.  That was false.

117.    Ventex had an obligation to produce documents inconsistent with its position that there is no privity between it and Seirus and that Ventex was the sole real party-in-interest as "routine discovery" under 37 CFR § 42.51(b)(1)(iii).  Ventex knowingly and intentionally failed to do so, with the intent to defraud.

118.    Ventex was also obligated to notify the PTAB and Columbia within 21 days upon learning of any change of information relating to real parties-in-interest by filing an updated "mandatory notice."  77 Fed. Reg. at 48759.

119.    Ventex has never filed an updated mandatory notice in the Ventex IPRs revising its identification of real parties-in-interest to the Ventex IPRs.

120.    On July 26, 2017, the PTAB instituted trial on the Ventex IPRs.

121.    The PTAB initiated trial in the Ventex IPRs in part based on Ventex's false representations that it was the only real party-in-interest.

## VII.    THE IPR FUNDING SCHEME FALTERS, AND VENTEX DEMANDS MORE MONEY TO PAY FOR THE IPRS

122.    The IPR Funding Scheme was so complicated that both parties ended up keeping a separate, off-the-record set of books to keep track of the payments.  Ex. 4, p. 4.

123.    In one communication, Seirus apologized to Ventex, writing, "I understand this is confusing as it is on my end as well with various deductions coming from various deposits and discounts."  *Id.*

124.    By November 22, 2017, tracking the scheme had gotten so messy that Seirus ended up revealing and sending Ventex its independent spreadsheet.  *Id.*

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

125.    In October 2017, after Seirus had paid some of the "License Fee," Ventex suggested that it may need to change the "fee." *Id.* at 4-5.  During confirmations of 2018 fabric prices, Ventex wrote, "Further discussion will be required for 'HEATWAVE EXCLUSIVE LICENSE FEE' for 2018." *Id.* at 5.  This would be entirely inconsistent with any agreement for an actual license fee, but is consistent with reimbursement of unpredictable counsel fees and litigation costs.  *Id.*

126.    By late 2017, Ventex urgently needed more money from Seirus to pay its attorneys for legal fees in the Ventex IPRs.  *Id.*

127.    In November 2017, Defendant Park wrote to Defendant Murphy, "We hope you to be able to place us more order, because we are still hungry."  *Id.*

128.    That was followed up on December 3, 2017 with an additional request asking for an "additional order as soon as possible." *Id.*  And a week later, with greater urgency, "Please give your additional order as soon as possible.  We almost die here . . ." *Id.*

129.    Murphy arranged for an order of additional yards of fabric.  *Id.*  Park wrote back, "Please be noted that we have got the . . . yd order last week, but it is absolutely not enough.  We need much more order about . . . yd in this week.  *Id.*  Another Ventex employee who was copied on the email sent a follow-up email to Park in the same thread:  "COVINGTON is requesting to fix the correct payment date.  We need SEIRUS to clear this up as soon as possible." *Id.* at 5-6.  Park wrote back, "As you well know . . . I'm feeling pressured." *Id.* at 6.  "COVINGTON" is a reference to Covington & Burling LLP, the law firm Ventex used for filing and litigating the IPRs.

130.    Thus, Ventex needed more "license fee" money from Seirus to pay Covington's legal bills in these IPRs, and Ventex suggested that Seirus knew that this was the purpose for the

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

payments, and that *Seirus* needed to fix the pending deficit that was accruing with respect to Ventex's legal fees.  *Id.*

131.    To resolve the fee deficit, the next day, Ventex wrote to Seirus and asked, "Can you please help make advance payment for Heatwave Exclusive License fee" for five purchase orders where payment was not yet due.  *Id.*  Seirus promptly agreed to pay a "fee" advance without any documented explanation of this extraordinary request.  *Id.*

132.    Similarly, in April 2018, immediately before the final hearing in the Ventex IPRs, Ventex wrote to Seirus asking "[w]ould it be possible to make advance payment for Heatwave exclusive fee . . . for PO 416305."  *Id.*  Seirus's director and CFO, W. Carey, agreed to advance the payment, and the money was promptly wired without further inquiry.  *Id.*

133.    There is no reasonable, legitimate business reason why Seirus would have advanced money to Ventex for a "license fee."

## VIII.    SEIRUS'S FRAUDULENT USE OF THE VENTEX IPRS

134.    Seirus (and all other Defendants) knew that the Ventex IPRs were fraudulently filed.

135.    To wit, Seirus (and all other Defendants) knew that Ventex filed the Ventex IPRs at Seirus's behest.

136.    Seirus (and all other Defendants) also knew that Seirus should have been identified as a real party-in-interest to the Ventex IPRs.

137.    Notwithstanding, Seirus, at the direction of Defendants M. Carey, W. Carey and Murphy, attempted to use the fraudulently filed Ventex IPRs, which Seirus had funded and participated in filing, for its own benefit in the Seirus Oregon Action.

Page 29 -    COMPLAINT FOR FRAUD, RACKETEERING, ABUSE OF PROCESS, AND CIVIL CONSPIRACY

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

138.    Soon after the Ventex IPRs were filed, on February 7, 2017, *Seirus* notified the court in the Seirus Oregon Action, via the District of Oregon's Electronic Case Filing ("ECF") system, that the Ventex IPRs had been filed.  *See Columbia Sportswear North America, Inc. v. Seirus Innovative Accessories, Inc.*, No. 3:15-cv-64 (D. Or.), Dkt. 136.

139.    On August 1, 2017, after the PTAB instituted the Ventex IPRs, Seirus filed a motion via ECF, requesting an expedited hearing "to stay or, in the alternative, to continue the trial date" pending determinations in the two Ventex IPRs.  *See Columbia Sportswear North America, Inc. v. Seirus Innovative Accessories, Inc.*, No. 3:15-cv-64 (D. Or.), Dkt. 176.

140.    Columbia filed a response to the motion to stay on August 15, 2017, and attended a motion hearing on September 1, 2017.  Columbia incurred legal fees and costs due to Seirus's motions.

141.    At that motion hearing on September 1, 2017, Seirus again moved the court to stay the case until the PTAB issued its Final Written Decisions in the Ventex IPRs.

142.    At all times discussed herein, Seirus and all other Defendants knew that Seirus was a real party-in-interest to the Ventex IPRs.

143.    At all times discussed herein, Seirus and all other Defendants knew that Ventex had not filed any updated mandatory notices identifying Seirus as a real party-in-interest.

144.    At all times discussed herein, Seirus and all other Defendants knew that Ventex, as the petitioner in the Ventex IPRs, was obligated to identify any real party-in-interest, and that Ventex had intentionally failed to do so.

145.    Thus, Seirus's filing of the motions to stay in the Seirus Oregon Action, while Seirus and the other Defendants were actually aware that the Ventex IPRs were filed and being

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

litigated fraudulently, was itself fraudulent and was done with the purpose and intent to delay trial in the Seirus Oregon Action.

IX.    **VENTEX'S FRAUDULENT USE OF THE VENTEX IPRS**

146.    On April 20, 2017, Columbia filed a lawsuit in the District of Oregon against Ventex ("the Ventex Oregon Action"), alleging, among other things, infringement of the '119 patent and the '270 patent based on Ventex's manufacture, sale, and importing into the U.S. of its MegaHeat RX fabrics.  *See Columbia Sportswear North America, Inc. v. Ventex Co., Ltd.*, Case No. 3:17-cv-00623-SI (D. Or.), Dkt. 1, ¶ 1.

147.    Ventex did not file an Answer to Columbia's Complaint in the Ventex Oregon Action.

148.    On November 6, 2017, rather than answering Columbia's Complaint, Ventex filed a motion to stay the Ventex Oregon Action until the PTAB issued final written decisions in the Ventex IPRs.  *See Columbia Sportswear North America, Inc. v. Ventex Co., Ltd.*, Case No. 3:17-cv-00623-SI (D. Or.), Dkt. 17 at 1.

