**Renée E. Rothauge, OSB #903712**
reneerothauge@markowitzherbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@markowitzherbold.com
MARKOWITZ HERBOLD PC
1211 SW Fifth Avenue, Suite 3000
Portland, OR 97204
Telephone: (503) 295-3085
Facsimile: (503) 323-9105

**Christopher S. Marchese** (admitted *pro hac vice*)
marchese@fr.com
**Seth M. Sproul** (admitted *pro hac vice*)
sproul@fr.com
**Oliver J. Richards** (admitted *pro hac vice*)
orichards@fr.com
**Tucker N. Terhufen** (admitted *pro hac vice*)
terhufen@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

*Attorneys for Defendant Seirus Innovative Accessories, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON, PORTLAND DIVISION

**COLUMBIA SPORTSWEAR NORTH AMERICA, INC.,** an Oregon corporation,

Plaintiff,

v.

**SEIRUS INNOVATIVE ACCESSORIES, INC.,** a Utah corporation, **VENTEX CO., LTD.,** a foreign company, **MICHAEL J. CAREY,** an individual, **WENDY M. CAREY,** an individual, **ROBERT (BOB) MURPHY,** an individual, **KYUNG-CHAN GO,** an individual, **MAN-SIK (PAUL) PARK,** an individual, and **JOHN DOE NUMBERS 1-5,** individuals,

Defendants.

Case No.: 3:19-cv-00137-SI

**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, FOR LACK OF VENUE, AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Hon. Michael H. Simon

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

Page(s)

LOCAL RULE 7 CERTIFICATION ........................................................................1

MOTION ........................................................................................................1

INTRODUCTION ...........................................................................................1

BACKGROUND .............................................................................................3

ARGUMENT ..................................................................................................3

I.    SEIRUS MUST BE DISMISSED BECAUSE JURISDICTION AND VENUE
      ARE LACKING IN OREGON ..................................................................3

II.   COLUMBIA'S COMPLAINT FAILS TO STATE ANY VIABLE CLAIM .............5

      A.    Columbia Cannot Prove Entitlement to Damages .................................6

            1.    Columbia Is Barred From Seeking Attorney Fees for Prior Litigation In
                  This Case. ..........................................................................6

            2.    Columbia cannot prove its alleged damages are attributable to Seirus'
                  and Ventex' alleged actions .....................................................8

      B.    Columbia Cannot Maintain Claims Based on Seirus' And Ventex's Litigation
            Filings. ..................................................................................9

            1.    The *Noerr-Pennington* doctrine immunizes Seirus from liability..............10

            2.    Seirus' and Ventex's submissions to courts are protected by the
                  litigation privilege, thus barring Columbia's allegations of fraud .........20

      C.    Columbia's State Law Claims Are Preempted By Federal Law. ........................21

      D.    Columbia Failed to Plead a Sufficient Pattern of Racketeering Activity..........24

      E.    Columbia Cannot Plead Facts Sufficient to Sustain the § 1962(a) Federal
            Claim or the Oregon State Equivalent Claim. ....................................31

CONCLUSION ..............................................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agostini v. State,*
  255 A.D. 264, 5 N.Y.S.2d 732 (App. Div. 1938)........................................................7

*Allwaste, Inc. v Hecht,*
  65 F.3d 1523 (9th Cir. 1995) ...................................................................27, 28

*Anza v. Ideal Steel Supply Corp.,*
  547 U.S. 451 (2006) ...............................................................................8, 9

*Applications in Internet Time, LLC v. RPX Corp.,*
  897 F.3d 1336 (Fed. Cir. 2018) ...................................................................14

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...........................................................................5, 6, 18

*Ashley Furniture Indus., Inc. v. Am. Signature, Inc.,*
  No. 2:11-CV-427, 2013 WL 12178524 (S.D. Ohio Sept. 13, 2013) ......................................24

*Baltimore Scrap Corp. v. David J. Joseph Co.,*
  81 F.Supp.2d 602 (D.Md. 2000), aff'd, 237 F.3d 394 (4th Cir. 2001) .................................11

*Bankers Trust Co. v. Rhoades,*
  859 F.2d 1096 (2d Cir. 1988) ......................................................................6

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...............................................................................6

*BNSF Ry. Co. v. Tyrrell,*
  137 S. Ct. 1549 (2017) .............................................................................4

*Bristol-Myers Squibb v. Superior Court,*
  137 S. Ct. 1773....................................................................................5

*Brownsville Golden Age Nursing Home, Inc. v. Wells,*
  839 F.2d 155 (3d Cir. 1988) .......................................................................11

*Bryant v. Mattel, Inc.,*
  573 F.Supp.2d 1254 (C.D. Cal. 2007)............................................................25, 27

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1995) ...............................................................................5

*Burlington Northern R. Co. v. Woods,*
  480 U.S. 1 (1987) ............................................................................................22

*In re Burzynski,*
  989 F.2d 733 (5th Cir. 1993) ...........................................................................33

*California Motor Transport Co. v. Trucking Unlimited,*
  404 U.S. 508 (1972) .........................................................................................11

*CBS Interactive Inc. v. Nat'l Football League Players Ass'n, Inc.,*
  259 F.R.D. 398 (D. Minn. 2009) ......................................................................13

*Chambers v. Baltimore & O.R. Co.,*
  207 U.S. 142 (1907) .........................................................................................12

*Clegg v. Cult Awareness Network,*
  18 F.3d 752 (9th Cir. 1994) ...............................................................................6

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories,*
  Case No. 17-cv-1781 (S.D. Cal. Sept. 29, 2017) .............................................15

*Crouter v. United Adjusters, Inc.,*
  259 Or. 348, 485 P.2d 1208 (1971) ...................................................................6

*Donohoe Const. Co. v. Mount Vernon Assocs.,*
  235 Va. 531, 369 S.E.2d 857 (1988) ...............................................................20

*Dow Chem. Co. v. Calderon,*
  422 F.3d 827 (9th Cir. 2005) .............................................................................4

*East-Bibb Twiggs Neighborhood Ass'n v. Macon-Bibb Planning & Zoning Com'n,*
  674 F. Supp. 1475 (M.D. Ga. 1987) ................................................................22

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,*
  365 U.S. 127 (1961) .........................................................................................10

*Elizabeth Retail Properties LLC v. KeyBank Nat. Ass'n,*
  83 F. Supp. 3d 972 (D. Or. 2015) ....................................................................14

*Elliott v. Foufas,*
  867 F.2d 877 (5th Cir. 1989) ...........................................................................32

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta,*
  458 U.S. 141 ...............................................................................................23, 24

*First Bank of Marietta v. Hartford Underwriters Ins. Co.,*
  307 F.3d 501 (6th Cir. 2002) ...........................................................................23

*Fleischmann Distilling Corp. v. Maier Brewing Co.,*
    386 U.S. 714 (1967) ...............................................................................7

*H.J. Inc. v. Nw. Bell Tel. Co.,*
    492 U.S. 229 (1989) .........................................................................25, 28

*Hanna v. Plumer,*
    380 U.S. 460 (1965) ............................................................................22

*Howard v. America Online Inc.,*
    208 F.3d 741 (9th Cir. 2000) ...............................................................28

*Jarvis v. Regan,*
    833 F.2d 149 (9th Cir. 1987) ..........................................................30, 31

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.,*
    940 F.2d 397 (9th Cir. 1991) ....................................................19, 25, 27

*Landers v. Quality Commc'ns, Inc.,*
    771 F.3d 638 (9th Cir. 2014), cert. denied, 135 S. Ct. 1845 (2015) .........5

*Mantia v. Hanson,*
    190 Or. App. 412, 79 P.3d 404 (2003) ...............................................20, 21

*McKnett v. St. Louis & S.F. R. Co.,*
    292 U.S. 230 (1934) .............................................................................12

*Mead v. Retail Clerks Int'l Ass'n, Local Union No. 839, AFL-CIO,*
    523 F.2d 1371 (9th Cir. 1975) .................................................................7

*Medallion Tele. Enter. v. SelecTV of Cal., Inc.,*
    833 F.2d 1360 (9th Cir. 1987) .....................................................28, 29, 31

*Mercatus Group, LLC v. Lake Forest Hosp.,*
    641 F.3d 834 (7th Cir. 2011) ................................................................12

*Miller v. Yokohama Tire Corp.,*
    358 F.3d 616 (9th Cir. 2004) ...........................................................17, 26

*Montalvo v. Spirit Airlines,*
    508 F.3d 464 (9th Cir. 2007) ................................................................23

