**Renée E. Rothauge, OSB #903712**
reneerothauge@markowitzherbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@markowitzherbold.com
MARKOWITZ HERBOLD PC
1211 SW Fifth Avenue, Suite 3000
Portland, OR 97204
Telephone: (503) 295-3085
Facsimile: (503) 323-9105

**Christopher S. Marchese** (admitted *pro hac vice*)
marchese@fr.com
**Seth M. Sproul** (admitted *pro hac vice*)
sproul@fr.com
**Oliver J. Richards** (admitted *pro hac vice*)
orichards@fr.com
**Tucker N. Terhufen** (admitted *pro hac vice*)
terhufen@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

*Attorneys for Defendants Seirus Innovative Accessories, Inc.,*
*Michael J. Carey, Wendy M. Carey, and Robert Murphy*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON, PORTLAND DIVISION

| | |
|---|---|
| **COLUMBIA SPORTSWEAR NORTH AMERICA, INC.,** an Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>**SEIRUS INNOVATIVE ACCESSORIES, INC.,** a Utah corporation, **VENTEX CO., LTD.**, a foreign company, **MICHAEL J. CAREY**, an individual, **WENDY M. CAREY**, an individual, **ROBERT (BOB) MURPHY**, an individual, **KYUNG-CHAN GO**, an individual, **MAN-SIK (PAUL) PARK**, an individual, and **JOHN DOE NUMBERS 1-5**, individuals,<br><br>Defendants. | Case No.: 3:19-cv-00137-SI<br><br>**THE SEIRUS DEFENDANTS' SPECIAL MOTION TO STRIKE COLUMBIA'S STATE-LAW CLAIMS PURSUANT TO ANTI-SLAPP LAW (ORS § 31.150)**<br><br>Hon. Michael H. Simon<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

Page(s)

LOCAL RULE 7 CERTIFICATION ............................................................................1

MOTION ........................................................................................................1

INTRODUCTION .............................................................................................1

LEGAL BACKGROUND & STANDARD....................................................................2

I.      The prior litigation.....................................................................................4

II.     The purpose and importance of IPR proceedings. .............................................6

III.    Ventex's IPR proceedings...........................................................................9

ARGUMENT .................................................................................................10

I.      Columbia's State Law Claims Should Be Stricken...........................................10

        A.      Columbia's State Law Claims Arise out of Protected Activity..........................10

        B.      Columbia Cannot Meet Its Burden of Showing a Probability of Success. ........15

                1.      Columbia Cannot Succeed For the Reasons Stated in Seirus' Motion to
                        Dismiss ...................................................................................16

                2.      Columbia Cannot Prove Its Fraud Claims .................................16

                3.      Columbia Cannot Prove Its Oregon RICO Claim................................19

                4.      Columbia Cannot Prove Abuse of Process..............................21

        C.      Once the Allegations Arising from Protected Activity Are Stricken,
                Columbia's State Law Claims Must Be Dismissed and Seirus Should Be
                Awarded Fees............................................................................22

CONCLUSION ..............................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applications in Internet Time, LLC v. RPX Corp.,*
  897 F.3d 1336 (Fed. Cir. 2018) ................................................................18

*Baral v. Schnitt,*
  1 Cal. 5th 376, 393 (2016) .............................................................. 14, 15

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories,*
  Case No. 17-cv-1781 (S.D. Cal. Sept. 12, 2017), D.I. 277 ......................6

*Columbia Sportswear North America, Inc. v. Ventex Co., LTD,*
  Case No. 3:17-cv-00623 (D. Or. 2017), D.I. 1, ¶¶ 20-30......................5, 6

*Columbia Sportswear North America, Inc. v. Ventex Co., Ltd.,*
  Case No. 3:17-cv-00623-SI (D. Or.), D.I. 17 .........................................6

*Commercial Bus. Sys., Inc. v. Halifax Corp.,*
  484 S.E.2d 892 (Va. 1997)......................................................................19

*Concerned High Knob Prop. Owners v. High Knob Assocs.,*
  No. 92-70., 1992 WL 885051 (Va. Cir. Ct. Dec. 1, 1992)......................17

*Cuozzo Speed Techs., LLC v. Lee,*
  136 S. Ct. 2131 (2016).........................................................................8, 12

*Deep Photonics Corp. v. LaChapelle,*
  282 Or. App. 533 (2016) .........................................................................10

*Doe v. Gangland Prods., Inc.,*
  730 F.3d 946 (9th Cir. 2013) ..................................................................15

*Donohoe Const. v. Mount Vernon Assoc.,*
  369 S.E.2d 857 (Va. 1988).......................................................................21

*Drink Tanks Corp. v. GrowlerWerks, Inc.,*
  No. 3:16-CV-410-SI, 2017 WL 2633389 (D. Or. June 19, 2017) ..........22

*Flatley v. Mauro,*
  39 Cal. 4th 299, 46 Cal.Rptr.3d 606, 139 P.3d 2 (2006) .......................15

*Gardner v. Martino,*
  Civil No. 05-769-HU, 2005 WL 3465349 (D. Or. Sept. 19, 2005).........3

*Glass v. Glass,*
    228 Va. 39, 321 S.E.2d 69 (1984) ........................................................................... 19

*Glidewell v. Murray-Lacy & Co.,*
    98 S.E. 665 (Va. 1919) ........................................................................................... 21

*Kellogg Co. v. National Biscuit Co.,*
    305 U.S. 111 (1938) .................................................................................................. 7

*Lear, Inc. v. Adkins,*
    395 U.S. 653 (1969) .................................................................................................. 7

*McLean v. Fishman,*
    No. H039366, 2014 WL 2568894 (Cal. Ct. App. June 9, 2014) ........................... 14

*Miller v. Yokohama Tire Corp.,*
    358 F.3d 616 (9th Cir. 2004) .................................................................................. 17

*Mullen v. Meredith Corp.,*
    271 Or. App. 698 (2015) .......................................................................................... 2

*Mut. of Enumclaw Ins. Co. v. McBride,*
    295 Or. 398 (1983) .................................................................................................. 20

*Neville v. Chudacoff,*
    160 Cal.App.4th 1255, *rev. den.* (2008) ............................................................... 10

*Northon v. Rule,*
    637 F. 3d 937 (9th Cir. 2011) .................................................................................. 4

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,*
    2019 WL 1428954 (Apr. 1, 2019) ............................................................................ 4

