# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

COLUMBIA SPORTSWEAR NORTH
AMERICA, INC.,

        Plaintiff,

    v.

SEIRUS INNOVATIVE ACCESSORIES,
INC.; VENTEX CO., LTD.; MICHAEL J.
CAREY; WENDY M. CAREY; ROBERT
(BOB) MURPHY; SCOTT DENIKE;
KYUNG-CHAN GO; and MAN-SIK
(PAUL) PARK,

        Defendants.

Case No. 3:19-cv-137-SI

**OPINION AND ORDER**

Nicholas F. Aldrich, Jr., David W. Axelrod, and Erin M. Forbes, SCHWABE, WILLIAMSON &
WYATT PC, 1211 SW Fifth Avenue, Suite 1600, Portland, OR 97204. Of Attorneys for Plaintiff.

Renee E. Rothauge and Harry B. Wilson, MARKOWITZ HERBOLD PC, 1455 SW Broadway,
Suite 1900, Portland, OR 97201; Christopher S. Marchese, Seth M. Sproul, Oliver J. Richards,
and Tucker N. Terhufen, FISH & RICHARDSON PC, 12390 El Camino Real, San Diego, CA 92130.
Of Attorneys for Defendants Seirus Innovative Accessories, Inc.; Michael J. Carey; Wendy M.
Carey; Robert Murphy; and Scott DeNike.

**Michael H. Simon, District Judge.**

       Plaintiff Columbia Sportswear North America, Inc. ("Columbia") alleges that Defendants

Seirus Innovative Accessories, Inc. ("Seirus"); Ventex Co., Ltd. ("Ventex"); and their officers,

directors, and agents engaged in a scheme to defraud Columbia and the U. S. Patent and Trademark Office ("PTO"). In its Second Amended Complaint, Columbia alleges that the Defendants violated the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1964(c), (d); violated the Oregon Racketeer Influenced and Corrupt Organizations Act, Or. Rev. Stat. ("ORS") § 166.725(7)(a)(B); committed fraud under Oregon and Virginia common law; engaged in a civil conspiracy to commit fraud in violation of both Virginia Code § 18.2-499 and Virginia common law; and engaged in abuse of process under Virginia common law. Defendants Seirus, Michael J. Carey ("Mr. Carey"), Wendy M. Carey ("Ms. Carey"), Robert (Bob) Murphy ("Mr. Murphy"), and Scott DeNike ("Mr. DeNike") (collectively, the "Seirus Defendants") have filed a total of four motions to dismiss or strike. On November 6, 2019, the Court heard oral argument. For the reasons that follow, all pending motions to dismiss or strike are denied.

## BACKGROUND

### A. Columbia, Seirus, and Ventex

Columbia makes and sells outdoor apparel. In some of its products, Columbia uses material and technology known as "Omni-Heat® Reflective," in which the inner surface of garments is partially coated with reflective foil that directs heat back towards the user. Columbia owns several patents protecting its Omni-Heat® Reflective technology, including design patents and two utility patents, U.S. Patent Nos. 8,424,119 ("the '119 patent"), and 8,453,270 ("the '270 patent").

Seirus makes and sells winter accessories. Columbia alleges that in 2012, Seirus launched a plan to copy Columbia's patented Omni-Heat® Reflective technology. According to Columbia, Seirus contacted several of Columbia's suppliers of the custom-made fabric used in Columbia's Omni-Heat® Reflective line of products. Seirus also approached Ventex, a South Korean textile

manufacturer and broker that touted its ability to supply fabrics coated with laminated reflective foil. Ventex calls this fabric "MegaHeat RX." In March 2013, Seirus and Ventex entered into a Vendor Agreement, under which Seirus agreed to buy MegaHeat RX from Ventex. Seirus named its new line of products "HeatWave." Columbia contends that Ventex's MegaHeat RX fabric and Seirus' HeatWave products infringe Columbia's patents for its Omni-Heat® Reflective technology.

Columbia filed a lawsuit against Seirus in the Western District of Washington (the "Washington Action"), alleging that Seirus's HeatWave products infringed one of Columbia's design patents. Several months later, Columbia served Seirus with an amended complaint, adding claims of infringement of the Omni-Heat® Reflective utility patents. In January 2015, Columbia voluntarily dismissed the Washington Action and filed a new lawsuit in the District of Oregon (the "Seirus Oregon Action"), alleging infringement of its design and utility patents.

Between January 2015 and January 2017, Columbia and Seirus litigated the Seirus Oregon Action toward trial. By January 2017, Columbia and Seirus were on the verge of trial. Seirus already had been found liable at summary judgment for infringement of one of Columbia's design patents, although damages still needed to be determined at trial. Thus, according to Columbia, trial was almost certain to lead to a substantial money judgment against Seirus, and Seirus faced the prospect that it might have to pay Columbia Seirus' profits from its sales of HeatWave products. Seirus and Ventex then allegedly began a scheme use the *inter partes* review ("IPR") process under the patent laws to delay financial reckoning. Columbia's claims in this case arise out of that alleged scheme.

**B. The Ventex IPRs and the IPR Funding Contract**

The America Invents Act created a new body within the PTO called the Patent Trial and Appeal Board ("PTAB"), based in Alexandria, Virginia. It also created the IPR process, which is

a trial-type procedure conducted before the PTAB. IPR allows third parties to seek to invalidate a patent issued by the PTO. Any person who is not the owner of a patent may file with the PTAB a petition for *inter partes* review of that patent. There is, however, an important limitation on the right to seek IPR. An IPR "may not be instituted if the petition requesting the proceeding is filed more than one year after the date on which the petitioner, *real party in interest*, or privy of the petitioner is served with a complaint alleging infringement of the patent." 35 U.S.C. § 315(b) (emphasis added). The petitioner also is required, under 35 U.S.C. § 312(a)(2), to identify in the IPR all real parties in interest. If the petitioner identifies as a real party in interest a party that is time-barred under 35 U.S.C. § 315(b), the PTAB must, by statute, deny the petition for IPR. After a petition for IPR has been filed, the PTAB decides whether to institute review.