149.    Ventex filed this motion to stay knowing that the Ventex IPRs had been filed fraudulently.

150.    Columbia incurred costs and fees related to Ventex's motion to stay.

151.    Ventex's motion to stay was granted on November 9, 2017, and the Ventex Oregon Action is currently stayed.

152.    Had Ventex not fraudulently filed the Ventex IPRs, and had it not used those fraudulent filings as a basis to request a stay, the Ventex Oregon Action would not be stayed.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

## X.    COLUMBIA'S DISCOVERY OF THE IPR FUNDING SCHEME

153.    Between July 26, 2017 and now, Columbia has attempted to obtain discovery

pertaining to the relationship between Ventex and Seirus and the IPR Funding Scheme.

154.    Columbia's initial attempts to obtain such discovery were denied by the PTAB.

155.    On July 25, 2018, the PTAB issued an Order in the Ventex IPRs extending for

good cause its deadline to issue its Final Written Decisions.  *See, e.g. Ventex Co., Ltd. v.*

*Columbia Sportswear North America, Inc.*, IPR2017-00651, Paper 64 at 2.

156.    The PTAB then authorized Columbia to file a new motion for additional

discovery concerning whether Seirus was in privity with Columbia or was a real party-in-

interest.  On September 27, 2018, the PTAB granted Columbia's motion.  *See, e.g.*, IPR2017-

00651, Paper 68 at 2-3 & Paper 73.

157.    On October 4, 2018, Ventex produced 24,406 pages of communications between

Seirus and Ventex.  Ventex explained in the production cover letter that Ventex had produced all

communications between Ventex and Seirus, "without limitation by subject matter." Ex. 5.

However, Ventex knew that representation was false and intentionally made.  The production did

not contain at least a copy of the October 21, 2016 Exclusive Manufacturing Agreement.  Nor

did the production contain emails between Seirus and Ventex predating the agreement, emails

from within Ventex discussing the agreement, drafts of the agreement, notes concerning the

agreement, or any other document describing the agreement.

158.    It was only after Columbia discovered the IPR Funding Scheme and brought it to

the PTAB's attention that Ventex then produced 2000 additional pages of previously-concealed

communications between Ventex and Seirus that were directly relevant to the IPR Funding

Scheme.  Ex. 6, p. 3.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

159.    The Exclusive Manufacturing Agreement was not part of those 2000 additional pages Ventex produced because Park and other Ventex employees deleted or destroyed every copy of that agreement in Ventex's possession, along with every email and other document that described it.  *Id.* at 3-4.

160.    Ventex also deleted the email accounts of employees who negotiated the Exclusive Manufacturing Agreement, decided to file the IPRs, and hired Covington.  *Id.* at 4.

161.    Columbia does not know what other responsive documents Ventex and the Seirus Enterprise Defendants are concealing or have been destroyed.

162.    Columbia nonetheless identified to the PTAB the sudden and significant increase in pricing of Ventex products in January 2017 reflected in the fraudulent invoices, which invoices the PTAB found to "credibly" show that, "at a minimum, Seirus may have financed Ventex's conduct of" the Ventex IPRs.  Ex. 7 at 5.

## XI.    DEFENDANTS' EFFORTS TO UNLAWFULLY CONCEAL THE IPR FUNDING SCHEME

163.    All of the co-conspirators in the Seirus Enterprise agreed to keep the IPR Funding Scheme secret.

164.    Seirus never produced the October 21, 2016 Exclusive Manufacturing Agreement in the Seirus Oregon Action, though it was obligated to produce all such documents.  Instead, Seirus unlawfully withheld that agreement.

165.    Ventex and Park continuously denied the existence of the October 21, 2016 written agreement.

166.    For example, on November 6, 2018, the PTAB granted Columbia's motion to take additional discovery relating to whether Seirus is a real party-in-interest to the Ventex IPRs.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

167.    Part of that additional discovery included a deposition of Defendant Park.  That deposition took place on November 9, 2018 and lasted for ten hours on the record.

168.    During that deposition, Park gave sworn testimony that, e.g., Ventex and Seirus never entered into a written agreement regarding the "surcharge" or "license fee" for the HeatWave fabric.

169.    Park's testimony was false.  Park was personally aware of the arrangement, and exchanged emails with Seirus concerning the agreement.  Ex. 3 at 2.

170.    The same day that Park provided knowingly false testimony concerning the agreement, and unbeknownst to Park, Seirus produced a copy of the Exclusive Manufacturing Agreement pursuant to a subpoena in the IPRs.  *Id.*

171.    In follow up correspondence Ventex's counsel wrote:

> As noted in my email yesterday, we have produced all non-privileged responsive documents that Ventex identified in searching documents in its possession, custody, or control. We believe those searches were comprehensive and reasonable.
>
> Nonetheless, in light of the documents produced by Seirus last Friday, we visited Ventex's office earlier today, during business hours in Korea. We met directly with the company's CEO, Mr. Go, as well as Mr. Park, to confirm whether any responsive information was overlooked. Ventex undertook supplemental search efforts, with our assistance. Yet, Ventex has not been able to locate any copies of the exclusivity agreement produced by Seirus. Nor has the company been able to locate any additional responsive documents in its possession, custody, or control, based on these supplemental search efforts.

Ex. 8.

172.    The Exclusive Manufacturing Agreement was executed by Ventex's CEO and designated Park as the notice party.  Ex. 6, p. 4.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

173.    Seirus also produced an email from Park referencing the written agreement, in which Park cited specific paragraph numbers within the agreement while seeking payment from Seirus.  *Id.*

174.    Ventex blamed Park's memory and claimed that these documents had been innocently deleted by Park, and in an act of disloyalty by former employee Joori Hwang.  *Id.* at 4, 8.  Ventex insisted that Ms. Hwang engaged in "misconduct" and "deleted her computer" "despite instructions to the contrary."  *Id.* at 8.

175.    This was not true either, as Ventex was aware of its responsibility to preserve evidence by May of 2017.  *Id.* at 4-5.

176.    Ventex was also under a duty to preserve evidence beginning in October 2016, when it engaged Covington to file the IPRs.  *Id.* at 7.

177.    After May 2017, Ms. Hwang and her supervisor, Seok Jeun Jung, left Ventex, and upon their departure, Ventex deleted their email accounts, and did so knowing that Ms. Hwang managed the Seirus account and negotiated the funding arrangement, and that both she and Mr. Jung were involved in the decision to file the IPRs.  *Id.* at 4-5.  Ventex also deleted the email account of Kyung Joong Na, another relevant former Ventex employee.  *Id.* at 8.

178.    Park, during a deposition that took place in Oregon on December 11-12, 2018, admitted that he himself deleted substantial relevant emails, and that no efforts were made to retrieve any of these deleted emails or files.  *Id.* at 8.

179.    Ventex destroyed all of its copies of the Exclusive Manufacturing Agreement itself, as well as all emails, notes, drafts, and other documents concerning the agreement from before it was signed.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

180.    During Mr. Park's December 11-12, 2018 deposition in Oregon, Mr. Park insisted, notwithstanding abundant evidence to the contrary, that he never had knowledge that there was a written agreement, even when he emailed Seirus about it.  Ex. 9 at 3-4.  Specifically, Mr. Park emailed Seirus seeking payment pursuant to the written agreement and *cited specific paragraph numbers within it*.  Ex. 6, p. 4.  The written Heatwave Exclusive Manufacturing Agreement in fact *designated Mr. Park as the notice party* for Ventex.

181.    Ventex stated that Mr. Park had "memory lapses," such that he had not remembered the written agreement at his first deposition.  Ex. 9, p. 3.  This confirms that Mr. Park once knew about the written agreement.  However, at his Oregon deposition on December 11-12, he again testified that he never knew about the written agreement.  *Id.* at 4.