*Moore v. Kayport Package Express, Inc.,*
    885 F.2d 531 (9th Cir. 1987) ...........................................................25, 27

*Mullis v. United States Bankr. Ct.,*
    828 F.2d 1385 (9th Cir. 1987) ...............................................................6

*Nat'l Fed'n of the Blind v. United Airlines Inc.,*
  813 F.3d 718 (9th Cir. 2016) ...................................................................22

*Neder v. United States,*
  527 U.S. 1 (1999) ................................................................................18

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,*
  508 U.S. 49 (1993).........................................................................13, 14

*Rao v. BP Prods. North America, Inc.,*
  589 F.3d 389 (7th Cir. 2009) .................................................................31

*Religious Tech. Ctr. v. Wollersheim,*
  971 F.2d 364 (9th Cir. 1992) ...........................................................30, 31

*Rezner v. Bayerische Hypo-Und Vereinsbank AG,*
  630 F.3d 866 (9th Cir 2010) ................................................................8, 9

*Ricotta v. State of California,*
  4 F.Supp.2d 961 (S.D. Cal. 1998) ....................................................29, 30

*Sedima, S.P.R.L. v. Imrex Co.,*
  473 U.S. 479 (1985) ..............................................................................6

*Sever v. Alaska Pulp Corp.,*
  978 F.2d 1529 (9th Cir. 1992) .....................................................29, 30, 31

*Sosa v. DIRECTV Inc.,*
  437 F.3d 923 (9th Cir. 2006) ...........................................................*passim*

*Stickney v. Goward,*
  161 Minn. 457 (1925) ............................................................................7

*Summit Valley Indus. Inc. v. Local 112, United Bhd. of Carpenters & Joiners of Am.,*
  456 U.S. 717 (1982) ..............................................................................7

*Sybersound Records, Inc. v. UAV Corp.,*
  517 F.3d 1137 (9th Cir. 2008) ..........................................................31, 32

*Tudor Assocs., Ltd., II By & Through Callaway v. AJ & AJ Servicing, Inc.,*
  36 F.3d 1094 (4th Cir. 1994) .................................................................24

*United Mine Workers of America v. Pennington,*
  381 U.S. 657 (1965) .............................................................................10

*United States v. Pendergraft,*
  297 F.3d 1198 (11th Cir. 2002) ........................................................20, 21

*Walker v. Armco Steel Corp.*,
446 U.S. 740 (1980) ................................................................................22

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ..............................................................11

*Wi-Fi One, LLC v. Broadcom Corporation*,
887 F.3d 1329 (Fed. Cir. 2018) ............................................................15

*Zedd v. Jenkins*,
194 Va. 704, 74 S.E.2d 791 (1953) ..........................................................6

**Statutes**

18 U.S.C. § 1961(1) .......................................................................... 16, 25

18 U.S.C. §§ 1962(a), (c), and (d) ............................................................24

18 U.S.C. § 1964(c) .................................................................................6

28 U.S.C. § 1962(a) ....................................................................31, 32, 33

28 U.S.C. § 1962(c) ...............................................................................32

35 U.S.C. § 315(a)(6) ..............................................................................23

ORS 166.725(7)(a)(B) ..............................................................................16

**Other Authorities**

37 C.F.R. § 11.18 ..................................................................................23

37 C.F.R. § 42.11 ..................................................................................23

37 C.F.R. § 42.12 ..................................................................................23

Fed. R. Civ. P. 8(a)(2) .............................................................................5

Fed. R. Civ. P. 9(b) ...................................................................19, 25, 26

Fed. R. Civ. P. 11 ............................................................................ 14, 22

Restatement (Second) of Torts ...................................................18, 20, 21

U.S. Const. Amendment I ......................................................................10

## LOCAL RULE 7 CERTIFICATION

Counsel for Seirus met and conferred with Columbia regarding the personal jurisdiction and venue issues addressed in this motion on March 11, 2019. (*See* Declaration of Seth Sproul submitted in support of the Seirus Individuals' motion, ¶ 2.) The parties met and conferred again by telephone on April 1, 2019 about Seirus' challenges to the sufficiency of the pleadings. (*See* Declaration of Seth Sproul ("Sproul Decl.") submitted in support of this motion, ¶ 2.) During the call, the parties discussed the issues but could not reach resolution and counsel for Columbia confirmed that it would oppose this motion. (*See id.*)

## MOTION

Defendant Seirus Innovative Accessories, Inc. moves to dismiss under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) because this Court lacks personal jurisdiction over Seirus, because this case was brought in an improper venue, and because Columbia fails to state any viable claim for relief.

## INTRODUCTION

This Court lacks general and specific jurisdiction over Seirus. Seirus is a Utah corporation based in San Diego with minimal sales in Oregon. Neither Columbia's "targeting" theory nor the RICO statute provide jurisdiction. Venue is also improper, as most of the relevant events and evidence are outside Oregon. This case must be dismissed or at least transferred to the Southern District of California.

This case should also be dismissed because Columbia fails to state any viable claim for relief. First, Columbia cannot state a viable claim for damages. The only relief Columbia seeks is recovery of attorneys' fees spent in defending its patent in an *inter partes* review (IPR)

proceeding at the Patent Office brought by Ventex.  Precedent prohibits a party from seeking attorney fees incurred in an earlier lawsuit as damages in a subsequent suit.  The proper way for Columbia to seek fees is to ask for them in the IPR, which Columbia has already done. Because Columbia cannot recover the relief it seeks, it cannot prove a legally cognizable injury. In addition, Columbia cannot show that Seirus' conduct was the proximate cause of any injury, because the alleged fraud was committed on the Patent Office, not Columbia.

Second, all of Columbia's claims are based on Columbia's central allegation that Seirus and Ventex fraudulently filed papers with the district courts and with the Patent Office.  These filings, though, are immune under both the *Noerr-Pennington* doctrine and the litigation privilege.  Without the central allegation based on these filings, Columbia's claims collapse. Columbia's state law claims also must be dismissed because they are preempted by federal law.

Third, Columbia also fails to plead a cognizable RICO claim.  Columbia cannot show a legally cognizable "pattern" of racketeering activity, because the alleged scheme was singular and targeted at a single alleged victim—Columbia—and the complaint does not allege that there is any risk of additional activity.  In addition, none of Columbia's RICO claims based on harm caused by alleged income from racketeering activity can survive because Columbia has only claimed one harm from the single scheme, and it cannot show separate harm from alleged investment of racketeering income.  The alleged enterprise generated no income.

The Court should dismiss this case for these reasons, but Columbia's allegations also fail because they are implausible.  Columbia alleges that Seirus funded IPRs filed by its supplier Ventex to damage Columbia.  But the IPRs provide no meaningful benefit to Seirus.  The claims challenged by Ventex's IPRs did not cover one of the two claims (claim 23 of the '270

**Page 2 - MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, FOR LACK OF VENUE, AND FOR FAILURE TO STATE A CLAIM**

patent) that Columbia asserted against Seirus at trial.  Indeed, the Ventex IPRs never challenged claim 23—leaving Seirus unprotected from this claim from the inception of the IPRs, as infringement of one claim carries the same liability as infringement of two or more claims.  Yet Columbia alleges Seirus undertook the considerable expense of funding Ventex's IPRs to force Columbia to do nothing more than incur roughly the same legal fees as Seirus.

In service of this illogical premise, Columbia alleges an elaborate scheme by Seirus based on nothing more than an assertion by Columbia's counsel in a declaration attached to Columbia's First Amended Complaint (FAC) that the agreement between Seirus and Ventex "has no commercially reasonable basis."  This is the single most important "fact" alleged in the FAC, but it is facially wrong.  The agreement was and remains the governing contract between the two companies to this day.  The simple fact that Seirus and Ventex have a commercial relationship does not support a plausible inference that Seirus engaged in an illegal scheme to defraud Columbia.

## BACKGROUND

The background surrounding this case is laid out in detail in the motion to dismiss filed by the Seirus Individuals, so we do not repeat it here.