*Rusheen v. Cohen,*
    37 Cal. 4th 1048 (2006) .......................................................................................... 14

*Safari Club v. Rudolph,*
    845 F.3d 1250 (9th Cir. 2017) ................................................................................ 15

*Saint Regis Mohawk Tribe v. Mylan Pharm. Inc.,*
    896 F.3d 1322 (U.S. Apr. 15, 2019) ................................................................... 8, 21

*Sheley v. Harrop,*
    9 Cal. App. 5th 1147, 1166 (2017) ......................................................................... 14

*Sorensen v. Gardner,*
    215 Or. 255 (1959) .................................................................................................. 17

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ................................................................. 17

*State v. Stockfleth/Lassen*,
    311 Or. 40 (1991) ...................................................................................... 2

*Staten v. Steel*,
    222 Or. App. 17 (2008) ........................................................................... 2

*The Flag Co. v. Maynard*,
    No. CV 05-1194-HU, 2006 WL 1030173 (D. Or. Apr. 17, 2006) ................ 17

*Thomas v. Fry's Elec., Inc.*,
    400 F.3d 1206 (9th Cir. 2005) .................................................................. 3

*Transamerica Ins. Co. v. Bloomfield*,
    55 Or. App. 31 (1981) ............................................................................ 20

*United States v. Kissel*,
    218 U.S. 601 (1910) ................................................................................ 19

*Unity Farm Constr., Inc. v. Slabtown*,
    24 Va. Cir. 242, 1991 WL 835044 (1991) .............................................. 17

*Ventex Co., Ltd. v. Columbia Sportswear North America, Inc.*,
    IPR2017-651 (PTAB Nov. 19, 2018) ..................................................... 5, 6

*Wi-Fi One, LLC v. Broadcom Corp.*,
    887 F.3d 1329 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 826 (2019) .......... 18

*Wochnick v. True*,
    224 Or. 470, 356 P.2d 515 (1960) ......................................................... 18

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    395 U.S. 100 (1969) ................................................................................. 7

*Zweizig v. Nw. Direct Teleservices, Inc.*,
    No. 3:15-CV-02401-HZ, 2016 WL 5402935 (D. Or. Sept. 24, 2016) ......... 2, 10, 13

## Statutes

35 U.S.C. § 311 .......................................................................................... 6, 7

America Invents Act ...................................................................................... 6

ORS § 31.150 ........................................................................................ *passim*

ORS § 31.152 ........................................................................................................ 3, 4, 5, 23

ORS § 162.065 ............................................................................................................... 20

ORS § 162.075 ............................................................................................................... 20

ORS § 166.715 ........................................................................................................... 20, 21

ORS § 166.725(7)(a)(B) ................................................................................................. 20

ORS § 166.728(7) .......................................................................................................... 19

Patent Reform Act of 2007 ............................................................................................. 8

RICO ..................................................................................................................... *passim*

**Other Authorities**

37 C.F.R. 1.56 .................................................................................................................. 7

37 C.F.R. 1.63 .................................................................................................................. 7

153 Cong. Rec. E773-05 ................................................................................................. 8

153 Cong. Rec. H10270 ............................................................................................... 8, 9

157 Cong. Rec. S1360 ..................................................................................................... 7

157 Cong. Rec. S1360 (Statement of Senator Leahy) ................................................... 12

First Amendment ................................................................................................... *passim*

Fed. R. of Civ. P. 12 (b) ............................................................................................ 4, 13

Fed. R. of Civ. P. 11 ...................................................................................................... 21

Restatement (Second) of Torts § 682 (1977) ................................................................ 21

## LOCAL RULE 7 CERTIFICATION

Counsel for the Seirus defendants (i.e., Seirus Innovative Accessories, Inc. ("Seirus"), Michael Carey, Wendy Carey, and Robert Murphy (collectively, "Seirus Defendants")) met and conferred with Columbia Sportswear North America, Inc. ("Columbia") regarding the issues addressed in this motion on April 15 and April 18, 2019. (Declaration of Seth M. Sproul ("Sproul Decl.") submitted in support of this motion, ¶ 2.) During the calls, the parties discussed the issues but could not reach resolution and counsel for Columbia confirmed that it would oppose this motion. (*Id.*)

## MOTION

Pursuant to Or. Rev. State. § 31.150, the Seirus Defendants move to strike Columbia's state law claims (the Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Claims for Relief, the "State Law Claims"). This motion is supported by the accompanying memorandum of law.

## INTRODUCTION

Under ORS § 31.150, a court must dismiss a claim arising out of statements made in or in connections with an executive, legislative, or judicial proceeding unless the plaintiff can establish a probability, based on substantial evidence, that it will prevail. Columbia's State Law Claims arise out of statements made by the Seirus Defendants, Ventex Co. Ltd. ("Ventex"), and the individual Ventex defendants (Messrs. Go and Park) to the Patent Office and this Court. Columbia cannot, however, establish a probability that it will prevail on the State Law Claims because the claims are barred by the *Noerr-Pennington* doctrine and the litigation

privilege, and because legal arguments made to judicial bodies cannot constitute common law or statutory fraud.  Accordingly, this Court must dismiss Columbia's State Law Claims.

## LEGAL BACKGROUND & STANDARD

Oregon's anti-SLAPP statute, ORS 31.150, allows a court to dismiss a case when a plaintiff's claims seek to chill a defendant's exercise of its First Amendment rights.[1]  *Mullen v. Meredith Corp.*, 271 Or. App. 698, 700 (2015) (stating that the purpose of Oregon's anti-SLAPP statute is to "permit a defendant who is sued over certain actions taken in the public arena to have a questionable case dismissed at an early stage.")  ORS 31.150 provides for the "dismissal of claims against persons participating in public issues, when those claims would be privileged under case law, before the defendant is subject to substantial expenses in defending against them." *Mullen*, 271 Or. App. at 700.  The statute "is about nothing less than guaranteeing our basic first amendment rights for our citizens without their being afraid of intimidation" in the form of lawsuits alleging liability based on the exercise of those first amendment rights.  *Staten v. Steel*, 222 Or. App. 17, 30 (2008) (quoting statement of Rep. Kurt Schrader).

Special motions to strike under ORS 31.150 are resolved according to a two-step burden-shifting process.  In the first step, a "defendant making a special motion to strike . . .