In late 2016, Seirus and Ventex signed an agreement governing Seirus's purchases of HeatWave fabric from Ventex. They called this agreement the Exclusive Manufacturing Agreement ("EMA"). Its purported purpose was to have Ventex sell HeatWave fabric exclusively to Seirus. The EMA obligated Seirus to make an immediate down payment of $250,000 and pay additional licensung fees of $550,000 that covered purchases of 200,000 yards of HeatWave fabric over five years.

In January 2017, Ventex filed two IPR petitions with the PTAB, seeking review of Columbia's '119 and '270 patents (the "Ventex IPRs"). Columbia alleges that the true purpose of the EMA was secretly to fund the Ventex IPRs and delay the trial in the Seirus Oregon Action. Based on that allegation, Columbia calls the Exclusive Manufacturing Agreement the "IPR Funding Contract." Seirus was time-barred from filing its own petition for IPR, and the Ventex IPRs also would have been time-barred had Ventex identified Seirus as a real party in interest, as Columbia alleges Ventex was obligated to do. In August 2017, Seirus moved to stay the Seirus

Oregon Action until after the PTAB resolved the Ventex IPRs. In September 2017, the district

court in the Seirus Oregon Action denied Seirus's motion to stay and later transferred the case to

the U. S. District Court for the Southern District of California, although the district judge from

Oregon continued to preside over the case in California.

Shortly before trial, Columbia voluntarily dismissed its claims based on its '119 utility

patent. In November 2017, after a ten-day trial, the jury awarded Columbia more than $3 million

in damages against Seirus for infringement of Columbia's design patent (for which liability

already had been established at summary judgment) and found two claims of Columbia's '270

utility patent invalid. The court entered judgment based on the jury's verdict. Both parties

appealed.[1]

The Ventex IPRs moved forward in the PTAB review process until late 2018, when

discovery revealed the existence of the IPR Funding Contract. On January 24, 2019, based on

this new information, the PTAB concluded that Seirus was a real party in interest in the Ventex

IPRs. As a result, the PTAB determined that the Ventex IPR petitions were time-barred under 35

U.S.C. § 315(b). The PTAB dismissed the petitions and terminated the IPRs.[2]

Columbia filed its complaint in this lawsuit two days after the PTAB terminated the

Ventex IPRs. Columbia alleges that because of the continued litigation of the Ventex IPRs and

---

[1] On November 13, 2019, the U.S. Court of Appeals for the Federal Circuit reversed the trial court's finding of liability at summary judgment on Columbia's design patent, vacated the jury's damage award for infringement of the design patent, affirmed the jury's finding of invalidity for two claims of Columbia's '270 utility patent, and remanded the case for further proceedings. *Columbia Sportswear North America, Inc. v. Seirus Innovative Accessories, Inc.*, --- F.3d ---, 2019 WL 5938886 (Fed. Cir. Nov. 13, 2019). *See* ECF 148.

[2] Ventex appealed the PTAB's orders dismissing Ventex's IPRs but later moved to dismiss those appeals. On November 26, 2019, the U.S. Court of Appeals for the Federal Circuit granted Ventex's motion to dismiss its appeals, making final the dismissal orders of the PTAB. *See* ECF 152.

Seirus's motion to stay the Seirus Oregon Action, Columbia has spent more than $700,000, including attorney's fees, filing fees, and other litigation costs, defending against what Columbia alleges were the fraudulently-filed Ventex IPRs and the associated motion to stay the Seirus Oregon Action.

## ANALYSIS

### A. Personal Jurisdiction and Venue

In a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving that the exercise of jurisdiction is proper. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citation omitted). When resolving such a motion on written materials without an evidentiary hearing, a court need "only inquire into whether the plaintiff's pleadings and affidavits make a *prima facie* showing of personal jurisdiction." *Id*. (quotation marks omitted) (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995)). Although a plaintiff may not rest solely on bare allegations in a complaint, uncontroverted allegations must be taken as true. *Id*. Conflicting statements in affidavits submitted by the parties must be resolved in favor of the plaintiff. *Id.* (citations omitted).

Unless a federal statute governs personal jurisdiction for a specific claim, a district court applies the law of the forum state. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (citing *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998)). Oregon's long-arm statute is co-extensive with constitutional standards. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (citing Or. R. Civ. P. 4(L)). Thus, this Court need only determine whether its exercise of personal jurisdiction over the defendants would offend constitutional due process requirements. *See Boschetto*, 539 F.3d at 1015.

Due process requires that a defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). The Supreme Court has rejected the application of a "mechanical" test to determine personal jurisdiction. *Id.* at 319; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Instead, a court should consider the "quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *Int'l Shoe*, 326 U.S. at 319.

The Ninth Circuit applies a three-part test to determine whether the exercise of specific jurisdiction over a nonresident defendant is appropriate:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (internal quotation marks omitted). The plaintiff bears the burden on the first two prongs. If the plaintiff meets that burden, "the defendant must come forward with a compelling case that the exercise of jurisdiction would not be reasonable." *Boschetto*, 539 F.3d at 1016 (internal quotation marks omitted). Jurisdiction is unreasonable if it does not comport with notions of fair play and substantial justice. *Burger King*, 471 U.S. at 476. The Ninth Circuit has identified seven specific factors to consider in making that determination of reasonableness:

(1) the extent of the defendant's purposeful interjection into the forum state,

(2) the burden on the defendant in defending in the forum,

(3) the extent of the conflict with the sovereignty of the defendant's state,

(4) the forum state's interest in adjudicating the dispute,

(5) the most efficient judicial resolution of the controversy,

(6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and

(7) the existence of an alternative forum.