182.    Therefore, Mr. Park's testimony during the December 2018 deposition in Oregon relating to the Exclusive Manufacturing Agreement was false.  *Id.*

183.    Thus, Defendants have resorted to perjury and spoliation of evidence as part of the efforts to maintain secrecy and to perpetuate their ongoing fraud.

## XII.    THE SCHEME CONTINUES

184.    During the course of these IPRs, *Ventex* sought to settle *Seirus's* case for it, thereby reaffirming that Seirus was a real party-in-interest in the IPRs.

185.    On December 22, 2017, Ventex and Columbia spoke at Ventex's invitation to discuss a settlement proposal.  Ex. 10, p. 4.  One of *Ventex's* material settlement terms required Columbia to drop its lawsuit against *Seirus*, which had by then been tried to a jury and was pending appeal.  *Id.*

186.    This communication is further evidence that Seirus is a real party-in-interest to the Ventex IPRs.  The parties did not settle.

Page 36 -    COMPLAINT FOR FRAUD, RACKETEERING, ABUSE
OF PROCESS, AND CIVIL CONSPIRACY

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

187.    On September 27, 2018 the PTAB granted a Columbia motion for additional discovery in the Ventex IPRs to allow Columbia to explore the relationship between Seirus and Ventex.

188.    The next business day (Korea time), Park emailed Murphy, "Please call me back as soon as possible."  Ex. 4, pp. 6-7.

189.    In response, Murphy offered to meet in person on October 23, 2018.  *Id.* at 7.

190.    Murphy and Park were careful to avoid documenting any substance in email.  *Id.*

191.    Ventex has stated that they met to discuss the so-called "License Fee."  *Id.*

192.    Upon information and belief, Park and Murphy actually discussed the IPR Funding Scheme, which by that point had been disclosed through the IPR proceedings.

193.    As part of the October 4, 2018 document production, Ventex produced a privilege log showing numerous email communications between counsel for Ventex and Seirus that were withheld on the basis of a "common interest privilege."  Ex. 10, p. 5.

194.    Further, in its response to an interrogatory from Columbia, Ventex identified several non-written communications with Seirus concerning the Ventex IPRs that were withheld on the basis of the same "common interest privilege."  *Id.*

195.    By law, the common interest privilege may only be invoked when the parties make the communication *in pursuit of a joint strategy in accordance with some form of agreement*—whether written or unwritten.  The common interest privilege applies only where the specific communications at issue were designed to facilitate *a common legal interest; a business or commercial interest will not suffice*.  The common interest privilege arises out of the need for a common legal defense, as opposed merely to a common problem.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

196.    Ventex hid its communications with Seirus about the Ventex IPRs behind a "common interest privilege" that could only have been invoked if Seirus was a real party-in-interest.

## XIII.  FOLLOWING DISCLOSURE OF THE IPR FUNDING SCHEME, THE PTAB DISMISSED THE IPRS

197.    After Columbia provided the PTAB with the allegations and evidence described herein, on January 24, 2019, the PTAB issued a sealed order Dismissing the Petition, Vacating Institution of *Inter Partes* Review, and Terminating *Inter Partes* Reviews of the '119 and '270 Patents.  When the PTAB releases a public version of its Order, Columbia will supplement this Complaint to include specific findings made by the PTAB in its decision to terminate the IPRs.

## XIV.  THE DAMAGE CAUSED BY DEFENDANTS' UNLAWFUL CONDUCT

198.    Due to Ventex's continued litigation of the fraudulently-filed Ventex IPRs, Columbia has spent significant funds to file responsive papers, including its Patent Owner Response and numerous briefs and exhibits relating to motions for additional discovery regarding the relationship between Ventex and Seirus; to take and defend expert and corporate witness depositions; and to prepare for and appear at numerous in-person and telephonic hearings with the PTAB Judges, including oral argument on the merits of the Ventex IPRs; all of which include filing fees, litigation costs, and attorneys' fees, even though the Ventex IPRs never should have been instituted.

199.    To date, Columbia has spent over $700,000 defending the fraudulently-filed IPRs.

### FIRST CLAIM FOR RELIEF

### (Federal RICO 18 U.S.C. § 1964(c))

200.    Plaintiff incorporates by reference and realleges paragraphs 1 through 199 set forth above.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

201.    Plaintiff alleges that Defendants' conduct, and the conduct of each Defendant named herein, constitutes racketeering as set forth in 18 U.S.C. § 1964(c).  Specifically, Congress has defined "racketeering" to include wire fraud, or committing fraud by means of electronic transmissions over wire.  The Defendants here engaged in multiple instances of wire fraud, including twice submitting fraudulent IPR petitions to the PTAB via wire, in which they falsely claimed that Ventex was the only real party in interest in these IPRs.

202.    As detailed below, Columbia alleges three different causes of action for federal RICO violations.  In summary, Section 1962(c) provides relief against parties who engage in a pattern of racketeering activity, Section 1962(a) provides relief against parties who use income generated through a pattern of racketeering activity, and Section 1962(d) provides relief against those who conspire to violate the racketeering laws.  Defendants are liable under each of these three sections of the statute.

203.    18 U.S.C. § 1964(c) allows "any person injured in his business or property by reason of a violation of section 1962 of this chapter" to "sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee …."

### Count 1: Violation of 18 U.S.C. § 1962(c)

204.    Plaintiff incorporates by reference and realleges paragraphs 1 through 202 set forth above.

205.    18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . " 18 U.S.C. § 1962(c).

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

206.    Each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3) because each Defendant is capable of holding, and does hold, "a legal or beneficial interest in property."

207.    Defendants' activities include at least two acts of racketeering activity since 2016. Accordingly, Defendants' conduct constitutes a "pattern" of racketeering activity. 18 U.S.C. § 1961(5).

208.    One such act took place on January 11, 2017, when Ventex, in furtherance of the activities, purpose and scheme of the Seirus Enterprise, falsely and fraudulently filed the '119 patent IPR petition using interstate wires.

209.    A second such act took place on January 27, 2017, when Ventex, in furtherance of the activities, purpose and scheme of the Seirus Enterprise, falsely and fraudulently filed the '270 patent IPR petition using interstate wires.

210.    Other such acts are described further below.  All of these acts were continuous over the life of the IPRs.

211.    At all times relevant hereto, beginning on or around October 21, 2016 and continuing through the termination of the IPRs, each Defendant conducted and participated in the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

212.    On or around October 21, 2016, Defendants formed an association-in-fact Enterprise, described herein as the Seirus Enterprise, within the meaning of 18 U.S.C. § 1961(4).

213.    The Seirus Enterprise consists of a group of "persons" associated together for the common purpose of intentionally and willfully defrauding Plaintiff Columbia and the PTAB by

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

creating and conducting a scheme to fraudulently file and litigate IPR Nos. 2017-00651 and 2017-00789.

214.    The Seirus Enterprise is an ongoing organization that functions as a continuing unit.  The Seirus Enterprise was created and used as a tool to effectuate Defendants' pattern of racketeering activity.

215.    All Defendants agreed to and did conduct and participate in the conduct of the Seirus Enterprise's affairs through a pattern of racketeering activity including wire fraud as defined by 18 U.S.C. § 1343, and for the unlawful purpose of intentionally defrauding Plaintiff.

216.    The wire fraud committed by Defendants is based on a scheme developed and carried out by the Seirus Enterprise wherein Defendant Ventex fraudulently electronically filed two petitions for IPR at the PTAB (using interstate wires) and then continued to litigate same, while intentionally omitting the real party-in-interest, Defendant Seirus, who funded the filing and litigation of the Ventex IPRs.

217.    The PTAB and Columbia were deceived by this omission and the fraudulent communications to the PTAB surrounding the filing of the Ventex IPRs on January 11 and 27, 2017.

218.    Defendant Ventex, as Petitioner in the Ventex IPRs, had a duty to disclose the real party-in-interest to Plaintiff and to the PTAB upon filing the Ventex IPRs on January 11 and 27, 2017.