## ARGUMENT

### I.  SEIRUS MUST BE DISMISSED BECAUSE JURISDICTION AND VENUE ARE LACKING IN OREGON

Seirus must be dismissed from this case, or (at least) the case must be transferred to the Southern District of California, because Columbia has brought the case in an improper venue that does not have jurisdiction over Seirus.  As Columbia acknowledges, Seirus is incorporated in Utah and is based in Southern California.  (*See* FAC, at ¶ 13.)  Seirus owns no

property in Oregon, does not have any employees in Oregon, and does not have any agents in Oregon. (*See* Declaration of Michael Carey, ¶¶ 3, 5.) Seirus' connection to Oregon is limited to a small amount of online sales, both in number and percentage, to sales to big box retailers who distribute Seirus' product to Oregon on their own, and a miniscule amount of direct sales to independent retailers in Oregon. (*See id.*, ¶¶ 7-11.) Although sales of allegedly infringing products in Oregon may have been sufficient basis for an Oregon court to maintain jurisdiction in a patent infringement suit based on those sales, the allegations made by Columbia in this FAC have nothing to do with those sales. Rather, Columbia alleges a conspiracy in California, Korea, and Virginia—where Seirus (in California) allegedly conspired with Ventex (in Korea) to file an IPR with the Patent Office in Virginia to invalidate Columbia's patents. The only acts allegedly committed by Seirus in Oregon relate to Seirus's participation in litigation brought by Columbia in Oregon—litigation which Columbia later agreed was brought in the wrong venue and which was transferred to the Southern District of California.

Seirus is not subject to general or specific jurisdiction in Oregon. General jurisdiction exists only where "a corporate defendant is at home," namely "the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). Neither is true for Seirus in Oregon. As to specific jurisdiction, the only connection between the actions alleged to have been done by Seirus and Oregon relate to certain filings and motions made by Seirus in litigation brought by Columbia in Oregon. But participation in litigation as a defendant in a forum state cannot be a basis for finding personal jurisdiction in a subsequent case. *See Dow Chem. Co. v. Calderon*, 422 F.3d 827, 835–36 (9th Cir.

2005); *see also* SI Motion, at 12–13.  Moreover, defending a suit is not as purposeful availment or purposefully directing action into a form state—such contact with Oregon is nothing more than the result of Columbia having improperly brought its case in Oregon before it was transferred to San Diego.  *See Bristol-Myers Squibb v. Superior Court*, 137 S. Ct. 1773, 1785; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475.  Moreover, neither Columbia's "targeting" theory nor the RICO jurisdictional provision confer jurisdiction either.  (*See* SI Motion, at 16–18.)

Venue is also improper in Oregon.  The overwhelming majority of acts underlying Columbia's claims for relief occurred in either California or in Virginia, and the agreement at the heart of the case was negotiated between Seirus (in California) and Ventex (in Korea) and was drafted and executed in California.  (*See* SI Motion, at 19–20.)  No statute that Columbia has pointed to allows for this case to be brought in Oregon.  *See id.*, at 19–22.)  This case must at least be transferred to the Southern District of California because it is by far the more convenient and efficient venue for this case to be tried.  (*See* SI Motion, at 22–24.)

## II.    COLUMBIA'S COMPLAINT FAILS TO STATE ANY VIABLE CLAIM

This Court need not address anything beyond jurisdiction, but Seirus should additionally be dismissed because Columbia fails to adequately state any claim.  Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6), 8(a)(2).  In order to survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "This standard does not rise to the level of a probability requirement, but it demands 'more than a sheer possibility that a defendant has acted unlawfully.'" *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641 (9th Cir.

2014), cert. denied, 135 S. Ct. 1845 (2015) (quoting Iqbal, 566 U.S. at 678). A plaintiff need not detail all factual allegations, but the complaint must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the court must assume all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint, *Iqbal*, 556 U.S. at 678, nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences, *see Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). The Court also need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. *See Mullis v. United States Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

A.     **Columbia Cannot Prove Entitlement to Damages**

1.     **Columbia Is Barred From Seeking Attorney Fees for Prior Litigation In This Case.**

First, Columbia does not state a claim for damages. The only non-punitive relief Columbia seeks is recovery of attorney fees it allegedly incurred in connection with the IPRs filed by Ventex. (*See* FAC, at ¶¶ 219, 251, 261, 271, 300, 315, 326, 368, 376, 384, 393.)[1]

---

[1] Columbia additionally seeks punitive damages and attorney fees it will incur in connection with prosecuting this case, but neither of those claims can be maintained absent a claim for actual damages. Under the federal RICO statute, treble damages is a remedy that only inures to persons who have been "injured in [their] business or property by reason of" a RICO violation. *See* 18 U.S.C. § 1964(c); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1100 (2d Cir. 1988). Moreover, neither Oregon nor Virginia law allow free-standing claims for punitive damages. *See, e.g., Crouter v. United Adjusters, Inc.*, 259 Or. 348, 364, 485 P.2d 1208, 1215 (1971); *Zedd v. Jenkins*, 194 Va. 704, 706–07, 74 S.E.2d 791, 793 (1953).

Columbia cannot prove entitlement to the claimed damages, however, because the law prohibits a party from filing a second suit to recover damages incurred in a previous suit.

Under the "American rule," attorney's fees "are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967). Even where a party is allowed to seek its attorneys' fees, though, it cannot do so by bringing a subsequent lawsuit. "[C]ourts have uniformly concluded that where an action based on the same wrongful act has been prosecuted by the plaintiff against the defendant to a successful issue, he cannot in a subsequent action recover, as damages, his costs and expenses in the former action." *Summit Valley Indus. Inc. v. Local 112, United Bhd. of Carpenters & Joiners of Am.*, 456 U.S. 717, 726 (1982); *see also Mead v. Retail Clerks Int'l Ass'n, Local Union No. 839, AFL-CIO*, 523 F.2d 1371, 1380 (9th Cir. 1975) (explaining that "the general rule" is that "attorneys' fees [incurred] in [a] prior action are not recoverable in a subsequent suit"). This common sense rule "is universally followed in order to avoid the endless stream of litigation that might ensue if successful litigants could recover their attorney's fees in subsequent actions." *Summit Valley Indus.*, 456 U.S. at 726. If there were no such rule, "no lawsuit would see the end, for immediately upon the entry of judgment therein the winner could start an action against the loser for the attorney's fees paid in obtaining the judgment." *Stickney v. Goward*, 161 Minn. 457, 459 (1925); *see also Agostini v. State*, 255 A.D. 264, 267, 5 N.Y.S.2d 732 (App. Div. 1938) ("To permit a successful party to bring an action against his unsuccessful opponent to recover the legal expenses of prosecuting a former action would lead to endless litigation, for a third action might be prosecuted to recover the expense of the second, and so on ad infinitum.").

**Page 7 - MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, FOR LACK OF VENUE, AND FOR FAILURE TO STATE A CLAIM**

This rule prevents exactly what Columbia is trying to do here. Ventex petitioned the Patent Office to cancel claims of two of Columbia's utility patents in IPRs. Columbia successfully defended the IPRs by contending Ventex failed to name Seirus as a real party in interest. (*See, e.g.*, FAC, ¶¶ 209-210.) Columbia has already sought attorney fees from Ventex in the IPRs by filing a motion for sanctions. If Columbia recovers its fees at the Patent Office, Columbia certainly cannot double-recover them in this case. However, even if Columbia is not successful, Columbia cannot spawn an entire new litigation to recover its attorneys' fees incurred in connection with defending earlier litigation. As Columbia has no viable damages claim (and has not requested other non-punitive relief), it cannot maintain this case.

### 2.    Columbia cannot prove its alleged damages are attributable to Seirus' and Ventex' alleged actions

Columbia also cannot show causation between any alleged injury and the alleged fraudulent acts. To have standing under civil RICO, Columbia must show "that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006); *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (9th Cir 2010) (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)). "Proximate causation for RICO purposes requires some direct relation between the injury asserted and the injurious conduct alleged." *Rezner* , 630 F.3d at 873 (internal citations omitted). Courts look to a number of factors to assess whether a sufficiently direct relation exists between the alleged conduct and harm, including whether the conduct was directed to the plaintiff or a third party, *Anza*, 547 U.S at 458, *Rezner*, 630 F.3d at 873, and whether the harm could have resulted from other factors. *Rezner*, 630 F.3d at 873; *Anza*, 547 U.S at 459-460.

Here, Columbia's alleged harm is not a direct result of the alleged fraud. Although Columbia alleges that it suffered damages via legal fees, the alleged fraud is on the USPTO, not Columbia. (*See* FAC, ¶¶ 228-229.) Where the fraud is perpetrated against the government and the government can "be expected to vindicate the laws," proximate cause is not satisfied for a third party plaintiff. *Anza,* 547 U.S at 460; *Rezner*, 630 F.3d at 873-74. The USPTO has full recourse to address any alleged fraud upon it as part of the IPR process. Indeed, it has dismissed the Ventex IPRs on grounds that Ventex did not establish that it was the only real party in interest, and is entertaining a motion for sanctions in which Columbia seeks its attorneys' fees, the same remedy Columbia seeks here. Risk of such duplicative recovery "is another consideration relevant to the proximate-cause inquiry," and defeats Columbia's claim here. *Anza*, 547 U.S at 459.