---

[1] Because Oregon's anti-SLAPP statute is substantively similar to California's statute, Seirus cites and relies on Oregon's statute throughout this brief. *See Zweizig v. Nw. Direct Teleservices, Inc.*, No. 3:15-CV-02401-HZ, 2016 WL 5402935, at *2 (D. Or. Sept. 24, 2016) (noting that "Oregon courts look to California case law in construing Oregon's anti–SLAPP statute because Oregon's law was modeled on California statutes" (internal quotation marks omitted)); *State v. Stockfleth/Lassen*, 311 Or. 40, 50 (1991) (explaining that, "when Oregon adopts the statute of another jurisdiction, the legislature is presumed also to adopt prior constructions of the statute by the highest court of that jurisdiction").  The outcome should remain the same regardless of whether Oregon or California law applies.

has the initial burden of making a prima facie showing that the claim against which the motion

is made arises out of" one of four categories of activities. These categories are:

> (a) Any oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law;

> (b) Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law;

> (c) Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or

> (d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

ORS § 31.150(2)-(3). Categories (a), (b), and (d) are relevant here. In determining whether a

suit arises out of one of these protected activities, courts are instructed to "liberally construe[]"

this provision "in favor of the exercise of the rights of expression." ORS § 31.152(4). Once

the defendant meets this burden, the second step shifts the burden to the plaintiff "to establish

that there is a probability that the plaintiff will prevail on the claim by presenting substantial

evidence to support a prima facie case." ORS § 31.150(3).

Federal courts may use a state's anti-SLAPP laws to dismiss state law claims. *Thomas v.

Fry's Elec., Inc.*, 400 F.3d 1206, 1206-07 (9th Cir. 2005) (applying California's anti-SLAPP

statute to state law claims in federal court); *Gardner v. Martino*, Civil No. 05-769-HU, 2005 WL

3465349, at *3 (D. Or. Sept. 19, 2005) ("defendants in federal courts may avail themselves of

the anti-SLAPP statute provisions."). As the Ninth Circuit has held, if a defendant makes an

anti-SLAPP motion to strike "founded on purely legal argument," then the analysis is made

under Federal Rule of Civil Procedure 12 (b) standards.  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018), *and cert. denied sub nom. Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, ___ S.Ct. ___, 2019 WL 1428954 (Apr. 1, 2019).  But when a special motion to strike is predicated on factual arguments, the "motion must be treated as though it were a motion for summary judgment and discovery must be permitted." *Id.*  This motion to strike is based solely on legal arguments, so it is appropriately addressed under the Rule 12 standard without the need for any additional discovery.

A defendant who prevails on a special motion to strike "shall be awarded reasonable attorney fees and costs."  ORS § 31.152(3).  State laws awarding attorneys' fees are generally considered to be substantive laws under the *Erie* doctrine, and thus federal courts applying Oregon's anti-SLAPP laws are obligated to award fees to a prevailing defendant.  *See Northon v. Rule*, 637 F. 3d 937, 938 (9th Cir. 2011) (awarding fees to prevailing defendant under ORS § 31.152(3).)

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    THE PRIOR LITIGATION.

This case follows a series of patent infringement cases filed by Columbia against Seirus and its supplier Ventex.  Columbia is a large public company with well over $2 billion in annual sales.  It sells outdoor apparel, such as jackets, pants, and shoes.  Several years ago, Columbia began marketing apparel that included a material known as "Omni-Heat," which is used as an inner liner for jackets and other apparel.  (FAC (D.I. 26) at ¶ 65.)  Omni-Heat is a material that is partially covered in a reflective foil that, according to Columbia, directs heat back to the

wearer while also allowing the fabric to continue to vent air and moisture.  (*Id.*)  Columbia contends that the Omni-Heat fabric—and clothing lined with it—are covered by two utility patents:  the '270 patent and the '119 patent.  (*Id.* at ¶ 66.)

Seirus is a small, private company with its headquarters in Poway, California, a suburb of San Diego.  (*Id.* at ¶ 13.)  Seirus was founded in the early 1980s and is focused on winter accessories, including gloves, hats, and face masks for skiing and snowboarding.  (*Id.* at ¶ 69.) In or around 2013, Seirus began selling gloves and other accessories with a fabric liner known as "HeatWave."  (*Id.* at ¶ 70.)  Columbia alleged that HeatWave infringed the '270 and '119 patents, as well as a Columbia design patent, and sued Seirus for infringement of all three patents.  (*Id.* at ¶¶ 73, 75.)

As Columbia alleges in its Complaint, Seirus obtained the HeatWave liner fabric from Defendant Ventex.  (*Id.* at ¶ 70.)  Ventex is a Korean company that provides other companies such as Seirus with fabric that is used to make finished products, such as the Seirus HeatWave gloves.  (*Id.*)  Ventex refers to the HeatWave fabric as "MegaHeat RX" (*Id.*)

Although the lawsuits were separated in time, Columbia sued both Seirus and Ventex for infringement of the same two utility patents ('270 and '119 patents) and the design patent. (*Columbia Sportswear North America, Inc. v. Ventex Co., LTD*, Case No. 3:17-cv-00623 (D. Or. 2017), D.I. 1, ¶¶ 20-30.)  Before suing Seirus and Ventex in the U.S. courts, Columbia first sued Ventex in Korea in 2013, alleging infringement of the Korean counterpart to the U.S. '270 and '119 patents.  (Petitioner's Opening Brief Regarding Time-Bar Issues, Paper 104 at 2, *Ventex Co., Ltd. v. Columbia Sportswear North America, Inc.*, IPR2017-651 (PTAB Nov. 19, 2018).)  Ventex successfully defended that attack, invalidating the patent in a decision that was

eventually affirmed by the Korean Supreme Court. (*Id.*) Columbia then sued Seirus in the Western District of Washington, in 2013. (FAC at ¶ 73.) That suit alleged infringement only of the design patent. (*Id.*) Columbia dismissed that suit and re-filed in this Court in 2015, alleging infringement of the design patent as well as the '270 and '119 patents. (*Id.* at ¶ 75.) Shortly before the trial—which occurred in September 2017 in the Southern District of California after Judge Hernandez transferred the case there—Columbia dropped the '119 patent from the suit. (*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories*, Case No. 17-cv-1781 (S.D. Cal. Sept. 12, 2017), D.I. 277.) Like the earlier action brought against Ventex in Korea, this litigation also ended with one of Columbia's patents (the '270 patent) being found invalid. (*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories*, Case No. 17-cv-1781 (S.D. Cal. Sept. 29, 2017) Jury Verdict, D.I. 377.)