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000) (citation omitted).

To satisfy the first prong of the three-part test for specific personal jurisdiction, the burden is on Columbia to show that each of the Seirus Defendants purposefully directed his, her, or its conduct at the forum state, which is Oregon. Columbia has alleged specific and directed acts by each of the Seirus Defendants. Mr. Carey verified Seirus's discovery responses in the Seirus Oregon Action, which should have disclosed accurate information about the IPR Funding Contract but allegedly did not. Further, Mr. Carey is Seirus's co-owner and President, and Columbia's materials allegedly show that no material contract, action, or litigation decision took place without his knowledge and approval. Ms. Carey also was involved in responding to Columbia's discovery requests in the Seirus Oregon Action. Further, Columbia asserts that she created a separate ledger to track the secret IPR funding payments to Ventex and that this ledger was missing from the financial information discovery that Seirus produced in the Seirus Oregon Action. Mr. Murphy appears to have negotiated the secret IPR Funding Contract with Ventex. Columbia also alleges that Mr. Murphy committed perjury during his deposition taken in the

Seirus Oregon Action and had a meeting with Ventex to conceal the existence of the IPR Funding Contract. Mr. DeNike is Seirus's General Counsel. He allegedly created the IPR Funding Contract. Further, Mr. DeNike allegedly was responsible for Seirus's management of its discovery obligations in the Seirus Oregon Action and participated in concealing the existence of the IPR Funding Contract. Finally, Mr. and Ms. Carey were agents of Seirus, acting within the scope of their employment. Thus, their contacts are attributable to Seirus itself. *See Myers v. Bennett Law Office*, 285 F.3d 1068, 1073 (9th Cir. 2001).

The personal jurisdiction arguments of the Seirus Defendants focus on the fact that none of the alleged conduct surrounding the formation and execution of the IPR Funding Contract physically occurred in Oregon. Columbia, however, does not contend that the IPR Funding Contract, by itself, subjects the Seirus Defendants to personal jurisdiction in federal court in Oregon. Rather, Columbia argues that the concealment of the IPR Funding Contract through fraudulent representations and material omissions made in or to the Oregon district court by the Seirus Defendants, including in their motion to stay the Seirus Oregon Action and in discovery responses in that litigation, are all Oregon-specific contacts that subject the Seirus Defendants to personal jurisdiction in Oregon. These acts of misrepresentation and material omission occurred in Oregon and are relevant contacts.

The Seirus Defendants also argue that the Supreme Court's holding in *Walden v. Fiore*, 571 U.S. 277 (2014), precludes personal jurisdiction in Oregon. In that case, the Supreme Court explained that the focus of a specific personal jurisdiction analysis must be on the defendant's contacts with the forum state, rather than on the defendant's contacts with a plaintiff who happens to reside in the forum state. *Id.* at 284. In *Walden*, a Nevada plaintiff brought a *Bivens* action against a Georgia defendant alleging a constitutional violation in Georgia. *Id.* at 281. The

defendant's only contact with Nevada was his contact with the plaintiff, who unbeknownst to the defendant was a Nevada resident. The Court held that purposeful contact with a plaintiff who happens to reside in the forum state cannot *by itself* support the exercise of specific personal jurisdiction. *Id.* at 289. The Ninth Circuit, applying *Walden* to analogous facts in another case, similarly found no personal jurisdiction when the defendant's only contacts with the forum state were emails unknowingly sent to residents of the forum state. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017). The defendants in *Walden* and *Axiom Foods*, however, had only indirect and unintentional contact with the forum state by virtue of their contacts with the plaintiffs. The facts here are different. Columbia alleges that the Seirus Defendants purposefully directed the filing of a fraudulent motion to stay with the Oregon district court in connection with Seirus Oregon Action and that the Seirus Defendants improperly withheld and concealed information during discovery in that Oregon federal court proceeding.

Regarding the second prong of the three-part test for specific personal jurisdiction, the Seirus Defendants' contacts with Oregon are all related to the alleged RICO predicate acts and the other claims that are the subject of this action. This is enough to satisfy Columbia's burden to show that its claims arise out of the Seirus Defendants' contacts with Oregon. *See, e.g.*, *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 914-15 (9th Cir. 1990); *Corp. Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 789-90 (9th Cir. 1987).

For the third prong, because Columbia has made a *prima facie* showing that personal jurisdiction exists, the burden shifts to the Seirus Defendants to present compelling evidence that personal jurisdiction in Oregon would be unreasonable. The Seirus Defendants assert that their only contact with Oregon was defending against the Seirus Oregon Action. Columbia, however, alleges more than merely defending a lawsuit. Columbia alleges that misrepresentations were

made to the federal court in Oregon and that the Seirus Defendants improperly withheld relevant discovery in that lawsuit.

The Seirus Defendants also contend that litigating this case in Oregon would be unreasonably burdensome. Seirus, however, already litigated the Seirus Oregon Action in Oregon, at least until just before trial. The Seirus Defendants also allude to a potential for conflict with California's anti-SLAPP law. But, as discussed more fully later in this decision, the anti-SLAPP laws do not apply in this case. Further, Oregon has a substantial interest in adjudicating this case because the Seirus Defendants allegedly deceived not only an Oregon plaintiff but also a federal court in Oregon. In addition, the Seirus Defendants argue that the Southern District of California would be a viable alternative forum and that all parties are subject to personal jurisdiction there. Yet, the Seirus Defendants only assume that Ventex would be subject to personal jurisdiction in the Southern District of California but do not provide any evidence.[3]

The Seirus Defendants also challenge venue in the District of Oregon. Under 28 U.S.C. § 1391, a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). The same conduct that supports the exercise of specific personal jurisdiction over the Seirus Defendants makes venue proper in this district. The Seirus Defendants filed the allegedly fraudulent motion to stay in Oregon and withheld and concealed the IPR Funding Contract from Columbia throughout discovery in the Seirus Oregon Action. These actions are enough to support venue.[4]

---

[3] Because the Court finds that the Seirus Defendants' contacts with Oregon support specific personal jurisdiction, the Court declines to address whether 18 U.S.C. § 1965(b) authorizes personal jurisdiction under RICO.