219.    Defendant Ventex's failure to disclose the real party-in-interest to Plaintiff and to the PTAB was done intentionally and with full knowledge of all relevant facts.

220.    Defendant Ventex's failure to disclose the real party-in-interest to Plaintiff and to the PTAB upon filing the Ventex IPRs was fraudulent.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

221.    Defendant Seirus's filing of its motion to stay the co-pending Seirus Oregon Action at the direction of its officers—Defendants M. Carey, W. Carey and Murphy—on August 1, 2017 was fraudulent.

222.    Defendant Ventex's continued litigation of the Ventex IPRs without disclosing the real party-in-interest to Plaintiff and the PTAB was fraudulent.

223.    Defendant Ventex's filing of a motion to stay the co-pending Ventex Oregon Action on November 6, 2017 was fraudulent.

224.    Defendants used the wires for the transmission, delivery, or shipment of the following by the Defendants or third parties, all of which are related to the IPR Funding Scheme, and they were foreseeably caused to be sent as a result of Defendants' illegal IPR Funding Scheme:

- Wires to the U.S. PTAB used to fraudulently file papers in the Ventex IPRs on, e.g., January 11, 2017 and January 27, 2017, and continuing until termination of the IPRs;

- Wires to the U.S. District Court for the District of Oregon used to fraudulently file papers in the Seirus Oregon Action and the Ventex Oregon Action on, e.g., February 7, 2017, August 1, 2017 and November 6, 2017;

- Wires between Defendants;

- Email and telephone communications between Defendants; and

- Payments between Ventex and Seirus in, e.g., January 2017, and continuing through the term of the Exclusive Manufacturing Agreement.

225.    Defendants used the Internet and other electronic facilities to carry out the IPR Funding Scheme and to conceal their ongoing fraudulent activities.

226.    At all times discussed herein, Defendants have been involved in a plan to scheme or defraud; have had the intent to defraud and have willfully participated in the scheme to defraud with actual knowledge of its fraudulent nature and with specific intent to defraud; and

Page 42 -    COMPLAINT FOR FRAUD, RACKETEERING, ABUSE OF PROCESS, AND CIVIL CONSPIRACY

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

could have reasonably foreseen that interstate wires would be used; and actually used interstate wires to further Defendants' scheme.

227.    The Seirus Enterprise engaged in and affected interstate commerce by way of said wire fraud.

228.    The wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct.

229.    To achieve their common goals, Defendants knowingly and willfully concealed from the public, the PTAB, this Court and Plaintiff the unlawfulness of Seirus's conduct, which was committed at the instruction of, and through the directions of, M. Carey, W. Carey and Murphy.

230.    To achieve their common goals, Defendants knowingly and willfully concealed from the public, the PTAB, this Court and Plaintiff the unlawfulness of Ventex's conduct, which was committed at the instruction of, and through the directions of, Go and Park.

231.    As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than $700,000, said damages to be proven at the time of trial.

232.    Because of Defendants' violations of 18 U.S.C. § 1962(c), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

### *Count 2: Violation of 18 U.S.C. § 1962(a)*

233.    Plaintiff incorporates by reference and realleges paragraphs 1 through 232 set forth above.

Page 43 -    COMPLAINT FOR FRAUD, RACKETEERING, ABUSE
OF PROCESS, AND CIVIL CONSPIRACY

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

234.    18 U.S.C. § 1962(a) makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a).

235.    As alleged in paragraph 206, each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

236.    As alleged in the preceding section, Defendants' conduct constitutes a "pattern" of racketeering activity.  18 U.S.C. § 1961(5).

237.    At all times relevant hereto, beginning on or around October 21, 2016 and continuing at least through the termination of the IPRs, Defendants received income derived from a pattern of racketeering activity to use or invest a part of such income or the proceeds of such income in the establishment and operation of an enterprise that is engaged in, or the activities of which affect, interstate or foreign commerce, in violation of 18 U.S.C. § 1962(a).

238.    As alleged in the preceding section, on or around October 21, 2016, Defendants formed the Seirus Enterprise to effectuate Defendants' pattern of racketeering activity.

239.    All Defendants agreed to and did use income received directly from a pattern of racketeering activity to control, establish and operate the Seirus Enterprise, which was engaged in and affected interstate commerce, including wire fraud as defined by 18 U.S.C. § 1343, and for the unlawful purpose of intentionally defrauding Plaintiff.

240.    The wire fraud committed by Defendants is set forth in the preceding section and is incorporated by reference herein.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

241.    As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than $700,000, said damages to be proven at the time of trial.

242.    Because of Defendants' violations of 18 U.S.C. § 1962(a), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

### Count 3: Violation of 18 U.S.C. § 1962(d)

243.    Plaintiff incorporates by reference and realleges paragraphs 1 through 242 set forth above.

244.    18 U.S.C. § 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

245.    As alleged in the preceding sections, each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

246.    At all relevant times, beginning in or around October 21, 2016 and continuing at least through the termination of the IPRs, the Defendants and each Defendant agreed to and did conspire to violate 18 U.S.C. §§ 1962 (a) and (c), as alleged above and incorporated herein, in violation of 18 U.S.C. § 1962(d).  The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the enterprise described above; and to receive income derived from a pattern of racketeering activity and to use such income or the proceeds of such income in the establishment and operation of that enterprise.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

247.    Defendants have knowingly, willfully and intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the enterprise described previously through a pattern of racketeering activity (wire fraud).

248.    Defendants have knowingly, willfully and intentionally conspired and agreed to receive income derived from a pattern of racketeering activity (wire fraud) and to use such income or the proceeds of such income in the establishment and operation of the enterprise described previously.

249.    Defendants knew that their actions as alleged above were part of a pattern of racketeering activity and agreed to the commission of those acts to further the conspiratorial scheme described above.

250.    Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962(c) and (a), in violation of 18 U.S.C. § 1962(d).

251.    As a direct and proximate consequence of the Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than $700,000, said damages to be proven at the time of trial.

252.    Because of Defendants' violations of 18 U.S.C. § 1962(d), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF

### (Oregon RICO ORS 166.725(7)(a)(B))

253.    Plaintiff incorporates by reference and realleges paragraphs 1 through 252 set forth above.

Page 46 -    COMPLAINT FOR FRAUD, RACKETEERING, ABUSE
OF PROCESS, AND CIVIL CONSPIRACY

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

254.    Plaintiff alleges that Defendants' conduct, and the conduct of each Defendant named herein, constitutes racketeering as set forth in ORS 166.725(7)(a)(B).  Specifically, Oregon has defined "racketeering" to include such acts as perjury and false swearing.  The Defendants here engaged in multiple instances of perjury and false swearing, including when Ventex and Park gave deposition and declaration testimony in which they falsely stated that no written agreement regarding the funding of the Ventex IPRs existed between Ventex and Seirus, when in fact one did.  Defendants also engaged in perjury or false swearing when they served Columbia's Oregon attorneys with copies of the IPR Petitions that falsely stated that Ventex was the only real party in interest.  Defendants also submitted statements to this Court in motions to stay or disrupt cases before this Court under the false pretense that the IPR Petitions were properly filed and truthful when they were not.

255.    As detailed below, Columbia alleges three different causes of action for Oregon RICO violations.  In summary, ORS 166.720(3) provides relief against parties who engage in a pattern of racketeering activity, ORS 166.720(1) provides relief against parties who use income generated through a pattern of racketeering activity, and ORS 166.720(4) provides relief against those who conspire to violate the racketeering laws.  Defendants are liable under each of these three sections of the statute.

256.    ORS 166.725(7)(a) allows "any person who is injured by reason of any violation of the provisions of ORS 166.720 (Racketeering activity unlawful) (1) to (4) shall have a cause of action for three-fold the actual damages sustained and, when appropriate, punitive damages."