### B.    Columbia Cannot Maintain Claims Based on Seirus' And Ventex's Litigation Filings.

Columbia also fails to state a claim because all of its claims are predicated on a finding of fraud based on litigation filings. The central thrust of all of Columbia's RICO and fraud claims is that Ventex and Seirus allegedly engaged in fraud by filing documents with judicial bodies that, according to Columbia, misrepresented that Ventex was the real party in interest in seeking IPR of two patents owned by Columbia. Specifically, Columbia alleges that the defendants committed fraud under Oregon, Virginia, and federal law by filing the petitions seeking IPR of Columbia's patents and other mandatory notices with the PTAB which identified Ventex as the real party in interest. (*See, e.g.,* FAC at ¶¶ 228–229, 239–240; 284–285; 330; 355.) Columbia also alleges that the Defendants committed fraud under Oregon and federal law by filing motions for stay actions brought by Columbia in federal district court

based on the IPRs.  (*See, e.g.,* FAC at ¶¶ 241, 243; 295, 297; 337–339.)  Columbia additionally alleges that the Defendants conspired to commit fraud by filing documents in the IPRs under Virginia common law and Virginia statute, *see* FAC, at ¶¶ 371–385; and that the Defendants violated Virginia's abuse of process law by filing the IPRs, *see* FAC, at ¶¶ 386–394.  All of those claims are predicated on the same basic allegation—that the Defendants fraudulently filed papers with either the federal court or the Patent Office.

Even assuming that Columbia's allegations are true, Columbia cannot maintain these claims.  Filing documents in United States courts and petitioning the government are First-Amendment-protected activities.  As such, courts have developed doctrines to protect these activities and, absent special circumstances not alleged by Columbia, parties are protected from liability based on those activities.  Because these doctrines privilege Seirus' and Ventex's litigation filings, Columbia's allegations fail, and all of Columbia's claims must be dismissed.

### 1.    The *Noerr-Pennington* doctrine immunizes Seirus from liability.

Seirus is immune from suit predicated on core-First Amendment protected activities by the *Noerr-Pennington* doctrine.  This doctrine, named after the two cases that spawned it (*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965)), derives from the First Amendment's guarantee of "the right of the people to petition the Government for a redress of grievances," U.S. Const. Amendment I.  "Under the *Noerr–Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct."  *Sosa v. DIRECTV Inc.*, 437 F.3d 923, 929 (9th Cir. 2006).

*Noerr-Pennington* protection extends to petitioning activities directed to the courts, *see id.*, and indeed "to all departments of the government," *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972). Since its original formulation in the context of antitrust, the *Noerr-Pennington* doctrine has been extended to confer immunity from federal RICO claims and from a variety of tort claims relevant here, including abuse of process and common law claims. *See, e.g., Sosa*, 437 F.3d at 935 (federal RICO claims); *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 159-60 (3d Cir. 1988) (abuse of process and other claims); *Baltimore Scrap Corp. v. David J. Joseph Co.*, 81 F.Supp.2d 602, 620 (D.Md. 2000), aff'd, 237 F.3d 394 (4th Cir. 2001) (common law claims). The *Noerr-Pennington* doctrine "applies equally in all contexts." *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000).

*Noerr-Pennington* involves a three-step analysis. First, a court is to "identif[y] the burden that the threat of an adverse [judgment] imposes on [a parties'] petitioning activity at issue." *See Sosa*, 437 F.3d at 930. Second, a court is then to "examine[] the precise petitioning at issue[] to determine whether the burden on that activity implicated the protection of the Petition Clause." *Id.* Third, a court is then to analyze whether liability could be imposed that avoids the burden so as to not impinge on the right of petition. *Id.* "Only where the statutes clearly provide[s] for the burden posed by the lawsuit" should courts address "whether the statute may be applied to the petitioning conduct consistently with the Constitution." *See id.* at 932. In essence, *Noerr Pennington* is a "rule of statutory construction" in which the Courts construe laws not to impose liability on First Amendment-protected activity. *See id.* at 931–32.

### a.   Columbia's suit seeks to impose a significant burden on protected First-Amendment activity.

The first two steps of *Noerr-Pennington* are satisfied because Columbia's claims significantly burden protected First Amendment activity.  Each of Columbia's claims hinges on its allegation that Seirus' and Ventex's filings with judicial bodies constitute fraud.  The right to sue and defend in the courts is among the most fundamental and essential privileges of citizenship.  *See Chambers v. Baltimore & O.R. Co.*, 207 U.S. 142, 148 (1907); *McKnett v. St. Louis & S.F. R. Co.*, 292 U.S. 230, 233 (1934).  Petitioning the government—as Ventex did to seek Patent Office review of Columbia's patents and Ventex and Seirus did in seeking stays of litigation in this Court—is central to the First Amendment.  Any related activities supporting those filings are also protected to provide the adequate "breathing space" for the First Amendment protected activity.  *See Sosa,* 437 F.3d at 934 (explaining that "[c]onsistent with the breathing space principle, we have recognized that, in the litigation context, not only petitions sent directly to the court in the course of litigation, but also 'conduct incidental to the prosecution of the suit' is protected by the *Noerr–Pennington* doctrine").  Should Columbia win, such a judgment would significantly burden First Amendment protected activities— Columbia seeks nearly a million dollars in actual damages (which it claims should be trebled under federal RICO) and $20 million in punitive damages.  This court "must ensure that" Columbia is not allowed to transform its causes of actions "into a means by which to chill vital conduct protected under the First Amendment." *See Mercatus Group, LLC v. Lake Forest Hosp.*, 641 F.3d 834, 847 (7th Cir. 2011).

During the meet and confer, Columbia contended that it may proceed with its claims because they fall under the "sham exception" to *Noerr-Pennington*, but Columbia is wrong.  The

"sham exception" provides that *Noerr-Pennington* does not protect a party that brings a legal claim that is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and "conceals an attempt to interfere *directly* with the business relationships of a competitor, through the use of the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon." *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993).

Nothing in Columbia's complaint supports a finding that Seirus' and Ventex's litigation activities were a sham. Columbia never even alleges that any of the IPR or court filings that are the basis of its claims are a sham. Although Columbia's complaint recites the word "sham" numerous times (*see, e.g.,* FAC, ¶¶ 3, 24, 87, 96, 102, 341, 345, 362, 365), it does so only when describing an agreement between Seirus and Ventex and the associated payments. Not once does Columbia allege that the IPR or the litigation activities were a sham. Nor does Columbia allege that any of the filings were "objectively baseless" or "brought for an anti-competitive purpose"—both necessary prerequisites for a court to make the significant and difficult decision that behavior that is within the core of activities protected by the First Amendment would lose First Amendment protection. *See CBS Interactive Inc. v. Nat'l Football League Players Ass'n, Inc.*, 259 F.R.D. 398, 413 (D. Minn. 2009) ("The sham exception is narrow, and . . . the party attempting to invoke the exception, bears a heavy burden of demonstrating that the lawsuit is objectively meritless" (internal quotation marks omitted)).

At most, Columbia's complaint shows that the parties have a legitimate and reasonable disagreement over who is a real party in interest in an area of law that is developing and

changing. The full Patent Office record makes this clear.[2] For example, after the Patent Office held an oral hearing on the IPRs, and just before it was due to issue a decision, it issued an order asking for the parties' views on a new controlling case—*Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336 (Fed. Cir. 2018)—that changed the Patent Office's test for who constitutes a real party in interest. (Ex. 1 at 2.) Given the Patent Office itself recognized the law is quickly developing and asked for supplemental submissions on the new *Applications in Internet Time* standard, Ventex can hardly be faulted for arguing that Seirus was not a real party in interest. *See Professional Real Estate Investors*, 508 U.S. at 61-63, 65 (analogizing the objective component of the sham exception to probable cause under Rule 11 and stating that "[p]robable cause to institute civil proceedings requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication").