Before the trial between Seirus and Columbia, Columbia sued Ventex again, this time in this Court in April 2017, alleging infringement of the '270 and '119 patents. (FAC at ¶ 158.) That case was stayed when the parties filed a stipulated motion to stay the case pending the IPRs. (*Columbia Sportswear North America, Inc. v. Ventex Co., Ltd.*, Case No. 3:17-cv-00623-SI (D. Or.), D.I. 17.)

## II.    THE PURPOSE AND IMPORTANCE OF IPR PROCEEDINGS.

Prior to all of this litigation, Congress had enacted the America Invents Act, or "AIA," in 2011. *See* Pub. L. 112-29 (2011). The AIA included procedures for challenging patents after they have been granted, also known as "post-grant proceedings," which include IPRs. *See id.* at § 6 (codified at 35 U.S.C. §§ 311 *et seq.*). An IPR is an administrative proceeding before the Patent Office in which a person or company can challenge an issued patent. 35

U.S.C. §§ 311 et seq.  The challenger files an IPR petition in the Patent Office, contending that the challenged patent is invalid based on prior art—that is, the patent is anticipated or obvious over the prior art.  35 U.S.C. § 311(b).

Strong policy reasons support Congress' creation of IPR proceedings.  The Supreme Court has recognized that a patent is a "legal monopoly," *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 135 (1969), that is granted for a limited time, and when the patent expires the monopoly created by it expires, too.  *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 120-22 (1938).  That legal monopoly comes with certain requirements.  Patent applicants must swear that they are unaware of any prior art that would render their alleged invention unpatentable. *See* 37 C.F.R. 1.56; 37 C.F.R. 1.63.  Despite this gating mechanism, patent issuance has been climbing over the years, and federal courts have experienced a significant uptick in patent litigation, including by "patent trolls" seeking to enforce patents.  The Supreme Court has recognized the need to police questionable patents, stressing the "important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain." *Lear, Inc. v. Adkins*, 395 U.S. 653, 670–74 (1969).  As such, "[i]t is as important to public that competition should not be repressed by worthless patents" of dubious quality lest the public "continually be required to pay tribute to would-be monopolists without need or justification."  *Id.* at 663–64, 671.

Congress, too, recognized that many patents are of "low quality and dubious validity." 157 Cong. Rec. S1360, 1362, 2011 WL 797877 (Statement of Senator Leahy).  Through the enactment of the AIA, which created the IPR process, Congress allowed for the Patent Office "acting as the United States in its role as a superior sovereign to reconsider a prior

administrative grant and protect the public interest in keeping patent monopolies 'within their legitimate scope.'"  *Saint Regis Mohawk Tribe v. Mylan Pharm. Inc.*, 896 F.3d 1322, 1329 (Fed. Cir. 2018), *cert. denied*, No. 18-899, ___ S.Ct. ___, 2019 WL 1590253 (U.S. Apr. 15, 2019); *see also Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2135 (2016) (noting that "[t]he purpose of inter partes review is not only to resolve patent-related disputes among parties, but also to protect the public's paramount interest in seeing that patent monopolies are kept within their legitimate scope" (internal quotation marks and alterations omitted)).

In particular, the AIA's post-grant procedures, which include IPRs, were "designed to allow parties to challenge a granted patent through a[n] expeditious and less costly alternative to litigation."  153 Cong. Rec. E773-05, 2007 WL 1147251 (Statement of Representative Burman, introducing the "Patent Reform Act of 2007, which would eventually become the AIA); *see also, e.g.*, 153 Cong. Rec. H10270, 10273, 2007 WL 2571712 ("A meaningful Inter Pa[r]tes proceeding can also be an expeditious, less costly alternative to litigating the validity of the patent in the courts.").  The IPR system was created specifically in response to "[p]atents of low quality and dubious validity" being asserted to "extort unreasonable licensing fees from legitimate businesses" simply due to the cost of litigation—such a situation "constitute[d] a drag on innovation" and "unjustly cast doubt on truly high quality patents."  157 C.R. S1360, 13622, 2011 WL 797877 (Statement of Senator Leahy).

IPRs allow parties that are sued for allegedly infringing these patents of dubious quality to more efficiently challenge their validity in a streamlined administrative proceeding, rather than through expensive district court litigation.  Thus, IPRs serve a critical function in our legal system and economy: ridding the books of invalid patents, and clearing out patent

monopolies that would otherwise dampen free competition in a burgeoning technology industry.

## III.   VENTEX'S IPR PROCEEDINGS.

Ventex filed IPR petitions against the '270 and '119 patents.  (FAC at ¶¶ 103-104.)  In its IPR petitions Ventex asserted that it was the real party in interest.  (D.I. 65-3 ('119 patent Petition) at 2.)  At the time Ventex filed the IPRs, the law of real party in interest was far from settled.  After determining that the patent claims challenged in the Ventex IPR petitions were likely invalid at institution, but just before the PTAB was to issue its final written decision on the merits of Ventex's petitions—i.e., whether the Columbia patents were valid over the prior art—the Federal Circuit issued an opinion on real party in interest that changed the law.  (*See, e.g.,* D.I. 65-1 at 2 (citing *Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336 (Fed. Cir. 2018).)  As a result, the PTAB withheld its final written decision and ordered the parties to conduct discovery and to submit additional briefing on the real party in interest issue.  (*Id.*).  The PTAB then issued a new decision (that it subsequently deemed precedential).

Within five days after the PTAB issued its real party in interest order in the Ventex IPRs, Columbia filed this lawsuit.  The lawsuit is squarely aimed at punishing the Seirus Defendants and Ventex for Ventex's First Amendment petitioning activities.  The Court should dismiss Columbia's State Law Claims to avoid chilling Defendants' free speech.