[4] The RICO statute also provides for venue in any district in which a defendant "resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). Because the Court finds that

**B. Failure to State a Claim**

**1. Standards**

In the Ninth Circuit, a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). When evaluating the sufficiency of a complaint's factual allegations, the Court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain enough factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

---

venue is appropriate under 28 U.S.C. § 1391(b)(2), the Court declines to address whether 18 U.S.C. § 1965(a) authorizes venue in this district.

that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted). If a complaint fails to state a claim, the court should grant leave to amend unless it is clear that the complaint's deficiencies are incurable. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir.1995).

### 2. Threshold Issues

#### a. *Noerr-Pennington* Doctrine and Litigation Privilege

The Seirus Defendants argue that the *Noerr-Pennington* doctrine immunizes their allegedly fraudulent conduct. This doctrine protects "the right of the people to petition the Government for a redress of grievances." U.S. Const. Amend. I. It generally immunizes petitioning activity from statutory liability if the threat of an adverse judgment imposes a burden on the petitioning activity at issue and if the burden on that activity implicates the protections of the Petition Clause. *See Sosa v. DIRECTV Inc.*, 437 F.3d 923, 930 (9th Cir. 2006). Columbia does not dispute these two elements. The right to sue and defend in a court action is an essential right, closely related to the activity of petitioning the government.

The *Noerr-Pennington* doctrine, however, does not immunize conduct if the petition (or litigation) at issue is a "sham." The Supreme Court has outlined the scope of the sham exception to the *Noerr-Pennington* doctrine in *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993). A sham petition is one that is both objectively and subjectively baseless. *Id.* at 60. A petition (or position taken in a lawsuit) is objectively baseless if "no reasonable litigant could realistically expect success on the merits." *Id.* A petition is subjectively baseless if it is an "attempt to interfere directly with the business relationships of a competitor,

through the use of governmental process—as opposed to the outcome of that process—as an anti-competitive weapon." *Id.*

Columbia has sufficiently alleged that the Ventex IPR petitions (and related motion to stay the Seirus Oregon Action) were objectively baseless. Columbia alleges that the IPR Funding Contract was a sham and merely a means for Seirus secretly to fund the Ventex IPRs and circumvent the statutory time-bar in the patent laws, rather than a bona fide exclusivity agreement or other legitimate business arrangement. Any reasonable litigant who was aware of the alleged true purpose of the IPR Funding Contract between Seirus and Ventex and the surrounding transactions, Columbia argues, would necessarily conclude that Seirus was a real party in interest in the Ventex IPRs. Indeed, that is what the PTAB concluded after the alleged sham was uncovered. Thus, argues Columbia, any reasonable litigant with this knowledge would know that the Ventex IPRs and related motion to stay filed in the Seirus Oregon Action were time-barred. This, according to Columbia, shows that those actions were both objectively and subjectively baseless.

The Seirus Defendants argue that the Court should reject Columbia's allegations about the true purpose of the IPR Funding Contract because they are merely conclusory. Columbia, however, alleges enough supporting facts and detail to show a plausible link between the IPR Funding Contract and the payments made for the Ventex IPR litigation. Purchase orders show that Seirus first paid Ventex an advance under the IPR Funding Contract three weeks before Ventex received its first legal fee invoice from its lawyers in the IPR filing. Later purchase orders included new "surcharges" and "license fees, but the timing of these orders coincides with more legal fees being demanded from Ventex's IPR lawyers. Columbia also points to Seirus's

single largest order in April 2018, which coincided with Ventex's delinquency in paying its legal fees in the IPR proceedings.

Columbia further alleges that the IPR Funding Contract makes no financial sense as an exclusivity agreement. Among other things, Columbia alleges that it would take Seirus more than six years to recoup the first $250,000 payment alone—even with the IPR Funding Contract's discounts. These allegations and details support Columbia's assertion that the Ventex IPRs and associated court filings were objectively baseless.

The Seirus Defendants offer two other arguments that the IPRs and related district court actions were not objectively baseless. First, they assert that a reasonable litigant could believe that Ventex was the *sole* real party in interest because of the unsettled state of the relevant law and the Federal Circuit's recent decision in *Applications in Internet Time, LLC v. RPX Corp.* 897 F.3d 1336 (Fed. Cir. 2018) ("*AIT*"). The *AIT* case did have some effect on the meaning of "real party in interest." It clarified that "Congress intended that the term 'real party in interest' have its expansive common-law meaning." *AIT*, 897 F.3d at 1351. But Seirus's assertion that Ventex, therefore, was the *sole* real party in interest does not follow and is objectively baseless with or without this clarification. The interpretation of "real party in interest" before *AIT* may have been narrower, but not so narrow as to exclude Seirus as at least a real party in interest. Taking Columbia's allegations as true, no reasonable litigant who was aware of the funding agreement, the motion to stay, the extensive communications between Seirus and Ventex, and the timing and amount of payments could reasonably believe that Ventex was the *sole* real party in interest.