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

### Count 1: Violation of OR 166.720(3)

### [Oregon Counterpart to 28 U.S.C. § 1962(c)]

257.    Plaintiff incorporates by reference and realleges paragraphs 1 through 256 set forth above.

258.    ORS 166.720(3) makes it "unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity …."  ORS 166.720(3).

259.    Each Defendant, at all relevant times, is and has been a "person" within the meaning of ORS 166.715(5) because each Defendant is capable of holding, and does hold, "a legal or beneficial interest in real or personal property."

260.    At all times relevant hereto, beginning in or around October 21, 2016 and continuing at least through the termination of the IPRs, each Defendant conducted and participated in the affairs of an enterprise through a pattern of racketeering activity, in violation of ORS 166.720(3).

261.    On or around October 21, 2016, Defendants formed an association-in-fact Enterprise, described herein as the Seirus Enterprise, within the meaning of ORS 166.715(2).

262.    ORS 166.715(6) provides that the term "Racketeering activity" includes conduct of a person committed both before and after the person attains the age of 18 years, and means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce or intimidate another person to commit, i.e., any conduct that constitutes a crime, as defined in ORS 161.515, which includes perjury as defined by ORS 162.065 and false swearing as defined by ORS 162.075. ORS 166.715(6)(a)(B).

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

263.    Defendants' activities and conduct as alleged above constitute a "pattern" of racketeering because they include at least two incidents of racketeering activity since 2016 that have the same or similar intents, results, accomplices, victims or methods of commission or otherwise are interrelated by distinguishing characteristics, including a nexus to the same enterprise, and are not isolated incidents.  ORS 166.715(4).

264.    One such act took place on January 11, 2017, when Ventex, in furtherance of the activities, purpose and scheme of the Seirus Enterprise, falsely and fraudulently filed the '119 patent IPR petition under penalty of at least, e.g., perjury.

265.    A second such act took place on January 27, 2017, when Ventex, in furtherance of the activities, purpose and scheme of the Seirus Enterprise, falsely and fraudulently filed the '270 patent IPR petition under penalty of at least, e.g., perjury.

266.    Other such acts are described further herein.

267.    The Seirus Enterprise consists of a group of "persons," which includes individuals, partnerships, corporations and other profit legal entities, associated together for the common purpose of intentionally and willfully defrauding Plaintiff Columbia and the PTAB by creating and conducting a scheme to fraudulently file and litigate IPR Nos. 2017-00651 and 2017-00789, with the express purpose of using those IPRs to stay a pending litigation in this Court against Defendant Seirus on the eve of trial.

268.    The Seirus Enterprise is an ongoing organization that functions as a continuing unit.  The Seirus Enterprise was created and used as a tool to effectuate Defendants' pattern of racketeering activity.

269.    All Defendants agreed to and did conduct and participate in the conduct of the Seirus Enterprise's affairs through a pattern of racketeering activity, including perjury as defined

Page 49 -    COMPLAINT FOR FRAUD, RACKETEERING, ABUSE
        OF PROCESS, AND CIVIL CONSPIRACY

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

by ORS 162.065 and false swearing as defined by ORS 162.075, and for the unlawful purpose of intentionally defrauding Plaintiff, the PTAB and this Court.

270.     Defendants' conduct in furtherance of the Seirus Enterprise is based on a scheme developed and carried out by the Seirus Enterprise wherein Defendant Ventex fraudulently filed two petitions for IPR at the PTAB, effected service of those petitions on Columbia in Oregon, and then continued to litigate same, while intentionally omitting the real party-in-interest, Defendant Seirus, who was funding the filing and litigation of the Ventex IPRs.

271.     The PTAB and Plaintiff were deceived by this omission and the fraudulent communications to the PTAB surrounding the filing of the Ventex IPRs on January 11 and 27, 2017.

272.     Defendant Ventex, as Petitioner in the Ventex IPRs, had a duty to disclose the real party-in-interest to Plaintiff and to the PTAB upon filing the Ventex IPRs on January 11 and 27, 2017 and upon service of the Ventex IPRs on Columbia's counsel in Oregon.

273.     Defendant Ventex's failure to disclose the real party-in-interest to Plaintiff and to the PTAB was done intentionally and with full knowledge of all relevant facts.

274.     Defendant Ventex's failure to disclose the real party-in-interest to Plaintiff and to the PTAB upon filing the Ventex IPRs, and upon serving the petitions on Columbia in Oregon, was fraudulent.

275.     Defendant Seirus's filing of its motion to stay the co-pending Seirus Oregon Action at the direction of its officers—Defendants M. Carey, W. Carey and Murphy—on August 1, 2017 was fraudulent.

276.     Defendant Ventex's continued litigation of the Ventex IPRs without disclosing the real party-in-interest to Plaintiff and the PTAB was fraudulent.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

277.    Defendant Ventex's filing of a motion to stay the co-pending Ventex Oregon Action on November 6, 2017 was fraudulent.

278.    Defendants' conduct, in furtherance of the conspiracies and fraudulent purpose as alleged above, constitutes perjury as defined by ORS 162.065 because Defendants made false sworn statements or false unsworn declarations in regard to a material issue, knowing them to be false.  Specifically, Defendant Ventex made a false sworn statement or false unsworn declaration in regard to a material issue, knowing it to be false, when it effected service of the fraudulent IPR petitions on Columbia in Oregon.  Further, Defendant Ventex, through its corporate representative Defendant Park, made false sworn statements in regard to a material issue, knowing them to be false, when Defendant Park testified that the agreement between Ventex and Seirus regarding the IPR Funding Scheme was never agreed to in writing, when in fact it was executed in writing on October 21, 2016 and Park was included on emails concerning the executed agreement.  These false sworn statements were transmitted to outside counsel for Plaintiff in Oregon.  Defendant Park and Defendant Ventex, through its corporate representative Park, also made false sworn statements in regard to a material issue, knowing them to be false, regarding the existence of the written agreement between Ventex and Seirus during Park's personal and corporate depositions that took place in Oregon on December 11-12, 2018.

279.    Defendants' conduct, in furtherance of the conspiracies and fraudulent purpose as alleged above, constitutes false swearing as defined by ORS 162.075 because Defendants made a false sworn statement or false unsworn declaration, knowing it to be false.  Specifically, Defendant Ventex made a false sworn statement or false unsworn declaration in regard to a material issue, knowing it to be false, when it effected service of the fraudulent IPR petitions on Columbia in Oregon.  Further, Defendant Ventex, through its corporate representative Defendant

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

Park, made false sworn statements, knowing them to be false, when Defendant Park testified that the agreement between Ventex and Seirus regarding the IPR Funding Scheme was never agreed to in writing, when in fact it was executed in writing on October 21, 2016. These false sworn statements were transmitted to outside counsel for Columbia in Oregon. Defendant Park and Defendant Ventex, through its corporate representative Park, also made false sworn statements, knowing them to be false, regarding the existence of the written agreement between Ventex and Seirus during Park's depositions that took place in Oregon on December 11-12, 2018.

280.    To achieve their common goals, Defendants knowingly and willfully concealed from the public, the PTAB, this Court and Plaintiff the unlawfulness of Seirus's conduct, which was committed at the instruction of, and through the directions of, M. Carey, W. Carey and Murphy.

281.    To achieve their common goals, Defendants knowingly and willfully concealed from the public, the PTAB, this Court and Plaintiff the unlawfulness of Ventex's conduct, which was committed at the instruction of, and through the directions of, Go and Park.

282.    As a direct consequence of Defendants' conduct as alleged herein, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than $700,000, said damages to be proven at the time of trial.

283.    Because of Defendants' violations of ORS 166.720(3), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees. ORS 166.725(7).

284.    For the reasons stated in the preceding section, Plaintiff is entitled to punitive damages from the Defendants, and each of them. ORS 166.725(7).