The Patent Office's final decision also shows the parties had a legitimate disagreement about the law, not that Ventex's position was a sham. These issues were hotly contested and Ventex's position was far from objectively baseless: the parties filed no fewer than 10 discovery briefs and 10 substantive briefs on these issues (Ex. 2 at 2-3), produced thousands of pages of documents, took several depositions, and the Patent Office issued a 17-page decision for each IPR (S*ee id.*). Moreover, the IPRs proceeded in their normal course for nearly 18 months, through briefing and oral hearing, before *Applications in Internet Time* shifted the law and caused the Patent Office to ask for special briefing on the issue. (*See id.*) And, as Columbia has

---

[2] Seirus requests that this Court take judicial notice of the IPR record. As this Court has previously found, taking judicial notice of documents from the public record and considering them at the pleading stage is appropriate. *See, e.g., Elizabeth Retail Properties LLC v. KeyBank Nat. Ass'n*, 83 F. Supp. 3d 972, 984 (D. Or. 2015).

acknowledged, the result was written about by news outlets and legal journals due to the Board's decision advancing the law on real party in interest. (*See* D.I. 57, at 19–30 (listing news articles).) Ventex's assertion that it was the real party in interest was not objectively baseless, and thus the sham exception to *Noerr-Pennington* fails. *See, e.g.*, *Wi-Fi One, LLC v. Broadcom Corporation*, 887 F.3d 1329, 1340 (Fed. Cir. 2018) (finding no privity or real party in interest on similar allegations after applying a "legal test").

Columbia also cannot invoke the sham litigation exception for another reason—it cannot show that Ventex's IPR petitions were conducted primarily for harassment or other improper purpose. To the contrary, the petitions were filed to invalidate, at the Patent Office, two Columbia patents of dubious validity. In fact, a jury has since invalidated one of those patents (the '270 patent) in the pending patent litigation case between Seirus and Ventex in the Southern District of California, while Columbia voluntarily dropped the other patent (the '119 patent) before trial, showing its lack of confidence in that one. (*See* Jury Verdict, D.I. 377, *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories*, Case No. 17-cv-1781 (S.D. Cal. Sept. 29, 2017).) Those are the same two patents at issue in Ventex's IPRs. (*See* FAC, ¶ 103.) That shows that Ventex did not file the IPRs primarily for harassment or improper purpose: it sought to invalidate two patents, one of which was subsequently invalidated by a jury in district court.

The motions to stay filed by Seirus and Ventex in the Oregon patent cases also fall outside the sham exception to *Noerr-Pennington*. Both motions sought stays based on the fact that the Patent Office had instituted IPR on the patents involved in those cases. The IPRs themselves were not a sham, so the motions to stay based on those IPRs can similarly not be

one.  Indeed, the motions properly sought to promote judicial economy by pausing the litigation (and the associated costs to the parties and the court) while the Patent Office conducted its review.  Columbia even stipulated to Ventex's motion to stay, which shows that Columbia knew the motion was well-founded and would save everyone's resources.  (*See* FAC, ¶ 6.)

> **b.**    **As none of Columbia's causes of action can be saved from their burden on First-Amendment protected activity, Columbia's claims must fail**

Columbia's claims would significantly burden First-Amendment protected activities. That leaves this Court with just one remaining question: how to reconcile Columbia's claims with the First Amendment.  As none of Columbia's claims "clearly provide for liability for the conduct at issue," they must fail.  *See Sosa*, 437 F.3d at 932 ("Only where the statute[s] clearly provide[s] for the burden posed by the lawsuit will we address whether the statute may be applied to the petitioning conduct consistently with the Constitution.").

Columbia alleges a violation of both the federal and Oregon RICO statutes.  Both statutes require "racketeering" activity, which each statute defines by listing out various violations of criminal statutes as predicate acts of racketeering.  *See* 18 U.S.C. § 1961(1); ORS 166.725(7)(a)(B).  Although Columbia is not entirely clear as to what actions taken by the Defendants it contends are criminal, it appears to allege the filings with this Court and the Patent Office are predicate acts of mail and wire fraud under the federal RICO statute, *see* FAC, at ¶ 244; and perjury and false swearing relating to those filings are predicate acts under the Oregon RICO statute, *see* FAC, at ¶ 274.  These allegations mirror Columbia's other claims: Columbia alleges fraud under Oregon law, fraud and conspiracy to commit fraud under

Virginia law, and abuse of process under Virginia law—all based on the filings made to judicial bodies by Ventex and Seirus.  (*See* pp. 9-10, *supra*.)  What makes these filings fraudulent, according to Columbia, is that Ventex identified itself as the real party in interest in the IPRs.

The problem for Columbia, though, is that none of these causes of action "clearly provide for liability for" a party making an incorrect assertion of law in a filing to a judicial body.  *See Sosa*, 437 F.3d at 932.  Who is, or is not, a "real party in interest" to a cause of action is a complex legal determination based on a case-by-case analysis of the specific set of facts involved, and neither Ventex nor Seirus can be said to have committed fraud by advancing a legal position, even if that legal position turned out to be incorrect.  To be clear, the only statement made by Ventex on this issue in its petition was: "The real party in-interest is Ventex Co., Ltd."  (Ex. 3 ('119 patent Petition) at 2.)  As discussed above, Ventex had a reasonable basis for believing this legal assertion was true.  But even if it didn't, "[i]t is well established . . . that misrepresentations of the law are not actionable as fraud, including under the mail and wire fraud statutes, because statements of the law are considered merely opinions . . ."  *See Sosa*, 437 F.3d at 940; *see also  Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004) ("It is ... well settled, as a general rule, that fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law." (quoting Am. Jur .2d of Fraud and Deceit § 97 (2001)) (internal quotation marks omitted).  Thus, as the 9th Circuit has already found, misstatements of law cannot be fraudulent, and thus are immune under the *Noerr-Pennington* doctrine.  *See Sosa*, 437 F.3d at 940.

The litigation and IPR filings cannot constitute fraud for another reason—the alleged misrepresentations were made in filings to judicial bodies.  As discussed below in Section

II.B.2 *infra*, these filings are protected by the litigation privilege and cannot as a matter of law constitute fraud.

Columbia's complaint is replete with other inflammatory allegations relating to, for example, payments from Seirus to Ventex and communications between Seirus and Ventex, but none of these alleged acts are clearly encompassed within the definition of fraud either. The common law definition of fraud, which is part of the mail and wire fraud statutes, requires that a party make a "misrepresentation or concealment of material fact." *See Neder v. United States*, 527 U.S. 1, 21–25 (1999). Taking Columbia's allegations as true, if Seirus and Ventex did truly conspire to file the IPRs against Columbia's patent, there would not have been any misrepresentation or concealment in those communications or in the payments of money because (according to Columbia) both Ventex and Seirus knew what the payments were for. There can be no conspiracy if there was no fraud to begin with. And as to Columbia's allegation of "perjury" relating to deposition testimony by certain Ventex employees that the agreement was not written, that cannot be fraud either as it was not "material"—as Columbia itself has acknowledged, Columbia was already well aware of the relationship between Ventex and Seirus and nothing about the real party in interest analysis depends on whether an agreement was written down on paper. (*See* D.I. 57, at 13–15); *see also* Restatement (Second) of Torts § 538 (an alleged misrepresentation is material only if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question"). Appending the term "fraudulently" in front of defendants' alleged actions does not render them so, and the Court need not accept such conclusory allegations. *See Ashcroft*, 556 U.S. at 678 ("Although for the purposes of a motion to dismiss we must take

all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation'."); *see also Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) ("Federal Rule of Civil Procedure 9(b) requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme.  The Ninth Circuit has repeatedly insisted that this rule be followed in RICO actions alleging the predicate act of mail fraud.").   In short, without the "fraud" from the filing of papers with judicial bodies, none of Columbia's other claims withstand muster.

Lastly, the only other cause of action alleged by Columbia is "exemplary punitive damages."  As discussed above at p. 6, n. 1, this is not an independent claim because a party cannot simply file suit to seek punitive damages.  In any event, Columbia does nothing more than incorporate every one of its 394 paragraphs of allegations above (FAC, ¶ 395), re-allege that defendants' actions give rise the claims recited above (FAC, ¶¶ 397-400), and state that punitive damages of $20 million are required to "deter such conduct in the future" (FAC, ¶ 401).  This claim, therefore, fails along with the others.

These are, in and of themselves, an independent basis for dismissing these claims under Rule 12(b)(6).  However, in the context of *Noerr-Pennington*, it certainly cannot be the case, that any of the causes of action alleged by Columbia "clearly provide" for liability based on the facts alleged by Columbia.  As such, the *Noerr-Pennington* doctrine provides the Seirus defendants with immunity against Columbia's claims.