# ARGUMENT

## I.    Columbia's State Law Claims Should Be Stricken

### A.    Columbia's State Law Claims Arise out of Protected Activity

Seirus has the initial burden of showing that Columbia's State Law Claims arise out of protected activity.  ORS § 31.150.  To satisfy this burden, Seirus need only make a prima facie case that the acts underlying Columbia's claims were "reasonably related" to acts in furtherance of the First-Amendment protected act specified in the statute.  *Neville v. Chudacoff*, 160 Cal.App.4th 1255, 1268, *rev. den.* (2008); *Deep Photonics Corp. v. LaChapelle*, 282 Or. App. 533, 546 (2016) (citing *Neville* approvingly).  The anti-SLAPP statute applies squarely to petitions made to a federal administrative body (such as the PTAB) and to actions taken in federal court (such as motions to stay).  ORS § 31.150(2)(a) ("Any oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law").  Moreover, courts "have concluded that the anti-SLAPP statute protects not only communications in a judicial or official proceeding but also communications that are preparatory to or in anticipation of commencing official proceedings."  *Zweizig*, 2016 WL 5402935, at *4 (internal quotation marks and alterations omitted).  Thus, a claim "arises out of" a protected activity if the acts underlying that claim are based on the protected activity or acts done in support of protected activity.  *Id.*

Here, each of Columbia's state law claims arise out of protected activity.  The central thrust of all of Columbia's State Law Claims is that Ventex and Seirus allegedly engaged in fraud by filing documents with judicial bodies that allegedly misrepresented that Ventex was the real party in interest in filing IPR petitions as to the '270 and '119 patents.  Each of

Columbia's state law claims are based on this central premise.[2]  As to Columbia's third claim, that Ventex and Seirus committed fraud under Oregon law, Columbia alleges that "Defendants committed fraud under Oregon law when they intentionally and falsely represented to Columbia and the PTAB that Ventex was the only real party in interest in the Ventex IPRs …."  (FAC at ¶ 330.)  In this Oregon fraud claim, Columbia additionally alleges that "Defendant Seirus knowingly concealed and failed to make known material facts when it filed notice of third-party [IPR] petitions" in this Court, and that "Defendant Seirus knowingly concealed and failed to make known material facts when it filed motions to stay the Seirus Oregon Action based on the Ventex IPRs."  (FAC at ¶¶ 336–337.)  As to Columbia's Virginia fraud claims, Columbia brings causes of action for both common law and statutory fraud, as well as alleged conspiracy to commit fraud, based on the allegation that "Defendants committed actual fraud under Virginia law when they intentionally and falsely represented to Columbia and the PTAB that Ventex was the only real party in interest in the Ventex IPRs …."  (FAC at ¶ 355; *see also* FAC at ¶¶ 375, 383.)  Columbia also brings a cause of action for Abuse of Process under Virginia law based on its allegation that the Ventex IPRs were filed and litigated "with an ulterior purpose" because Ventex "identified only itself as a real party in interest."  (FAC at ¶¶ 387, 389.)  Columbia's claim for violation of the Oregon RICO statute identifies the filing of the IPRs as a predicate act of perjury or false swearing.  (FAC at ¶ 274

---

[2] Federal RICO is plead as the "first claim for relief."  The state law claims are:  (1) Oregon RICO, second claim for relief; (2) Oregon fraud, third claim for relief; (3) Virginia actual fraud, fourth claim for relief; (4) Virginia statutory civil conspiracy to commit fraud, fifth claim for relief; (5) Virginia common law conspiracy to commit fraud, sixth claim for relief; (6) Virginia abuse of process, seventh claim for relief; and (7) exemplary punitive damages, eighth claim for relief.

("Defendants also engaged in perjury or false swearing when they served Columbia's Oregon attorneys with copies of the Ventex IPR Petitions that falsely stated that Ventex was the only real party in interest.").)

IPR petitions are important First Amendment actions aimed at eliminating monopolies that were incorrectly granted and thus lie at the core of First Amendment petitioning activity. 157 Cong. Rec. S1360, 1362 (Statement of Senator Leahy) (IPR system created in response to "[p]atents of low quality and dubious validity" being asserted to "extort unreasonable licensing fees"); *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2135 (2016) (noting that IPRs are intended to resolve disputes and to protect the "public's paramount interest" in keeping patent monopolies within their legitimate scope). If Columbia's claims are allowed to stand, including claims for treble and punitive damages amounting to $22 million against a small, private company, there will be a chilling effect on First Amendment petitions. Companies may be less inclined to challenge patents through IPR proceedings due to concern that, if they are found though a fulsome PTAB process not to be the real party in interest, they may be accused of RICO violations and fraud. Indeed, if Columbia's theory of liability were accepted—that advancing a reasonable but ultimately unavailing legal conclusion in a petition to the government subjects one to liability for RICO and fraud claims—the chilling effect on petitioning activity would be severe.

All of Columbia's allegations fall into at least three categories of protected activity identified under the Oregon anti-SLAPP law. First, Columbia's allegations are based on "written statement[s] or other document[s] submitted[] in a . . . judicial proceeding." ORS § 31.150(2)(a). Columbia alleges that the defendants committed fraud by filing documents

**Page 12 - THE SEIRUS DEFENDANTS' SPECIAL MOTION TO STRIKE COLUMBIA'S STATE-LAW CLAIMS PURSUANT TO ANTI-SLAPP LAW (ORS § 31.150)**

with the Patent Office and with the district court during proceedings in both tribunals. Columbia's claims also arise out of "written statement[s] or other document[s] submitted[] in connection with an issue under consideration or review by a . . . . judicial body" for the same reason.   ORS § 31.150(2)(b).   And lastly, Columbia's claims arise out of "conduct in furtherance of the exercise of the constitutional right of petition."   ORS § 31.150(2)(d). Ventex filed petitions with a federal government agency seeking redress for patents Ventex believed the Patent Office issued errantly, seeking to have the Patent Office reconsider its decision to grant these patents.   Columbia's allegations of fraud and abuse of process center directly on Ventex's exercise of the right to petition the government.

Even if Columbia alleges additional acts, those acts are immaterial to determining whether the claims "arise out of" protected activity.   For one thing, any additional allegedly fraudulent activities were done in support of protected activity, and therefore also fall within the scope of the anti-SLAPP law.   *Zweizig*, 2016 WL 5402935, at *4.   For example, if Columbia's Complaint is to be believed, the Exclusive Manufacturing Agreement and allegedly fraudulent payments from Seirus to Ventex made pursuant to that agreement were made to support Ventex's right to petition the government for redress from what it believed to be an invalid patent.[3]   (FAC at ¶¶ 87-88 and 96 (alleging that Seirus and Ventex "fraudulently called the IPR Funding Contract" the Exclusive Manufacturing Agreement and that the agreement

---

[3] To be clear, Seirus categorically denies the allegations concerning the Exclusive Manufacturing Agreement and performance under that agreement.   The agreement was a legitimate commercial contract entered into between vendor (Ventex) and customer (Seirus) for certain exclusive rights to fabric sold by Ventex.   All payments under the agreement were based on that legitimate, and legal, endeavor.   However, for purposes of Rule 12(b)(6) and this special anti-SLAPP motion to strike, the allegations in Columbia's Complaint must be taken as true, even though they are demonstrably false.