Second, the Seirus Defendants point to the fact that the PTAB originally instituted an IPR proceeding, which requires that the PTAB find a reasonable likelihood that Ventex would prevail. But the PTAB was unaware of the IPR Funding Contract and its surrounding

circumstances and communications when it instituted the IPR. Thus, Seirus argument assumes too much from the fact of the PTAB's initial granting of IPR, which it later reversed. *See generally Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1185 (9th Cir. 2005) (assessing petitioner's likelihood of success on the merits "after the discovery misconduct was discovered, undone and sanctioned").

Columbia thus has sufficiently alleged that the IPRs and related court filings and discovery responses were both objectively and subjectively baseless. "Interference with a business relationship" is one example of an improper purpose, and includes conduct directed at sapping financial resources or distracting attention. *Freeman*, 410 F.3d at 1185. Columbia alleges that the true purpose of the IPRs, related motion to stay, and discovery responses were to disrupt the Seirus Oregon Action, delay an adverse money judgment against Seirus, and wear Columbia down by forcing it to incur legal fees defending against the Ventex IPRs. Accepting Columbia's allegations as true at this stage of the litigation, the IPRs and related filings and discovery responses were objectively and subjectively baseless. Thus, the sham exception to the *Noerr-Pennington* doctrine applies and does not immunize the alleged conduct from suit.

Further, because the sham exception applies, the PTAB terminated the IPR petitions in Columbia's favor, and the PTAB's decision is now final, Oregon's litigation privilege does not shield the alleged conduct of the Seirus Defendants from state law claims. *See MacVicar v. Barnett*, 2019 WL 2361040, at *9 (D. Or. June 1, 2019) (citing *Mantia v. Hanson*, 190 Or. App. 412, 417 (2003)) (excepting from litigation privilege conduct that satisfies the elements of "wrongful initiation").

### b. Causation

The Seirus Defendants contend that Columbia failed sufficiently to plead causation. The case of *Harmoni Int'l Spice, Inc. v. Hume*, 914 F.3d 648 (9th Cir. 2019), provides helpful

instruction. In *Harmoni*, the Ninth Circuit held that proximate cause was sufficiently alleged when (a) the defendant filed a sham petition with the Department of Commerce, (b) the Department of Commerce commenced an administrative review of the plaintiff in response to the defendant's petition, and (c) the plaintiff incurred costs defending against that administrative review. *Harmoni*, 914 F.3d at 652. Here, Ventex filed its petition for IPR with the PTAB, allegedly as part of the Ventex-Seirus RICO enterprise. The PTAB then commenced IPR proceedings. Columbia incurred costs in defending against the IPR proceedings at the PTAB. In addition, Seirus filed a motion with the federal court in Oregon, asking for a stay of the Seirus Oregon Action. Columbia incurred additional costs in responding to that motion.

The Seirus Defendants argue that *Harmoni* is irrelevant because the Department of Commerce *automatically* institutes administrative review merely upon request, but the PTAB has discretion to grant or reject IPR petitions. That is a distinction without a difference. The fact that the PTAB exercises discretion in deciding whether to institute IPR does not break the chain of causation. The commencement of IPR was a foreseeable consequence of Ventex's petition; indeed, it was the intended result of Ventex's petition. Thus, the argument advanced by the Seirus Defendants does not show that Columbia's allegation of causation is implausible, *see Twombly*, 550 U.S. at 556, and Columbia has sufficiently pleaded that element.

### c. Preemption

The Seirus Defendants argue that Columbia's state law claims are preempted. Columbia adequately alleges conduct that amounts to fraud and a sham. Federal patent law does not preempt state law causes of action for fraudulent filings provided that the state law causes of action do not offer patent-like protection and the state claims have additional elements not found in federal patent claims. *See Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336 (Fed. Cir. 1998); *see also Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141,

152-53 (1982). These conditions are satisfied here. None of Columbia's state law claims (fraud, conspiracy to commit fraud, abuse of process, and Oregon RICO) purport to offer patent-like protection, and all of them contain additional elements not found in federal patent claims. Thus, Columbia's claims are not preempted.

### 3. Specific Claims

#### a. RICO and Oregon RICO

Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity . . ." 18 U.S.C. § 1962(c). It is also "unlawful for any person to conspire to violate" the above section. 18 U.S.C. § 1962(d). "Racketeering activity" includes violations of the mail fraud and wire fraud statutes. 18 U.S.C. § 1961(1) (referring to 18 U.S.C. §§ 1341 and 1343). After a fraudulent scheme is in place, each use of wire or mail to implement or further that fraud is actionable as wire fraud. Any "mailing that is incident to an essential part of the scheme satisfies the mailing element," *Schmuck v. United States*, 489 U.S. 705, 712 (1989) (citation and internal quotation marks omitted), even if the mailing itself "contain[s] no false information." *Id*. at 715. "To be part of the execution of the fraud, however, the use of the mails [or wires] need not be an essential element of the scheme. It is sufficient for the mailing to be 'incident to an essential part of the scheme,' or 'a step in [the] plot.'" *Id*. at 710-11 (internal citations omitted; first alteration added). In addition, to allege a "pattern of racketeering activity," a plaintiff must plead that "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co*., 492 U.S. 229, 239 (1989). Continuity "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of

repetition." Id. at 241. A pattern is sufficiently pleaded when it shows either closed- or open-ended continuity. *Id.*

Under the patent laws, "[w]hether a third party is a real party in interest is a question of fact." *VirnetX Inc. v. Mangrove Partners Master Fund, Ltd.*, 778 F. App'x 897, 901 (Fed. Cir. 2019) (citing *AIT*, 897 F.3d at 1356). Columbia has alleged enough facts at the pleading stage to show that Ventex was not the *sole* real party in interest. Accordingly, the assertions by the Seirus Defendants that Ventex was the sole real party in interest in the IPR petitions (and in the related court filings in the Seirus Oregon Action) are actionable as independent predicate acts of fraud under RICO.