Page 52 -    COMPLAINT FOR FRAUD, RACKETEERING, ABUSE
OF PROCESS, AND CIVIL CONSPIRACY

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

### Count 2:  Violation of OR 166.720(1)

### [Oregon Counterpart to 28 U.S.C. § 1962(a)]

285.    Plaintiff incorporates by reference and realleges paragraphs 1 through 284 set forth above.

286.    ORS 166.720(1) makes it "unlawful for any person who has knowingly received any proceeds derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest or equity in, real property or in the establishment or operation of any enterprise."  ORS 166.720(1).

287.    As alleged in the preceding section, each Defendant, at all relevant times, is and has been a "person" within the meaning of ORS 166.715(5).

288.    At all times relevant hereto, beginning on or around October 21, 2016 and continuing until the termination of the IPRs, Defendants received proceeds derived from a pattern of racketeering activity to use or invest a part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest or equity in, real property or in the establishment or operation of any enterprise, in violation of ORS 166.720(1).

289.    As alleged in the preceding section, Defendants' activities, through the Seirus Enterprise, constitute a pattern of racketeering activity, which includes perjury and false swearing as defined by Oregon law.

290.    All Defendants agreed to and did receive proceeds derived from a pattern of racketeering activity, including perjury as defined by ORS 162.065 and false swearing as defined by ORS 162.075, and used such proceeds in the establishment and operation of the Seirus

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

Enterprise's affairs, and for the unlawful purpose of intentionally defrauding Plaintiff, the PTAB and this Court.

291.    Defendants' conduct, in furtherance of the conspiracies and fraudulent purpose as alleged above, constitutes perjury as defined by ORS 162.065, as alleged in paragraph 278.

292.    Defendants' conduct, in furtherance of the conspiracies and fraudulent purpose as alleged above, constitutes false swearing as defined by ORS 162.075, as alleged in paragraph 279 .

293.    To achieve their common goals, Defendants knowingly and willfully concealed from the public, the PTAB, this Court and Plaintiff the unlawfulness of Seirus's conduct, which was committed at the instruction of, and through the directions of, M. Carey, W. Carey and Murphy.

294.    To achieve their common goals, Defendants knowingly and willfully concealed from the public, the PTAB, this Court and Plaintiff the unlawfulness of Ventex's conduct, which was committed at the instruction of, and through the directions of, Go and Park.

295.    As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than $700,000, said damages to be proven at the time of trial.

296.    Because of Defendants' violations of ORS 166.720(3), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.  ORS 166.725(7).

297.    For the reasons stated in the preceding section, Plaintiff is entitled to punitive damages from the Defendants, and each of them.  ORS 166.725(7).

Page 54 -    COMPLAINT FOR FRAUD, RACKETEERING, ABUSE
             OF PROCESS, AND CIVIL CONSPIRACY

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

### Count 3:  Violation of OR 166.720(4)

### [Oregon Counterpart to 28 U.S.C. § 1962(d)]

298.    Plaintiff incorporates by reference and realleges paragraphs 1 through 297 set forth above.

299.    ORS 166.720(4) makes it "unlawful for any person to conspire or endeavor to violate any of the provisions of subsections (1), (2) or (3) of this section."

300.    At all relevant times, each Defendant is and has been a "person" within the meaning of ORS 166.715(5).

301.    At all relevant times, beginning in or around October 21, 2016 and continuing at least through the termination of the IPRs, the Defendants and each Defendant agreed to and did conspire to violate ORS 166.720(1) and (3), as alleged above and incorporated herein, in violation of ORS 166.720(4).  The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the enterprise described previously; and to receive proceeds derived from a pattern of racketeering activity and to use such proceeds, or the proceeds derived from the use thereof, in the establishment and operation of the enterprise described previously.

302.    Defendants have knowingly, willfully and intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the enterprise described previously through a pattern of racketeering activity (perjury and false swearing).

303.    Defendants have knowingly, willfully and intentionally conspired and agreed to receive proceeds derived from a pattern of racketeering activity (perjury and false swearing) and to use such proceeds in the establishment and operation of the enterprise described above.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

304.    Defendants knew that their actions as alleged above were part of a pattern of racketeering activity and agreed to the commission of those acts to further the conspiratorial scheme described above.

305.    Defendants' conduct constitutes a conspiracy to violate ORS 166.720(1) and (3), in violation of ORS 166.720(4).

306.    As a direct and proximate consequence of the Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of ORS 166.720(4), Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than $700,000, said damages to be proven at the time of trial.

307.    Because of Defendants' violations of ORS 166.720(4), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.  ORS 166.725(7).

308.    For the reasons stated in the preceding section, Plaintiff is entitled to punitive damages from the Defendants, and each of them.  ORS 166.725(7).

### THIRD CLAIM FOR RELIEF

### (Fraud - Oregon)

309.    Plaintiff incorporates by reference and realleges paragraphs 1 through 308 set forth above.

310.    On January 11 and 27, 2017, at the time of filing the Ventex IPRs, and when Ventex served Columbia with the petitions for IPR in Oregon, Defendants committed fraud under Oregon law when they intentionally and falsely represented to Columbia and the PTAB that Ventex was the only real party-in-interest in the Ventex IPRs; and continued to make this

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

representation by failing to file updated mandatory notices in the Ventex IPRs that identified Seirus as the real party-in-interest.

311.    From 2017 through the present, Defendants have intentionally and falsely represented on invoices and purchase orders for Ventex's HeatWave fabric that a "license fee" was being paid by Seirus to Ventex.

312.    Rather than paying a "license fee," Seirus was actually funding the Ventex IPRs through payments masked as "license fees" or "surcharges," and those payments were made intentionally and with the purpose of defrauding the PTAB and Columbia.

313.    On October 30, 2018 and November 9, 2018, Defendant Ventex, through its corporate representative Defendant Park, intentionally and falsely represented, via sworn statements in Defendant Park's declaration and deposition testimony, respectively, that the agreement between Ventex and Seirus regarding the IPR Funding Scheme was never agreed to in writing, when in fact it was executed in writing on October 21, 2016.  These false sworn statements, which constitute perjury under Oregon law, were transmitted to outside counsel for Plaintiff located in Oregon.

314.    On December 11-12, 2018, Defendant Ventex, through its corporate representative Defendant Park, and Defendant Park in his personal capacity, intentionally and falsely represented, via sworn statements during Mr. Park's depositions in Oregon, that, notwithstanding abundant evidence to the contrary, he never had knowledge that there was a written agreement, even when he emailed Seirus about it.

315.    These false representations are material because as of April 2015 Seirus was time-barred from filing any IPRs on the '119 and '270 patents.  Had Seirus been identified as a real party-in-interest, the PTAB would have been statutorily prohibited from instituting the Ventex

Page 57 -    COMPLAINT FOR FRAUD, RACKETEERING, ABUSE OF PROCESS, AND CIVIL CONSPIRACY

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

IPRs.  They are further material because Defendants have fraudulently used the Ventex IPRs to move for stays of the co-pending Seirus Oregon Action and Ventex Oregon Action regarding the same patents.  They are further material because the October 21, 2016 written agreement is in fact the basis of the IPR Funding Scheme.

316.    Specifically, on February 7, 2017, Defendant Seirus knowingly concealed and failed to make known material facts when it filed a notice of third-party petitions for *inter partes* review in the Seirus Oregon Action in this Court.  For example, in notifying the Court, Seirus failed to apprise the Court that the Ventex IPRs had been filed and were being litigated fraudulently. Seirus knew it was a real party-in-interest to the Ventex IPRs and thus would be statutorily barred from filing any petitions for IPR on the '119 and '270 patents.

317.    Further, on February 8, 2017 and August 1, 2017, Defendant Seirus knowingly concealed and failed to make known material facts when it filed motions to stay the Seirus Oregon Action based on the Ventex IPRs.  For example, in filing those motions, Seirus failed to apprise the Court that the Ventex IPRs had been filed and were being litigated fraudulently. Seirus knew it was a real party-in-interest to the Ventex IPRs and thus would be statutorily barred from filing any petitions for IPR on the '119 and '270 patents.