### 2.    Seirus' and Ventex's submissions to courts are protected by the litigation privilege, thus barring Columbia's allegations of fraud

Columbia's claims are also precluded by another important protection for First-Amendment activities—the litigation privilege.    Both attorneys and parties have an "absolute[]" privilege to communicate about a judicial proceeding so long as the communicated subject matter has "some relation to the proceeding."    *See* Restatement (Second) of Torts §§ 586, 587.  The privilege vindicates "the public interest in according to all men the utmost freedom of access to the courts of justice for the settlement of their private disputes" and protects parties from liability relating to communications made in connection with judicial proceedings (whether they be made to a court or the opposing party).    *See* Restatement (Second) of Torts § 587 cmt. a.  "The breadth of the litigation privilege cannot be understated; it immunizes defendants from virtually any tort liability, including claims for fraud, with the sole exception of causes of action for malicious prosecution." § 5:17.10.Litigation privilege, 1A American Law of Torts § 5:17.10.

The litigation privilege (also called the "absolute privilege") is recognized by both Oregon and Virginia state law.  *See, e.g., Mantia v. Hanson*, 190 Or. App. 412, 417, 79 P.3d 404, 407 (2003); *Donohoe Const. Co. v. Mount Vernon Assocs.*, 235 Va. 531, 537, 369 S.E.2d 857, 860 (1988).  And although federal courts have not explicitly referred to a "litigation privilege," the courts have recognized that the same policies that underlie the privilege preclude, as a matter of law, applying the mail and wire fraud statutes to the service of pleadings filed with the courts.  Indeed, "[a] number of courts have considered whether serving litigation documents by mail can constitute mail fraud, and all have rejected that possibility."    *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002) (citing cases).  "Serving a motion by mail is

an ordinary litigation practice" and, as such, "prosecuting litigation activities as federal crimes would undermine the policies of access and finality that animate our legal system." *See id.*

Here, the litigation privilege blocks all of Columbia's claims. The claims are all based on the allegations that (1) Ventex supposedly misrepresented that it was the real party in interest in filings to the Patent Office and (2) Seirus and Ventex committed fraud by filing motions to stay with this Court. The alleged misrepresentations, therefore, were undoubtedly made in connection with a judicial filing about a litigation-related matter.

The only exception to the absolute litigation privilege—malicious prosecution—does not apply here. For one thing, Columbia has not alleged or plead malicious prosecution. Even if it had, though, these filings cannot constitute malicious prosecution for the same reason they were not a "sham." Ventex was not without "probable cause to prosecute the" IPR nor was the IPR brought with "malice" or any other improper purpose. *Mantia*, 79 P.3d at 408 (listing the factors for "wrongful initiation" under Oregon law necessary to escape the litigation privilege); *see also* Restatement (Second) of Torts § 653 (malicious prosecution request that the proceedings be initiated "without probable cause and primarily for the purpose other than that of bringing an offender to justice"). And without the alleged fraud based on the litigation filings, none of Columbia's other allegations are sufficient to support its claims.

## C.    Columbia's State Law Claims Are Preempted By Federal Law.

Columbia additionally cannot maintain its state law claims because federal law exclusively and comprehensively regulates parties' behavior before the federal district courts and the Patent Office, precluding Columbia' attempt to use state law to regulate such conduct.

As to the filings with the district court, Rule 11 sets forth a comprehensive scheme of procedures and remedies that come into play any time a litigant in federal court pursues litigation "for any improper purpose such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  Fed. R. Civ. P. 11(b)(1).  Both Congress and the courts intended for the Federal Rules of Civil Procedure, including Rule 11, to be the sole and exclusive regulation for how matters proceed in the federal courts.  "When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided *Erie* Choice: the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the [Rules] Enabling Act nor constitutional restrictions."  *Hanna v. Plumer*, 380 U.S. 460, 471 (1965).  By "explicitly delineating what rights a defendant has when an abusive claim based upon federal law is brought against that party, Congress has simply pre-empted this entire area of the law."  *East-Bibb Twiggs Neighborhood Ass'n v. Macon-Bibb Planning & Zoning Com'n*, 674 F. Supp. 1475, 1477 (M.D. Ga. 1987); *see also Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 733 (9th Cir. 2016) ("[S]tate law is pre-empted…if federal law so thoroughly occupies a legislative field 'as to make reasonable the infere Congress left no room for the States to supplement it.'").[3]

---

[3] Notably, Rule 11 contains important procedural protections which are not present in Columbia's state law claims.  Specifically, Rule 11 requires a party to serve a "safe harbor" letter and the motion for sanctions at least twenty-one days before the motion. Fed. R. Civ. P. 11(c)(2).  As none of Columbia's state law causes of action have such a safe-harbor protection, they are additionally preempted because they conflict with the federal law.  *See Burlington Northern R. Co. v. Woods*, 480 U.S. 1, 4–5 (1987); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749–

As to filings with the Patent Office, Congress explicitly directed the Patent Office to issue regulations "prescribing sanctions for abuse of discovery, abuse of process, or any other improper use of the proceedings, such as to harass or to cause unnecessary delay or an unnecessary increase in the cost of the proceeding." *See* 35 U.S.C. § 315(a)(6). Those regulations state that "[p]arties and individuals involved in [an IPR] proceeding have a duty of candor and good faith to the Office during the course of a proceeding." *See* 37 C.F.R. § 42.11. The Patent Office requires that all filings be signed and specifies that, with such signature, "the party presenting such paper . . . . is certifying that [a]ll statements made therein of the party's own knowledge are true" and that "[t]he paper is not being presented for improper purpose, such as to harass someone or to cause unnecessary delay or needless increase in the cost of any proceeding before the Office." *See* 37 C.F.R. § 42.11(b); 37 C.F.R. § 11.18(b). The Patent Office has additionally prescribed sanction for violations of this rule—including striking the offending paper, precluding a party from contesting an issue, termination of the proceedings, or even monetary sanctions, including attorney fees. *See* 37 C.F.R. § 11.18(c); 37 C.F.R. § 42.11(d); 37 C.F.R. § 42.12 (listing sanctions). These "[f]ederal regulations have no less pre-emptive effect than federal statutes." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153. Thus, because "Congress has entrusted [the PTO] with the task of promulgating regulations" to regulate filings before it and because the PTO has developed a comprehensive set of rules according to that mandate, Columbia cannot apply state law to regulate Ventex's conduct before the PTO. *See Montalvo v. Spirit Airlines*, 508 F.3d 464, 470–71 (9th Cir. 2007);

---

750 & n. 9 (1980); *see also First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 529 (6th Cir. 2002).

**Page 23 - MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, FOR LACK OF VENUE, AND FOR FAILURE TO STATE A CLAIM**

*see also de la Cuesta*, 458 U.S. at 154 (holding that if the pervasiveness of the regulations indicate that the agency sought to occupy the field, a court need only ask "whether that action [wa]s within the scope of the [agency's] delegated authority").

Despite these extensive and comprehensive federal rules, Columbia seeks to use state law to regulate behavior in the federal district courts and a federal agency.  "It seems odd, to say the least, that state common law can reach conduct that occurs in the course of proceedings in federal courts and add to or detract from federal law that regulates such behavior, especially when the conduct involves fundamental litigation practices" such as the filing of papers with the court.  *See Ashley Furniture Indus., Inc. v. Am. Signature, Inc.*, No. 2:11-CV-427, 2013 WL 12178524, at *1 (S.D. Ohio Sept. 13, 2013).  As such, federal law should preclude application of state law to this behavior and Columbia's state law claims cannot be maintained.

### D.     Columbia Failed to Plead a Sufficient Pattern of Racketeering Activity.

Lastly, Columbia's RICO claims must be dismissed because Columbia fails to state a viable RICO claim.  To state a claim under the federal or Oregon RICO statutes, Columbia must plead a legally cognizable "pattern of racketeering activity." *See* 18 U.S.C. §§ 1962(a), (c), and (d); OR 166.720(3); OR 166.720(1); OR 166.720(4).  The "pattern requirement is meant to prevent ordinary commercial fraud from being transformed into a federal RICO claim.  To determine if a fraudulent scheme rises to the level of a RICO violation, the court must determine its scale, duration, and number of victims.  RICO is reserved for those schemes whose scope and persistence set them above the routine." *Tudor Assocs., Ltd., II By & Through Callaway v. AJ & AJ Servicing, Inc.*, 36 F.3d 1094 (Table) (4th Cir. 1994).  To show a pattern of racketeering activity, the plaintiff must allege facts sufficient to show "*continuity plus relationship*"

among the predicate acts. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis in original). "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241.