**Page 13 - THE SEIRUS DEFENDANTS' SPECIAL MOTION TO STRIKE
COLUMBIA'S STATE-LAW CLAIMS PURSUANT TO ANTI-SLAPP LAW (ORS § 31.150)**

was "part of the alleged conspiracy" and "was a sham meant to disguise the agreement for

Seirus to fund the Ventex IPRs as a payment for value") and at ¶¶ 331–332 (alleging that

"Defendants have intentionally and falsely represented on invoices and purchase order"

payments which Columbia alleges were really made to "fund[] the Ventex IPRs").)  Thus, the

agreement and alleged payments were made in support of protected activity.[4]  In addition,

Ventex's allegedly perjured deposition testimony is also protected activity as it constitutes a

statement made to a judicial body in connection with litigation.  (*See, e.g.,* FAC, at ¶ 333); *see*

*also McLean v. Fishman*, No. H039366, 2014 WL 2568894, at *2 (Cal. Ct. App. June 9, 2014)

(explaining that "a suit seeking to impose liability for statements made in a deposition falls

within the scope of the anti-SLAPP statute because the complained-of conduct—providing

deposition testimony—is a protected activity").

   In any event, Columbia's claims "arise out of" protected activity so long as at least

some of the alleged activity is protected.  "The anti-SLAPP procedures are designed to shield

a defendant's constitutionally protected conduct from the undue burden of frivolous litigation.

It follows, then, that courts may rule on plaintiffs' specific claims of protected activity, rather

than reward artful pleading by ignoring such claims if they are mixed with assertions of

unprotected activity." *Baral v. Schnitt*, 1 Cal. 5th 376, 393 (2016).  Even if these other activities

are deemed to be outside the scope of the anti-SLAPP law, the anti-SLAPP law still applies to

---

[4] Litigation funding itself is protected by the First Amendment.  *See Sheley v. Harrop*, 9 Cal.
App. 5th 1147, 1166 (2017) (explaining that "litigation funding decisions also constitute
protected petitioning activity" under the anti-SLAPP law (internal quotation marks omitted));
*Rusheen v. Cohen*, 37 Cal. 4th 1048, 1056 (2006) (protected acts under the anti-SLAPP statute
"include[] communicative conduct such as the filing, ***funding***, and prosecution of a civil
action" (emphasis added)).

**Page 14 - THE SEIRUS DEFENDANTS' SPECIAL MOTION TO STRIKE**
**COLUMBIA'S STATE-LAW CLAIMS PURSUANT TO ANTI-SLAPP LAW (ORS § 31.150)**

the protected acts, and the allegations that are covered by the anti-SLAPP law are stricken, leaving the case to proceed on the remaining allegations. *Id.* Here, as discussed in Seirus' motion to dismiss, these other allegations are insufficient to support its claims, and the state law causes of action should be dismissed. (*See* D.I. 64, at 18–19.)[5]

Seirus has met this burden to show that Columbia's State Law Claims arise from protected activity. "From that fact the court may effectively presume the purpose of the action was to chill the defendant's exercise of First Amendment rights" and "[i]t is then up to the plaintiff to rebut the presumption by showing a reasonable probability of success on the merits." *Id.* We next turn to this second prong of the anti-SLAPP test.

## B.   Columbia Cannot Meet Its Burden of Showing a Probability of Success.

Columbia cannot show a reasonable probability of success on the merits as to its state law claims. *See* ORS § 31.150(3). Each of its claims are predicated on its allegation that stating a legal position in a legal filing constitutes fraud. These statements, though, are protected by

---

[5] The judicially-created "criminal activity" exemption to anti-SLAPP does not apply here. The exemption only pertains to situations where the criminality of the alleged acts has been conclusively established, for example, where criminality is admitted or established as a matter of law. *Flatley v. Mauro*, 39 Cal. 4th 299, 319, 329, 46 Cal.Rptr.3d 606, 139 P.3d 2 (2006) (establishing this exemption under the California anti-SLAPP statute); *Safari Club v. Rudolph*, 845 F.3d 1250, 1259 (9th Cir. 2017) (stating that the defendant's criminal activity must be conceded or the evidence must be "uncontroverted and conclusive" to trigger the *Flatley* exemption). Columbia has not alleged any criminal conduct that is remotely close to being conceded or conclusively established. Mere allegations of criminality should not take claims outside the scope of the anti-SLAPP law as this would allow plaintiffs to avoid the effects of anti-SLAPP through artful pleading and would effectively collapse both parts of the anti-SLAPP analysis into one. *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 954 (9th Cir. 2013) (explaining that "California courts consistently hold that defendants may satisfy their burden to show that they were engaged in conduct in furtherance of their right of free speech under the anti-SLAPP statute, even when their conduct was allegedly unlawful.").

**Page 15 - THE SEIRUS DEFENDANTS' SPECIAL MOTION TO STRIKE
COLUMBIA'S STATE-LAW CLAIMS PURSUANT TO ANTI-SLAPP LAW (ORS § 31.150)**

both the *Noerr-Pennington* doctrine and the litigation privilege, and thus cannot be the basis for liability.  Without the allegation that these filings are fraud, Columbia's claims must fail.  In addition, Columbia cannot prove entitlement to damages or sufficient pattern to support its RICO claims.

The reasons why Columbia cannot succeed are detailed in Seirus' motion to dismiss, filed on April 12.  (*See* D.I. 64.)  We address each of the allegations supporting Columbia's causes of action below and explain why they are insufficient to support its claims.

1. **Columbia Cannot Succeed For the Reasons Stated in Seirus' Motion to Dismiss**

Columbia cannot show that it will succeed for the reasons stated in Seirus' motion to dismiss.  As discussed therein, Columbia's causes of action are barred by both the *Noerr-Pennington* doctrine and the litigation privilege, and Columbia's state law claims are preempted by Federal Law.  (*See* D.I. 64, at 9–23.)  As also discussed in Seirus' motion to dismiss (*id.*, at 6–8), Columbia cannot bring a subsequent suit to recover attorney's fees incurred in previous litigation, and thus Columbia cannot recover damages in this case.  Lastly, Columbia has not sufficiently plead a claim under RICO because, even taking all of Columbia's allegations as true, the alleged conspiracy here was against a single victim for an insufficient period of time. (*See id.*, at 24–30.)  As each of these arguments is discussed extensively in the motion to dismiss, we do not repeat them here.