Moreover, even if the Court were to consider the assertion to be merely an "opinion," liability can still lie. The Supreme Court noted that "the expression of an opinion may carry with it an implied assertion, not only that the speaker knows no facts which would preclude such an opinion, but that he does know facts which justify it." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1330 (2015) (quotation marks omitted). This holds especially true when "the speaker has special knowledge of facts unknown to the recipient." *Id.* (quotation marks omitted). The Seirus Defendants knew about the IPR Funding Contract, its payments, and Ventex's legal fees when they asserted that Ventex was the sole real party in interest, when they allegedly conspired with Ventex to make those assertions, and when they failed to disclose the complete truth. Columbia, the PTAB, and the district court in the Seirus Oregon Action did not know those facts.

At the pleading stage, Columbia also sufficiently alleges a legally cognizable pattern of racketeering activity. Mail and wire fraud are types of racketeering activity. 18 U.S.C. § 1961(1). There is no requirement that each predicate act of mail and wire fraud contain a

misrepresentation or concealment of material fact. *Schmuck v. United States*, 489 U.S. at 712. It is only necessary that the predicate acts of mail or wire fraud be "incident to an essential part of the [fraudulent] scheme." *Id.* at 715. After the fraudulent scheme is in place, each use of wire or mail to further that fraud is actionable, even if it does not contain a misrepresentation. *Id.*

Columbia alleges far more than merely two predicate acts of mail or wire fraud. Although only the IPR petitions and the related motion to stay contain the allegedly false representations or omissions, the purchase orders from Seirus to Ventex, the communications between Ventex and Seirus, the payments from Seirus to Ventex, and the payments from Ventex to their attorneys are all predicate acts under RICO because their purpose was to implement the fraudulent scheme to disrupt and delay the Seirus Oregon Action and to wear Columbia down. Columbia also pleads these predicate acts with enough specificity to meet the requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Columbia alleges several instances, and that there are more than 26,000 pages of communications related to hundreds of other instances of mail or wire fraud.

These allegations of mail and wire fraud, thus, form a pattern of racketeering activity. To plead a pattern under RICO, a plaintiff must allege "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc.*, 492 U.S. at 239. The Supreme Court refers to these two "pattern" requirements as "relationship" and "continuity." The Seirus Defendants do not contest that Columbia's allegations satisfy the "relationship" requirement.

Continuity can either be "closed-ended" (a finite period of past repeated conduct) or "open-ended" (past conduct that "by its nature projects into the future with a threat of repetition"). *Id.* at 241. Columbia sufficiently pleads closed-ended continuity. Thus, the Court declines to address whether Columbia also sufficiently pleads open-ended continuity. A plaintiff

establishes closed-ended continuity by showing "a series of related predicate acts" that extend over "a substantial period of time." *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir. 1995). There is no bright-line rule in the Ninth Circuit prescribing the length of a "substantial period of time" needed to show closed-ended continuity. *See id.* Instead, courts evaluate factors including the duration of the conduct, its purpose, the number of victims, and the number of schemes when deciding whether closed-ended continuity exists. *See Medallion Tele. Enter. v. SelecTV of Cal., Inc.*, 833 F.2d 1360, 1363 (9th Cir. 1987).

In the Ninth Circuit, a "pattern" does not require multiple schemes "so long as the predicate acts involved are not isolated or sporadic." *Kearney v. Foley & Lardner, LLP*, 607 F. App'x 757, 759 (citing *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004)). There are, however, limits to this flexible approach. Although the Ninth Circuit has held that thirteen months would be sufficient, it also held that a duration of ten months precluded finding closed-ended continuity. *Compare Kan-Di-Ki, LLC v. Sorenson*, 723 F. App'x 432, 434 (9th Cir. 2018) *with Allwaste*, 65 F.3d at 1527-28.

Columbia alleges predicate acts spanning more than two years. Ventex and Seirus allegedly entered into the IPR funding contract in October 2016. Ventex filed the Ventex IPRs in January 2017, and Seirus moved to stay the Seirus Oregon Action in August 2017. Although the Seirus Oregon Action went to trial in September 2017, Columbia pleads a variety of predicate acts of mail and wire fraud extending until at least January 2019, when the PTAB finally vacated the Ventex IPRs. Even if the purpose of the IPR funding scheme were moot by then, Columba alleges that the Seirus Defendants continued to make payments under and communicate with Ventex about the IPR funding scheme until at least January 2019. The Seirus Defendants argue that these ongoing communications and payments between Seirus and Ventex are not predicate

acts and therefore do not count as part of the continuity period. As discussed above, however, these payments and communications are predicate acts because they allegedly implemented the underlying fraudulent scheme. Further, whether there are multiple fraudulent schemes or just one is not determinative, and the Court need not decide that question. Columbia alleges payments and communications that are coordinated and regular, not "isolated and sporadic." *Kearney*, 607 F. App'x at 759 (citation omitted).

The Court finds that Columbia has pleaded the elements of a federal RICO claim. The primary differences between the federal RICO statute and the Oregon RICO statute inure to Columbia's benefit. The Oregon RICO statute includes additional predicate acts, such as perjury and false swearing. ORS 166.715(6)(a)(B); *see also* ORS 162.065 (defining "perjury"); ORS 162.075 (defining "false swearing"). The Oregon RICO statute also does not require a showing of continuity to establish a pattern of racketeering. *See State v. Pierce*, 153 Or. App. 569, 575 (1998). Thus, Columbia has sufficiently pleaded a claim under the Oregon RICO statute.