318.    Further, on September 1, 2017, Defendant Seirus knowingly concealed and failed to make known material facts when it orally moved this Court in the Seirus Oregon Action to stay the case pending the Final Written Decision in the Ventex IPRs.  For example, in making this oral motion, Seirus failed to apprise the Court that the Ventex IPRs had been filed and were being litigated fraudulently.  Seirus knew it was a real party-in-interest to the Ventex IPRs and thus would be statutorily barred from filing any petitions for IPR on the '119 and '270 patents.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

319.    Further, on November 6, 2017, Defendant Ventex knowingly concealed and failed to make known material facts when it filed a motion to stay the Ventex Oregon Action in this Court based on the Ventex IPRs.  For example, in filing this motion, Ventex failed to apprise the Court that the Ventex IPRs had been filed and were being litigated fraudulently.  Ventex knew that Seirus was a real party-in-interest to the Ventex IPRs and thus would be statutorily barred from filing any petitions for IPR on the '119 and '270 patents.

320.    At all relevant times Defendants had knowledge of the falsity of their representation that Ventex is the only real party-in-interest to the Ventex IPRs.

321.    At all relevant times Defendants had knowledge that the "license fees" and "surcharges" included on purchase orders and invoices between Seirus and Ventex were a sham.

322.    At all relevant times Defendants had knowledge of the falsity of their representation that the agreement relating to the IPR Funding Scheme was not reduced to writing.

323.    Defendants intended to use their false representations and their misrepresentations and concealments to delay trials in the co-pending Seirus Oregon Action and Ventex Oregon Action and did in fact use them for that purpose.

324.    Columbia did not know at the time the Ventex IPRs were filed that Ventex and Seirus entered into a written agreement on October 21, 2016 regarding the IPR Funding Scheme, nor did Columbia know of the IPR Funding Scheme.

325.    Columbia did not know at the time the Ventex IPRs were filed that the "license fees" and "surcharges" were being paid to Ventex by Seirus as a sham arrangement to pay for the IPRs.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

326.    Columbia was forced to respond to Seirus's false representations, misrepresentations, and omissions to this Court in the Seirus Oregon Action.

327.    Columbia was forced to respond to Seirus's false representations, misrepresentations, and omissions to this Court in the Seirus Oregon Action to the extent of participating in and defending against the motion to dismiss.

328.    The Court relied upon Ventex's false representations, misrepresentations, and omissions to this Court, and the Court stayed the Ventex Oregon Action as a result.

329.    Columbia had a right to expect full and fair communications from Defendants regarding the real party-in-interest to the Ventex IPRs and had a right to rely upon same, especially because Ventex was statutorily required to identify any and all real parties-in-interest to the Ventex IPRs and was required by the PTAB's discovery rules to disclose, e.g., the October 21, 2016 written agreement and documents relating to same.

330.    Defendants, and each of them, also conspired to commit the frauds alleged herein, in that all Defendants conspired to accomplish the IPR Funding Scheme and had a meeting of the minds to accomplish that goal through one or more unlawful acts of fraud, as alleged herein, and Columbia suffered harm as a result of Defendants' conduct and conspiracy.

331.    As a direct and proximate consequence of the conduct of Defendants, and each of them as alleged herein, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than $700,000, said damages to be proven at the time of trial.

332.    Because of Defendants' frauds as described herein, Defendants are liable to Plaintiff for costs and disbursements, including enhanced prevailing party fees pursuant to ORS 20.190(3) and reasonable attorneys' fees.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

333.    Defendants' conduct as alleged above was done in furtherance of their own private interests, and was willful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm.  Accordingly, Columbia is entitled to an award of punitive damages from Defendants and each of them in an amount to be proven at trial and sufficient to punish, penalize and deter Defendants from engaging in such conduct in the future.

## FOURTH CLAIM FOR RELIEF

### (Actual Fraud – Virginia)

334.    Plaintiff incorporates by reference and realleges paragraphs 1 through 333 set forth above.

335.    On January 11 and 27, 2017, at the time of filing the Ventex IPRs, Defendants committed actual fraud under Virginia law when they intentionally and falsely represented to Columbia and the PTAB that Ventex was the only real party-in-interest in the Ventex IPRs; and continued to make this representation by failing to file updated mandatory notices in the Ventex IPRs that identified Seirus as the real party-in-interest.

336.    From 2017 through the present, Defendants have intentionally and falsely represented on invoices and purchase orders for Ventex's HeatWave fabric that a "license fee" was being paid by Seirus to Ventex, even though no license agreement between Seirus and Ventex existed.

337.    Rather than paying a "license fee," Seirus was actually funding the Ventex IPRs through payments masked as "license fees" or "surcharges"; and those payments were made intentionally and with the purpose of defrauding the PTAB and Columbia.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

338.    On October 30, 2018 and November 9, 2018, Defendant Ventex, through its corporate representative Defendant Park, intentionally and falsely represented, via sworn statements in Defendant Park's declaration and deposition testimony, respectively, that the agreement between Ventex and Seirus regarding the IPR Funding Scheme was never agreed to in writing, when in fact it was executed in writing on October 21, 2016.  This testimony was provided in conjunction with the IPRs that were being litigated before a tribunal based in Virginia.

339.    On December 11-12, 2018, Defendant Ventex, through its corporate representative Defendant Park, and Defendant Park in his personal capacity, intentionally and falsely represented, via sworn statements during Mr. Park's depositions in Oregon, that, notwithstanding abundant evidence to the contrary, he never had knowledge that there was a written agreement, even when he emailed Seirus about it.  This testimony was provided in conjunction with the IPRs that were being litigated before a tribunal based in Virginia.

340.    These false representations are material because as of April 2015 Seirus was time-barred from filing any IPRs on the '119 and '270 patents.  Had Seirus been identified as a real party-in-interest, the PTAB would have been statutorily prohibited from instituting the Ventex IPRs.  They are further material because the October 21, 2016 written agreement is in fact the basis of the IPR Funding Scheme.

341.    At all relevant times Defendants had knowledge of the falsity of their representation that Ventex is the only real party-in-interest to the Ventex IPRs.

342.    At all relevant times Defendants had knowledge of the falsity of their representation that the "license fees" and "surcharges" included on purchase orders and invoices between Seirus and Ventex were a sham.

Page 62 -    COMPLAINT FOR FRAUD, RACKETEERING, ABUSE
                 OF PROCESS, AND CIVIL CONSPIRACY

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

343.    At all relevant times Defendants had knowledge of the falsity of their representation that the agreement relating to the IPR Funding Scheme was not reduced to writing.

344.    Columbia did not know at the time the Ventex IPRs were filed that Ventex and Seirus entered into a written agreement on October 21, 2016 regarding the IPR Funding Scheme, nor did Columbia know of the IPR Funding Scheme.

345.    Columbia did not know at the time the Ventex IPRs were filed that the "license fees" and "surcharges" were being paid to Ventex by Seirus as a sham arrangement to pay for the IPRs.

346.    Columbia was forced to respond to the false representations Ventex made to Columbia and the PTAB to the extent of participating in and defending against the fraudulently-filed IPRs.

347.    Columbia had a right to expect full and fair communications from Defendants regarding the real party-in-interest to the Ventex IPRs and had a right to rely upon same, especially because Ventex was statutorily required to identify any and all real parties-in-interest to the Ventex IPRs and was required by the PTAB's discovery rules to disclose, e.g., the October 21, 2016 written agreement and documents relating to same.

348.    As a direct and proximate consequence of the conduct of Defendants, and each of them as alleged herein, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than $700,000, said damages to be proven at the time of trial.

349.    Because of Defendants' frauds as described herein, Defendants are liable to Plaintiff for costs and disbursements and reasonable attorneys' fees.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

350.    Defendants' conduct as alleged above was done in furtherance of their own private interests, and was willful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm.  Accordingly, Columbia is entitled to an award of punitive damages from Defendants and each of them in an amount to be proven at trial and sufficient to punish, penalize and deter Defendants from engaging in such conduct in the future.