To determine whether sufficient predicate acts have taken place to form a "pattern" of racketeering activity, the Court need only consider those actions that would be punishable as crimes. *See* 18 U.S.C. § 1961(1) (defining "racketeering activity" as a long list of indictable crimes); *see also H.J. Inc.*, 492 U.S. at 232 ("'Racketeering activity' is defined by RICO to mean 'any act or threat involving' specified state-law crimes, any 'act' indictable under various specified federal statutes, and certain federal 'offenses.'"). These predicate acts must be related and amount to, or threaten the likelihood of, continued criminal activity. *H.J, Inc.*, 492 U.S. at 237-38. Columbia's only allegations that could rise to this level are allegations involving mail and wire fraud. (*See* FAC, ¶¶ 228-29; 235-36; 244.) "Federal Rule of Civil Procedure 9(b) requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme. The Ninth Circuit has repeatedly insisted that this rule be followed in RICO actions alleging the predicate act of mail fraud." *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991). In the absence of adequately plead acts of fraud, a RICO plaintiff cannot sustain a suit because it cannot establish a "pattern" of racketeering activity. *See, e.g.*, *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1987) (failure to specify the time, place, and content of the alleged mail fraud); *see also Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1264-65 (C.D. Cal. 2007) (dismissing RICO claims where predicate acts were not alleged as required by Rule 9(b) and

where plaintiff alleged many instances of mail and wire fraud in a separate attachment that failed to "detail time, place, and manner of each act of fraud").

The only predicate acts for which Columbia has arguably satisfied Rule 9(b)'s pleading standard of identifying "the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme" are the IPR filings and the motions to stay. (*See, e.g.*, FAC, ¶¶ 103-133 (IPR filings); ¶¶ 146-157 (Seirus motions to stay); ¶¶ 158-164 (Ventex motion to stay) ¶¶ 228-29; ¶ 236; ¶ 241; ¶ 243.) Those litigation actions are protected by the *Noerr-Pennington* doctrine and the litigation privilege protection. (*See* Section II.B, *supra*.) One of the Seirus motions to stay was made orally in this Court (FAC, ¶ 338), and thus cannot be mail or wire fraud. Moreover, the assertion that Ventex was the only real party in interest in the IPR petitions is a statement of law, and it can't be considered mail or wire fraud. *See Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004) ("It is ... well settled, as a general rule, that fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law." (quoting Am. Jur .2d of Fraud and Deceit § 97 (2001)) (internal quotation marks omitted). Once those acts are removed from consideration, Columbia is left with nothing to show a "pattern" of fraudulent acts. Trying to shoehorn additional fraudulent acts, Columbia also alleges "other such acts are described further below" (FAC, ¶ 230), but none of these acts is described with the requisite level of particularity required to plead fraud:

- "Defendant Ventex's continued litigation of the Ventex IPRs without disclosing the real party-in-interest";

- "Wires between defendants";

- "Email and telephone communications between defendants"; and

- "Payments between Ventex and Seirus in, e.g., January 2017, and continuing through the term of the IPR funding contract."

(*See* FAC, ¶¶ 242, 244.)  None of these allegations specifies the "time, place, and manner of each act of fraud, plus the role of each defendant in each scheme."  *See Lancaster Cmty. Hosp.*, 940 F.2d at 405.  In any event, without the predicate IPR filings and motions to stay, none of these acts is anything other than a typical commercial activity, leaving Columbia without sufficient predicate acts to maintain its claims.  *See Moore*, 885 F.2d at 541; *Bryant*, 573 F.Supp.2d at 1264-65.

Even considering all of Columbia's allegations as predicate acts or as acts in furtherance of some fraudulent scheme, Columbia still fails to plead a "pattern" under controlling Ninth Circuit precedent.  First, Columbia has not established open-ended continuity, because it has not alleged any facts (nor could it) that suggest that there is an ongoing threat of continued criminal activity.  "Open-ended continuity is shown by 'past conduct that by its nature projects into the future with a threat of repetition.'"  *Allwaste, Inc. v Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995).  "Predicate acts that specifically threaten repetition or that become a 'regular way of doing business' satisfy the open-ended continuity requirement."  *Id.*

Columbia cannot show any threat of repetition of the enterprise's alleged predicate acts because there is no threat, and Columbia has not alleged any threat, that the enterprise will file additional IPRs attacking Columbia or any other person's patents without disclosing the real party in interest.  Columbia identifies the purpose of the alleged enterprise as filing two IPRs to invalidate two Columbia patents.  (*See, e.g.* FAC, ¶¶ 103-133, 227-229.)  All other acts identified in the complaint are related to this purpose.  The complaint further establishes that the Patent Office dismissed both IPRs.  (*See* FAC, ¶ 209.)  The complaint alleges that Columbia

has been harmed and does not allege ongoing harm.  (*See* FAC, ¶ ¶ 218-219.)  Finally, Columbia

does not allege that defendants will file additional IPRs.  Columbia has thus failed to allege

facts sufficient to show "past conduct that by its nature projects into the future with a threat

of repetition."  *Allwaste Inc.*, 65 F.3d at 1528.

Second, Columbia also has not established closed-ended continuity because it has not

plead facts showing "a series of related predicates extending over a substantial period of time."

*H.J. Inc.*, 492 U.S. at 242.  The "statement that a pattern 'requires at least' two predicates implies

that while two acts are necessary, they may not be sufficient."  *Id.*  "Predicate acts extending

over a few weeks or months and threatening no future criminal conduct do not satisfy [the

closed-ended continuity] requirement."  *See Howard v. America Online Inc.*, 208 F.3d 741, 750

(9th Cir. 2000).  Courts also consider additional factors such as whether the predicate acts have

the same or similar purpose, results, participants, victims, or methods of commission "or

otherwise are interrelated by distinguishing characteristics and are not isolated events."

*Medallion*, 833 F.2d at 1363.  These factors weigh against finding that Columbia has alleged

sufficient facts to establish a pattern under a "closed-ended continuity" theory.

Courts in the Ninth Circuit have repeatedly rejected RICO claims consisting of "a

single alleged fraud with a single victim."  *See, e.g., Medallion Tele. Enter. v. SelecTV of Cal., Inc.*,

833 F.2d 1360 (9th Cir. 1987).  In *Medallion*, defendant broadcaster allegedly misrepresented

that it had commitments from television stations to pay to telecast a boxing match, and

allegedly induced the plaintiffs to enter into an ill-fated joint venture through numerous

predicate telephone calls and related mailings.  *Id.* at 1362, 1364.  There was, as a matter of

law, no "pattern of racketeering activity," because "[a]ll of Select TV's assertions about the

**Page 28 - MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, FOR
LACK OF VENUE, AND FOR FAILURE TO STATE A CLAIM**

number of licensing agreements it had obtained were parts of its single effort to induce Medallion to form the joint venture in order to obtain the broadcast rights." *Id.* at 1363-64. Likewise, in *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529 (9th Cir. 1992), the plaintiff, who had advocated for reforms adverse to his employer's business interests, alleged that his employer had terminated him and then continued to retaliate against him by engaging in various acts to blacklist plaintiff from the industry. *Id. at* 1532-33. Again, there was no pattern, because, "although Sever alleges a number of 'acts,' [defendant's] collective conduct is in a sense a single episode having the singular purpose of impoverishing Sever, rather than a series of separate, related acts." *Id.* at 1535. The court also observed that "there was but a single victim involved" and that there was no suggestion the defendants would continue the alleged behavior or intended to harm anyone other than the plaintiff. *Id.*

Applying this precedent, *Ricotta v. State of California*, 4 F.Supp.2d 961 (S.D. Cal. 1998), dismissed allegations that state officials, attorneys, and other individuals conspired to deny a RICO plaintiff fair marriage dissolution proceedings by engaging in extortion, bribery, perjury, undue influence, and other acts over the course of two trials, numerous motions and hearings, four separate appeals, and several state bar complaints. *Id.* at 968-71. The court found no racketeering activity, reasoning that "[s]imilar to *Sever*, in this case Plaintiff alleges that the defendants engaged in various activities, all with the single purpose of depriving him of a fair dissolution proceeding" and "causing him to lose his estate." *Id.* at 978. The court noted that there was "only one single victim involved," that "once the Defendants successfully 'took' Plaintiff's estate there was no need for any continued tampering," and that there was "no claim that the Defendants intended to harm anyone but Plaintiff." *Id. See also Religious Tech. Ctr. v.*

**Page 29 - MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, FOR LACK OF VENUE, AND FOR FAILURE TO STATE A CLAIM**

*Wollersheim*, 971 F.2d 364, 366 (9th Cir. 1992) (series of acts including theft, blackmail, and extortion did not satisfy continuity requirement because all actions were directed at the prosecution of a single tort suit, and "there was no threat of activity continuing beyond the conclusion of that suit"); *Jarvis v. Regan*, 833 F.2d 149, 152-53 (9th Cir. 1987) (pattern requirement not satisfied by allegations that legal aid organizations committed several acts of mail and wire fraud in obtaining a single grant).