2. **Columbia Cannot Prove Its Fraud Claims**

The allegation that is central to each of Columbia's state law claims is that Ventex and Seirus committed fraud by identifying Ventex as the real party in interest in IPR filings with the Patent Office.  Though Columbia repeatedly stresses this allegation in its Complaint, the

**Page 16 - THE SEIRUS DEFENDANTS' SPECIAL MOTION TO STRIKE COLUMBIA'S STATE-LAW CLAIMS PURSUANT TO ANTI-SLAPP LAW (ORS § 31.150)**

entire basis for Columbia's allegation stems from a single statement in Ventex's petitions, which reads: "The real party in interest is Ventex Co., Ltd."  (D.I. 65–3 ('119 patent Petition) at 2.)  Even if Columbia's assertion were true (and it is not) that Ventex improperly identified itself as the real party in interest, this statement cannot constitute fraud as a matter of law because it is a legal assertion.

"[I]t is well established . . .  that misrepresentations of the law are not actionable as fraud . . . because statements of the law are considered merely opinions."  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 940 (9th Cir. 2006); *see also Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004) ("It is ... well settled, as a general rule, that fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law." (quoting Am. Jur .2d of Fraud and Deceit § 97 (2001)) (internal quotation marks omitted).  As the Supreme Court of Oregon has explained, the principle animating this rule is that "everyone is presumed to know the law, and therefore misrepresentations as to the legal effect of a particular instrument and the like are regarded as mere expressions of opinion."  *Sorensen v. Gardner*, 215 Or. 255, 259 (1959).  This principle is universally accepted, including under both Oregon and Virginia law. *Sorensen*, 215 Or. at 259 (holding that misrepresentation of law did not constitute fraud under Oregon law); *Unity Farm Constr., Inc. v. Slabtown*, 24 Va. Cir. 242, 1991 WL 835044, *3 (1991) ("A misrepresentation or misunderstanding of the law does not amount to actionable fraud."); *see also, The Flag Co. v. Maynard*, No. CV 05-1194-HU, 2006 WL 1030173, at *7 (D. Or. Apr. 17, 2006) (stating that "[s]tatements of domestic law are normally regarded as expressions of opinion which are generally not actionable in fraud even if they are false"); *Concerned High Knob Prop. Owners v. High Knob Assocs.*, No. 92-70., 1992 WL 885051, at *3 (Va. Cir. Ct. Dec. 1, 1992)

(affirming a dismissal of fraud claims predicated on misstatements of law because "[t]he law is presumed to be equally within the knowledge of all" and "[t]hus, mere statements of law will not alone constitute fraud"); *Wochnick v. True*, 224 Or. 470, 480, 356 P.2d 515, 519–20 (1960) ("it is a general rule that fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law").

Ventex's statement identifying itself as the real party in interest was such a legal statement. As the Federal Circuit has explained, Congress's use of the "familiar common law terms 'privy' and 'real party in interest' indicate that Congress intended to adopt common law principles to govern the scope" of these terms. *Wi-Fi One, LLC v. Broadcom Corp.*, 887 F.3d 1329, 1335 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 826 (2019). The Federal Circuit, detailing the long history of this term in the common law, then expounded on the legal definition of this term in *Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336, 1349 (Fed. Cir. 2018) (referred to herein as "*AIT*"), *cert. denied*, No. 18-1075, ___ S.Ct. ___, 2019 WL 689455 (Mar. 18, 2019). As the Federal Circuit explained in *AIT*, determining whether a party is the real party in interest "demands a flexible approach that takes into account both equitable and practical considerations, with an eye towards determining whether the non-party is a clear beneficiary that has a preexisting, established relationship with the petitioner." 897 F.3d at 1351. Notably, this law did not exist when Ventex filed its petition, but this case turns on the legal definition of real party-in-interest. Indeed, the PTAB cited it as the change in law that spurred the order for additional discovery and briefing on real party in interest (*see* D.I. 65-1 at 2). Ventex's statement that it was the real party in interest to the IPRs was a legal assertion based on Ventex's understanding of the law at the time. And, as a legal assertion, Ventex's

identification of itself as the real party in interest cannot support a claim for fraud, as discussed above.

Without Columbia's central allegation that the legal filings themselves are fraud, Columbia cannot sustain its fraud claims. Columbia's other allegations of fraud relate to an agreement and payments between Seirus and Ventex. As explained in Seirus' motion to dismiss (D.I. 64, at 18), even if Seirus and Ventex did truly conspire to file the IPRs against Columbia's patent as Columbia alleges, there would not have been any misrepresentation or concealment in those communications or in the payments of money because (according to Columbia) both Ventex and Seirus knew what the payments were for.

Without the underlying fraud, Columbia cannot prove a conspiracy to commit fraud. "A conspiracy is a partnership in criminal purposes." *United States v. Kissel*, 218 U.S. 601, 608 (1910); *see also Glass v. Glass*, 228 Va. 39, 47, 321 S.E.2d 69, 74 (1984) ("A civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, resulting in damage to the plaintiff."). If there is no criminality, then there is just a partnership. In other words, "without proof of the underlying tort, there can be no conspiracy to commit that tort." *Commercial Bus. Sys., Inc. v. Halifax Corp.*, 484 S.E.2d 892, 896 (Va. 1997).

### 3.    Columbia Cannot Prove Its Oregon RICO Claim

Just as with the federal RICO statute, the Oregon RICO statute creates liability for patterns of racketeering behavior. ORS § 166.728(7). Under the statute, a "pattern of racketeering activity" is defined as "at least two incidents of racketeering activity," which the statute defines by listing a number of Oregon statutes, the violation of which constitutes an

act of racketeering.  ORS § 166.715(4) & (6).  Columbia identifies false swearing and perjury as the predicate acts which it believes support its RICO claim.  (FAC at ¶ 274.)  Columbia's Oregon RICO claim must fail, though, because Columbia cannot prove any of the underlying predicate acts.