### b. State Law

As previously discussed, the assertion that Ventex was the sole real party in interest in the IPR petition is not a pure legal opinion and is, therefore, actionable as fraud. *See Omnicare, Inc.*, 135 S. Ct. at 1330. In addition, Oregon courts have held that a misrepresentation need not be made directly to the plaintiff for the misrepresentation to be actionable. *Johnsen v. Mel–Ken Motors, Inc.*, 134 Or.App. 81, 90, 894 P.2d 540 (1995). It is enough to show that the defendant "made a representation to [a third party] with the intention that it be communicated to and acted upon by the plaintiff." *Id.* at 90.

It is unclear, however, whether a plaintiff alleging common law fraud based on a representation asserted to a third party also must show that the misrepresentation was

communicated to the plaintiff by the third party. *Compare Handy v. Beck*, 282 Or. 653, 659–65, 581 P.2d 68 (1978) (finding reliance when a misrepresentation was made through a third party on whom the injured party reasonably relied, who in turn reasonably relied on the false representation) *with Bixby v. KBR, Inc.*, 893 F. Supp. 2d 1067, 1087 (D. Or. 2012) (finding reliance when the plaintiff was injured by a misrepresentation made through a third party, even when the injured party was unaware of the misrepresentation).

Columbia alleges that the Seirus Defendants misrepresented—both to the PTAB and to the district court in the Seirus Oregon Action—that Ventex was the only real party in interest in the Ventex IPRs. Had Columbia been aware of the true facts, however, Columbia could have brought those facts to the attention of the PTAB and the district court sooner, resulting in the earlier dismissal of the improper IPRs. For this reason, the Court need not decide whether Columbia is a member of a "protected class," which would allow Columbia to sue for fraud without even having to show reliance. *Bixby*, 893 F. Supp. 2d at 1076. Accordingly, the Court declines to dismiss Columbia's claim of Oregon common law fraud. For the same reasons, the Court declines to dismiss Columbia's claims of common fraud and conspiracy to commit fraud under Virginia common law.

Columbia's abuse of process claim also survives at the pleading stage. A plaintiff states a claim for abuse of process under Virginia law by showing "(1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings." *Donohue Constr. Co. v. Mt. Vernon Assoc.*, 369 S.E.2d 857, 862 (Va. 1988). Columbia pleads ulterior purposes (to disrupt the Seirus Oregon Action, delay an adverse judgment against Seirus, and wear Columbia down) and an improper use of the litigation and

IPR petition processes by the repeated false representations that Ventex was the only real party in interest in the Ventex IPRs.

### c. Attorney's Fees as Damages

The Seirus Defendant argue that Columbia has failed sufficiently to state a claim for damages, arguing that the only non-punitive relief that Columbia seeks is the recovery of its attorney's fees and costs in connection with the IPRs filed by Ventex and in defending the motion to stay filed in the district court in the Seirus Oregon Action. The Seirus Defendants invoke both the requirement under RICO that limits damages to injury to "business or property" and also the "American Rule" regarding attorney's fees.

A plaintiff may recover damages under RICO to "business or property," but financial harm alone is not recoverable. In *Diaz v. Gates*, the Ninth Circuit clarified that federal courts determine RICO harm to "business or property" by reference to state tort law. *See* 420 F.3d 897, 900 (9th Cir. 2005) (considering whether a false imprisonment that caused the victim to lose employment and employment opportunities is an injury to "business or property" within the meaning of RICO and holding "[w]ithout a harm to a specific business or property interest—a categorical inquiry typically determined by reference to state law—there is no injury to business or property within the meaning of RICO"). *See also Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 364 (9th Cir. 2005) (recognizing fraudulent inducement as creating a cognizable RICO injury); *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1185 (9th Cir. 2005) (noting that "sapping . . . financial resources or distracting . . . attention" is interference with business in other contexts).

Columbia alleges state law torts of common law fraud, conspiracy to commit fraud, and abuse of process. These torts allegedly caused harm in the form of unnecessary attorney's fees. Accordingly, those attorney's fees are recoverable under RICO. Further, the Seirus Defendants

incorrectly argue that Columbia is making a standalone claim for punitive damages. Columbia's request for punitive damages is in addition to its claim for actual damages.

The "American Rule" on attorney's fees is inapplicable in this case. Under that doctrine, attorney's fees "are not *ordinarily* recoverable in the absence of a statute or enforceable contract providing therefor." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967) (emphasis added). "[C]ourts have uniformly concluded that where an action based on the same wrongful act has been prosecuted by the plaintiff against the defendant to a successful issue, he cannot in a subsequent action recover, as damages, his costs and expenses in the former action." *Summit Valley Indus. Inc. v. Local 112, United Bhd. of Carpenters & Joiners of Am.*, 456 U.S. 717, 726 (1982). The pending lawsuit, however, is not based "on the same wrongful act" that has been prosecuted by the plaintiff against the defendant in a prior action. The relevant prior action was a lawsuit for patent infringement. The pending action is a lawsuit asserting claims for violations federal and Oregon RICO, fraud, conspiracy to commit fraud, and abuse of process. Although the damages alleged are based on increased attorney's fees expended in the prior action, that is not a violation of the American Rule for attorney's fees, because it is not based on the same cause of action.

## C. Scott DeNike's Separate Motion

### 1. RICO and Oregon RICO

Mr. DeNike is Seirus's General Counsel. Columbia alleges that he is properly charged under RICO because he "conducted participated, directly or indirectly, in the conduct of [the RICO enterprise's] affairs." 18 U.S.C. § 1962(c). Under the "operation or management" test, a court considers whether a defendant "participates in the operation or management of the enterprise itself" to determine whether the defendant conducts or participates in the enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). Further, to "conduct or participate, directly or

indirectly in [the RICO enterprise's] affairs . . . one must have some part in directing those affairs." *Id.* at 179 (1993). The RICO statute does not require "*significant control* over or within an enterprise" *Id.* at 179 n.4 (emphasis in original). Providing legal services, however, cannot support a claim of RICO liability against an attorney unless the complaint alleges that the attorney "directed or controlled" the RICO enterprise in some way. *See, e.g., Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993) (finding that attorney who drafted letters and agreements as part of an alleged conspiracy not liable under RICO because he did not direct or control the RICO enterprise); *Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.*, 832 F. Supp. 585, 587 (E.D. NY., 1993) (finding no RICO liability where attorney-defendant provided advice and legal services to advance a fraudulent scheme but was not involved in creating the scheme).