### FIFTH CLAIM FOR RELIEF

### (Civil Conspiracy to Commit Fraud – Virginia (VA Code § 18.2-499))

351.    Plaintiff incorporates by reference and realleges paragraphs 1 through 350 set forth above.

352.    VA Code § 18.2-499 makes it unlawful for "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act."

353.    At all relevant times, the Defendants agreed to and did conspire to willfully and maliciously injure Plaintiff in its reputation, trade, business or profession through the fraud committed by the Seirus Enterprise as described below.

354.    Defendants, through the Seirus Enterprise, have knowingly, willfully and intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the Seirus Enterprise as alleged in the preceding section.

355.    Defendants, and each of them, also conspired to commit the frauds alleged herein, in that all Defendants conspired to accomplish the IPR Funding Scheme and had a meeting of the

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

minds to accomplish that goal through one or more unlawful acts of fraud, as alleged herein, and Columbia suffered harm as a result of Defendants' conduct and conspiracy.

356.    As a direct and proximate consequence of the Defendants' conspiracy, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than $700,000, said damages to be proven at the time of trial.

357.    Because of Defendants' violations of VA Code § 18.2-499, Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees and any injunction the court deems reasonable.  VA Code § 18.2-500.

358.    Defendants' conduct as alleged in paragraphs 351-357 above was done in furtherance of their own private interests, and was willful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm.  Accordingly, Columbia is entitled to an award of punitive damages from Defendants and each of them in an amount to be proven at trial and sufficient to punish, penalize and deter Defendants from engaging in such conduct in the future.

## SIXTH CLAIM FOR RELIEF

### (Civil Conspiracy to Commit Fraud – Virginia (common law))

359.    Plaintiff incorporates by reference and realleges the allegations in paragraphs 1 through 358 set forth above.

360.    Virginia law makes it unlawful for a combination of two or more persons to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means when there is resultant damage caused by the defendants' acts committed in furtherance of the conspiracy.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

361.    At all relevant times, the Defendants agreed to and did conspire to willfully and maliciously injure Plaintiff in its reputation, trade, business or profession through the fraud committed by the Seirus Enterprise as described below.

362.    Defendants, through the Seirus Enterprise, have knowingly, willfully and intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the Seirus Enterprise as described in the preceding section.

363.    Defendants, and each of them, also conspired to commit the frauds alleged herein, in that all Defendants conspired to accomplish the IPR Funding Scheme and had a meeting of the minds to accomplish that goal through one or more unlawful acts of fraud, as alleged herein, and Columbia suffered harm as a result of Defendants' conduct and conspiracy.

364.    As a direct and proximate consequence of the Defendants' conspiracy, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than $700,000, said damages to be proven at the time of trial.

365.    Defendants' conduct as alleged in paragraphs 359-364 above was done in furtherance of their own private interests, and was willful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm.  Accordingly, Columbia is entitled to an award of punitive damages from Defendants and each of them in an amount to be proven at trial and sufficient to punish, penalize and deter Defendants from engaging in such conduct in the future.

## SEVENTH CLAIM FOR RELIEF

### (Abuse of Process - Virginia)

366.    Plaintiff incorporates by reference and realleges paragraphs 1 through 365 set forth above.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

367.    Defendants' conduct amounts to an abuse of process under Virginia law because they maliciously misused the Ventex IPRs to accomplish a purpose not warranted.  Specifically, Defendants filed and litigated the Ventex IPRs with an ulterior purpose and improperly used process in the litigation of the Ventex IPRs.

368.    Defendant Ventex, at the direction of at least Go, Park, Seirus, M. Carey, W. Carey, Murphy and John Doe Numbers 1-5, and with funding from Seirus, filed petitions for the Ventex IPRs on January 11 and 27, 2017 with knowledge that the law required it to identify all real parties-in-interest.

369.    Defendant Ventex, at the direction of at least Go, Park, Seirus, M. Carey, W. Carey, Murphy and John Doe Numbers 1-5, and with funding from Seirus, identified only itself as a real party-in-interest, and did so with the knowledge that Seirus was a real party-in-interest to the Ventex IPRs, and with the knowledge that it was obligated by law to identify *all* real parties-in-interest to the Ventex IPRs.

370.    Defendants' fraudulent filing, and subsequent litigation, of the Ventex IPRs was done intentionally and with the purpose and ulterior motive of delaying trial in the co-pending Seirus Oregon Action by way of the filing of a motion to stay in the Seirus Oregon Action.

371.    Ventex, on November 6, 2017, also used the fraudulently-filed Ventex IPRs to move for a stay in the later co-pending Ventex Oregon Action, and was granted the stay by this Court.

372.    Defendants' continued filing of papers in the Ventex IPRs while intentionally omitting the real party-in-interest, Seirus, was an improper use of the process in the regular litigation of the IPR proceedings.

Page 67 -    COMPLAINT FOR FRAUD, RACKETEERING, ABUSE
             OF PROCESS, AND CIVIL CONSPIRACY

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

373.    As a direct and proximate consequence of the conduct of Defendants, and each Defendant, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than $700,000, said damages to be proven at the time of trial.

374.    Defendants' conduct was in furtherance of their own private interests, and was willful, malicious, wanton, and oppressive, and done with conscious indifference to the consequences and with specific intent to harm.  Accordingly, Columbia is entitled to an award of punitive damages from Defendants, and each of them, in an amount to be proven at trial and sufficient to punish, penalize and deter Defendants from engaging in such conduct in the future.

### EIGHTH CLAIM FOR RELIEF

### (Exemplary Punitive Damages)

375.    Plaintiff incorporates by reference and realleges paragraphs 1 through 374 set forth above.

376.    Defendants' actions alleged above were malicious, willful and wanton, and were made with specific intent to harm Plaintiff.

377.    Moreover, Defendants' actions violated 18 U.S.C. § 1343 as alleged in Plaintiff's First Claim for Relief, above.

378.    Moreover, Defendants' actions violated ORS 162.065 and 162.075, as alleged in Plaintiff's Second Claim for Relief, above.

379.    Moreover, Defendants' actions constitute fraud and conspiracy to commit fraud in the States of Oregon and Virginia as alleged in Plaintiff's Third through Sixth Claims for Relief, above.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

380.    Moreover, Defendants actions constitute abuse of process in the State of Virginia as alleged in Plaintiff's Seventh Claim for Relief, above.

381.    In order to deter such conduct in the future, Plaintiff should be awarded exemplary punitive damages in an amount of not less than $20,000,000.

## JURY DEMAND

382.    Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury of all issues so triable that are raised herein or which hereinafter may be raised in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.    Finding that all defendants are jointly and severally liable for all damage caused to Plaintiff;

2.    Awarding Plaintiff monetary damages in an amount not less than $700,000, said amount to be proven at trial;

3.    Awarding Plaintiff enhanced (treble) monetary damages pursuant to 18 U.S.C. § 1964(c) and ORS 166.725(7)(a);

4.    Awarding Plaintiff its litigation expenses, including reasonable attorneys' fees, costs, and disbursements;

5.    Awarding Plaintiff punitive damages in the sum of not less than $20,000,000 or an amount otherwise to be decided by a jury; and

6.    Granting such other relief as the case may require or as may be deemed proper and equitable.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

Dated this 29th day of January, 2019.        Respectfully submitted,

SCHWABE, WILLIAMSON & WYATT, P.C.


By: *s/ Nika Aldrich*
Nika Aldrich., OSB #160306
Email: naldrich@schwabe.com
David W. Axelrod, OSB #750231
Email: daxelrod@schwabe.com
Telephone: 503-222-9981
Facsimile: 503-796-2900

*Of Attorneys for Plaintiff*
*Columbia Sportswear North America, Inc.*

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900