As in all of these cases, Columbia alleges a single scheme against a single victim that has run to completion and there is no risk of continued activity. Although Columbia alleges several "predicate" acts, as in *Wollersheim* and *Ricotta*, each centers on the two IPRs. (*See* FAC, ¶¶ 83-133.) Comparison of the facts of this case with *Ricotta* and *Wollersheim* is especially compelling. As in both of those cases, the activities alleged by Columbia relate to a single effort or purpose—invalidating the two Columbia patents through IPRs, which are legitimate administrative proceedings. *See also Sever*, 978 F.2d at 1535 ("singular purpose"). Moreover, *Ricotta* involved predicate acts similar to the alleged predicate acts here—*i.e.*, conduct in litigation—and directed to a "singular purpose." *See Ricotta*, 4 F. Supp. 2d at 968-71 (alleging predicate acts spanning over the course of two trials, numerous motions and hearings, four separate appeals, and several state bar complaints). Here, the predicate acts are less numerous and span significantly less time, as the two IPRs and motions to stay were all filed within one year of each other. Nevertheless, *Ricotta* found no pattern of racketeering activity, and this Court should do the same. In *Wollersheim*, all of the predicate acts were directed at prosecuting a tort suit that had concluded. *See Wollersheim*, 971 F.2d at 366. Likewise here, all of the acts

**Page 30 - MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, FOR LACK OF VENUE, AND FOR FAILURE TO STATE A CLAIM**

were directed at the IPRs challenging Columbia's patents, and likewise here, the IPRs were terminated by the Patent Office.  (*See* FAC, ¶ 209.)

As to the alleged victim, here as in the cases cited above, there is just a single victim—Columbia, which alleges that it was harmed by being required to pay its attorneys to defend against the IPRs.  (*See* FAC, ¶¶ 218-219.)  Finally, there is no risk that the defendants will file additional IPRs challenging Columbia's (or any other person's) patents and Columbia has made no such allegation.  There is no risk of the alleged activity continuing into the future. Columbia has thus failed to establish a "pattern" of racketeering activity, and all of the RICO claims should be dismissed.  *See Medallion*, 833 F.2d at 1364; *Sever*, 978 F.2d at 1532-33; *Ricotta*, 4 F.Supp.2d at 978; *Wollersheim*, 971 F.2d at 366; *Jarvis*, 833 F.2d at 152-53.

E. **Columbia Cannot Plead Facts Sufficient to Sustain the § 1962(a) Federal Claim or the Oregon State Equivalent Claim.**

The Court should dismiss with prejudice Count 2 under the First and Second Claims for Relief because Columbia has not plead facts sufficient to sustain those claims.  A section 1962(a) claim requires a showing that a defendant: "(1) received income from a pattern of racketeering activity (2) used or invested that income in the operation of an enterprise; and (3) caused the injury complained of by the use or investment of racketeering income in an enterprise."  *Rao v. BP Prods. North America, Inc.*, 589 F.3d 389, 398-99 (7th Cir. 2009). Columbia must allege "an investment injury separate and distinct from the injury flowing from the predicate act."  *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008). In other words, the investment of racketeering income must be the proximate cause of some distinct injury; Columbia may not simply recite the same facts as alleged under the claim for

relief under § 1962(c), and rely on the same injury alleged in that context (based on the alleged predicate acts rather than investment of racketeering income).  *See id.*

Columbia fails to plead more than one injury as a result of defendants' alleged actions, and it further fails to allege any injury as a result of alleged investment of income received from a pattern of racketeering activity.  (*Cf.* FAC, ¶ 251 (claiming injury in the context of § 1962(c): "As a direct and proximate consequence of the conduct of Defendants and each of them alleged herein, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than $700,000, said damages to be proven at the time of trial."); *id.*, ¶ 261 (claiming identical injury in the context of § 1962(a)).)  Columbia has also improperly claimed identical injury in the context of the two Oregon state law equivalent counts.  (*See* FAC, ¶ 302 (claiming $700,000 injury in the context of the Oregon Counterpart to 28 U.S.C. § 1962(c)); *id.*, ¶ 315 (claiming identical injury in the context of the Oregon Counterpart to 28 U.S.C. § 1962(a)).)  Both counts must be dismissed with prejudice because Columbia cannot claim any harm from alleged income received from the pattern of racketeering activity and cannot allege "an investment injury separate and distinct from the injury flowing from the predicate acts."  *See Sybersound*, 517 F.3d at 1149.  Here, the alleged injury of $700,000 plead across all four counts is based on the alleged predicate acts, not an investment of income derived from the racketeering activity.

These counts should be dismissed for the additional reason that Columbia does not satisfy the pleading requirements to identify the alleged income, to identify how the alleged income was invested in the enterprise, and as already described, to identify any injury flowing from those alleged actions. *See, e.g., Elliott v. Foufas*, 867 F.2d 877, 880-81 (5th Cir. 1989)

(upholding dismissal of claim where (1) "allegations substantially rescript the language of the statute in conclusory form," (2) plaintiff "failed to articulate how any particular defendant derived income from the alleged predicate acts," and (3) plaintiff did not "identify the enterprises in which income was invested."). Columbia's complaint suffers from all three deficiencies. It merely rescripts the language of the elements of § 1962(a) and the Oregon equivalent statute. (*See* FAC, ¶¶ 253-262; ¶¶ 305-317.) It does not identify how any particular defendant derived income from the alleged predicate acts. (*See* FAC, ¶¶ 257, 259, 308, 310.) Nor does it identify the enterprises in which the unidentified income was allegedly invested. (*See id.*)

Finally, these counts should be dismissed because Columbia cannot identify any income received by the enterprise as a result of the alleged pattern of racketeering activity. *See, e.g.*, *In re Burzynski*, 989 F.2d 733, 744 (5th Cir. 1993) (finding cause of action was properly dismissed where "the RICO 'persons' received no income from their 'pattern of activity' which they used to operate the enterpise."). Here, there can be no allegation that the enterprise, or the "persons" involved in the alleged enterprise, received income. Columbia's allegations regarding alleged income received by the enterprise are unclear, but they appear to boil down to this: one defendant passed money to another defendant, which was then passed to the Patent Office or the attorneys involved in prosecuting the IPRs. (*See, e.g.* FAC, ¶¶ 138-144.) This is not income derived from racketeering activity, and is in fact a net financial loss to the alleged enterprise. The predicate acts of filing and prosecuting IPRs and filing motions to stay district court proceedings do not generate income: they cost money. Columbia cannot show that any defendant received income from racketeering activity.

**Page 33 - MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, FOR LACK OF VENUE, AND FOR FAILURE TO STATE A CLAIM**

## <u>CONCLUSION</u>

For the reason above, Columbia's claims against Seirus should be dismissed.

Dated:  April 12, 2019

Respectfully Submitted,

FISH & RICHARDSON P.C.

*/s/ Seth M. Sproul*

Christopher S. Marchese (*pro hac vice*)
Seth M. Sproul (*pro hac vice*)
Oliver J. Richards (*pro hac vice*)
Tucker N. Terhufen (*pro hac vice*)
marchese@fr.com
sproul@fr.com
orichards@fr.com
terhufen@fr.com

MARKOWITZ HERBOLD PC

Renée Rothauge, OSB #903712
ReneeRothauge@markowitzherbold.com
Harry B. Wilson, OSB #077214
HarryWilson@markowitzherbold.com

*Attorneys for Defendant Seirus Innovative Accessories, Inc.*

## **CERTIFICATE OF COMPLIANCE**

This brief is in compliance with Oregon Local Rule 7-2(b).  The brief contains,

10,341 words as determined by Microsoft Word including headings, footnotes and

quotations, but excluding the caption, table of contents, table of cases and authorities,

signature block, exhibits, and any certificates of counsel.


 Dated:  April 12, 2019                Respectfully Submitted,

                                       FISH & RICHARDSON P.C.

                                       */s/ Seth M. Sproul*
                                       Seth M. Sproul