Columbia claims that Ventex's identification of itself as the real party in interest constitutes false swearing under Oregon law.  As an initial matter, Columbia fails to identify the provision of the Oregon RICO statute that makes "false swearing" a predicate act. Columbia points only to ORS § 166.725(7)(a)(B), which then in turn points to a subset of the acts listed in ORS § 166.715(6)(a), specifically subsections B to J, K, L to P, S, T, U, V, X, Z, AA to EE, LL, MM, and PP to WW.  Each of these subsections identifies Oregon statutes, violations of which may be predicate acts under the RICO statute.  "False swearing," which is defined at ORS § 162.075, is not listed as a predicate act.  In any event, Oregon courts have recognized that the elements of false swearing are substantively the same as the elements for fraud, and thus an assertion of law cannot constitute "false swearing" under Oregon law for the same reasons it is not fraud.  *Transamerica Ins. Co. v. Bloomfield*, 55 Or. App. 31, 35 (1981) (disagreed with on other grounds by *Mut. of Enumclaw Ins. Co. v. McBride*, 295 Or. 398, 401 (1983)).

As to perjury, Columbia identifies deposition testimony by a Ventex witness that the agreement between Ventex and Seirus had not been written down.  (FAC at ¶ 274.)  Oregon law defines perjury as a "false sworn statement . . . in regard to a material issue, known it to be false."  ORS § 162.065.  Columbia has not plead, and cannot plead, that the purported perjury, though, was at all material to the IPR.  Columbia has not plead that the witness

testified that the agreement did not exist, and whether or not the agreement was written down has no bearing on whether Ventex properly identified itself as the real party in interest. Even if this act could constitute perjury, this one act is insufficient to make a "pattern of racketeering activity" and thus cannot support Columbia's Oregon RICO claim. ORS § 166.715(4).

Columbia's Complaint makes several other allegations that, though it does not explicitly label as perjurious, it insinuates are. For example, Columbia attempts to characterize Ventex's petition and motions made with this Court under the same umbrella as perjury. None of these legal filings can constitute perjury. These were not sworn statements made by witnesses— rather they were legal filings governed by Rule 11 of the Federal Rules of Civil Procedure (and the analogous rules at the PTO) and signed by attorneys. Columbia's Oregon RICO claim must therefore also fail.

### 4.    Columbia Cannot Prove Abuse of Process.

Lastly, Columbia alleges abuse of process under Virginia law arising from Ventex's filing of the IPRs. To succeed in this claim, Columbia must plead and prove "(1) the existence of an ulterior purpose; and (2) an act in the use of process not proper in the regular prosecution of the proceedings." *Donohoe Const. v. Mount Vernon Assoc.*, 369 S.E.2d 857 (Va. 1988). The "[r]egular and legitimate use of process, though with a bad intention, is not a malicious abuse of process." *Glidewell v. Murray-Lacy & Co.*, 98 S.E. 665, 668 (Va. 1919). Rather, a claim for abuse of process must be predicated on a party using a process "primarily to accomplish a purpose for which it is not designed." Restatement (Second) of Torts § 682 (1977).

It is beyond question that the IPR process is designed to allow the Patent Office to review issued patents and decide whether they should have been issued. *Saint Regis Mohawk*

**Page 21 - THE SEIRUS DEFENDANTS' SPECIAL MOTION TO STRIKE COLUMBIA'S STATE-LAW CLAIMS PURSUANT TO ANTI-SLAPP LAW (ORS § 31.150)**

*Tribe*, 896 F.3d at 1329.  It is similarly beyond question that it is entirely proper to seek a stay of patent litigation when the patent at issue is being reviewed in an IPR.  *Drink Tanks Corp. v. GrowlerWerks, Inc.*, No. 3:16-CV-410-SI, 2017 WL 2633389, at *6 (D. Or. June 19, 2017). Regardless of how the IPRs were funded, both Seirus and Ventex use the processes at the Patent Office and the district court for their designed purposes—Ventex sought additional review of Columbia's patents and both parties sought to stay district court litigation pending that review.  As such, Columbia cannot succeed in showing a probability that it will succeed with this claim either.

### C.    Once the Allegations Arising from Protected Activity Are Stricken, Columbia's State Law Claims Must Be Dismissed and Seirus Should Be Awarded Fees

As discussed above, each of Columbia's state law claims arise out of activity protected by the Oregon anti-SLAPP statute.  This includes both the allegations relating directly to filings made with the Patent Office and the district courts as well as alleged activities, such as Columbia's allegation that Seirus funded Ventex's IPRs, done in support of those protected activities.  Columbia cannot meet its burden of showing any probability of success on those claims, both because the filings that form the basis for Columbia's complaint are protected and because Columbia's allegations are legally insufficient to support its claims.  As such, these allegations should be stricken and each of Columbia's state law claims should be dismissed.

However, assuming *arguendo* that only Columbia's allegations relating to the Exclusive Manufacturing Agreement and the payments made in accordance with that agreement survive anti-SLAPP, Columbia's state law claims must still be dismissed.  As discussed above and in Seirus' motion to dismiss, these allegations are simply insufficient to support Columbia's fraud

claims.  Thus, if the allegations relating to the filings are removed, Columbia cannot state a claim for fraud.

Finally, Seirus should be awarded fees incurred in connection with defending Columbia's state law claims.  Under the Oregon RICO statute an award of fees is mandatory upon a successful anti-SLAPP suit.  ORS § 31.152(3).

## <u>CONCLUSION</u>

For the reason above, Columbia's state law claims should be stricken and Seirus should be awarded fees.

Dated:  April 23, 2019                       Respectfully Submitted,

                                             FISH & RICHARDSON P.C.

                                             */s/ Seth M. Sproul*
                                             _____

                                             Christopher S. Marchese (*pro hac vice*)
                                             Seth M. Sproul (*pro hac vice*)
                                             Oliver J. Richards (*pro hac vice*)
                                             Tucker N. Terhufen (*pro hac vice*)
                                             marchese@fr.com
                                             sproul@fr.com
                                             orichards@fr.com
                                             terhufen@fr.com

                                             MARKOWITZ HERBOLD PC

                                             Renée Rothauge, OSB #903712
                                             ReneeRothauge@markowitzherbold.com
                                             Harry B. Wilson, OSB #077214
                                             HarryWilson@markowitzherbold.com

                                             *Attorneys for Defendant Seirus Innovative Accessories,*
                                             *Inc., Michael J. Carey, Wendy M. Carey, and Robert*
                                             *Murphy*

## CERTIFICATE OF COMPLIANCE

This brief is in compliance with Oregon Local Rule 7-2(b).  The brief contains 6,933 words as determined by Microsoft Word including headings, footnotes and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.


Dated:  April 23, 2019                    Respectfully Submitted,

                                          FISH & RICHARDSON P.C.

                                          */s/ Seth M. Sproul*
                                          Seth M. Sproul