At this stage of the litigation, Columbia has adequately pleaded that Mr. DeNike "participate[d] in the operation and management" of the RICO enterprise itself. *Reves*, 507 U.S. at 185. Mr. DeNike primarily relies on cases decided at summary judgment, when the court considers the factual evidence presented by the parties after discovery. In those cases, the courts found no RICO liability only when the attorney-defendant "acted as no more than [an] attorney." *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 (2d Cir. 1994). A lawyer's conduct can satisfy the operation or management test when it goes beyond merely providing "professional assistance" and involves "directing the affairs" of the RICO enterprise. *San Francisco Bay Area Rapid Transit Dist. v. Spencer*, 2005 WL 2171906, at *5 (N.D. Cal. Sept. 6, 2005).

Columbia alleges that Mr. DeNike did much more than merely provide professional legal assistance to his client, Seirus. Columbia alleges that Mr. DeNike himself was a main participant. The fraudulent scheme alleged here was a *legal* scheme involving the filing of fraudulent petitions and motion to stay, disguising IPR funding payments through a legal contract, and

concealing the entire scheme from Columbia, the PTAB, and the district court in the Seirus Oregon Action. Columbia specifically alleges that Mr. DeNike participated in the formation of this scheme, that he created the IPR Funding Contract knowing that it was sham with the true purpose of funding the Ventex IPRs, and that he failed to produce the relevant documents for more than a year during the Seirus Oregon Action. Columbia further alleges that Mr. DeNike, as Seirus's General Counsel, was responsible for litigation management and strategy. These are factual allegations, not mere legal conclusions or "unwarranted inferences." Columbia's allegations are sufficient to state RICO and Oregon RICO claims against Mr. DeNike.

### 2. Fraud

Columbia's allegations satisfy the heightened pleading standard for fraud under Rule 9(b). To satisfy this higher standard, a pleading must identify "the who, what, when, where, and how of the misconduct charged," plus state "what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Columbia has fulfilled these requirements. Rule 9(b) also prohibits a plaintiff from "lump[ing] multiple defendants together" and requires that a plaintiff "inform each defendant separately of the allegations surrounding his participation in the fraud." *United States v. Corinthian Colleges*, 655 F.3d 984, 997-98 (9th Cir. 2011) (citation omitted). At a minimum, a plaintiff "must identify the role of each defendant in the fraudulent scheme." *Id.* at 998. Columbia has satisfied this requirement. Columbia does not attribute to Mr. DeNike all allegations asserted against the Seirus Defendants. Columbia identifies the specific actions that Mr. DeNike allegedly took in his role as General Counsel in creating and directing the scheme and adequately pleads its claim of fraud against Mr. DeNike.

### D. Oregon's Anti-SLAPP Law

To succeed in a special motion to strike under Oregon's anti-SLAPP statute, a defendant must first "make a *prima facie* showing that the claim against which the motion is made arises out of" one of the protected categories enumerated in the statute. ORS § 31.150. Then, "the burden shifts to the plaintiff to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a *prima facie* case." *Id.* When a defendant's anti-SLAPP motion is predicated only on legal arguments (as is the case here), the Court applies the standard under Rule 12(b)(6) to evaluate the plaintiff's probability of success. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018). If the plaintiff meets this burden in the second step, a court should deny the motion to strike. *See* ORS § 31.150.

The Seirus Defendants have made a *prima facie* showing that Columbia's state law claims arise out of protected activity. In relevant part, the Oregon anti-SLAPP statute protects "[a]ny oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law." ORS § 31.150. Columbia's state law claims arise out of the Ventex IPRs, the related motion to stay the Seirus Oregon Action, the pre-IPR conspiracy to commit fraud, and the post-IPR concealment of evidence from Columbia and the court in the Seirus Oregon Action. The Ventex IPRs and subsequent motion to stay all are within the category of written statements submitted in an executive (*e.g.*, PTAB) or judicial (*e.g.*, Seirus Oregon Action) proceeding. Further, the conspiracy and concealment through the IPR Funding Contract, payments to Ventex, and communications were all allegedly done in support of the protected activity and thus fall within the scope of the Oregon anti-SLAPP law. *See Zweizig v. Nw. Direct Teleservices, Inc.*, 2016 WL 5402935, at *4 (D. Or. Sept. 24, 2016) (holding that Oregon anti-SLAPP statute covers

"communications that are preparatory to or in anticipation of commencing official proceedings"). Columbia has met its burden in the second step. Earlier in this decision, the Court concluded that Columbia has adequately pleaded its state law claims. Columbia thus demonstrates the necessary probability of success. *See Planned Parenthood*, 890 F.3d at 828 (using the standard under Rule 12(b)(6) to assess plaintiff's probability of success in the anti-SLAPP context).

## CONCLUSION

Scott DeNike's motion to dismiss (ECF 101) is DENIED; Michael Carey, Wendy Carey, and Robert Murphy's motion to dismiss (ECF 103) is DENIED; Seirus Defendants' motion to strike (ECF 110) is DENIED; and Seirus' motion to dismiss (ECF 111) is DENIED.

**IT IS SO ORDERED**.

DATED this 2nd day of December, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge